IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
San Angelo Division

| | |
|---|---|
| SILENCER SHOP FOUNDATION; GUN OWNERS OF AMERICA, INC; FIREARMS REGULATORY ACCOUNTABILITY COALITION; B&T USA, LLC; PALMETTO STATE ARMORY, LLC; SILENCERCO WEAPONS RESEARCH, LLC (d/b/a SILENCERCO); GUN OWNERS FOUNDATION; and BRADY WETZ,<br><br>*Plaintiffs*,<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; UNITED STATES DEPARTMENT OF JUSTICE; PAMELA BONDI, in her Official Capacity as ATTORNEY GENERAL OF THE UNITED STATES; and DANIEL DRISCOLL, in his Official Capacity as ACTING DIRECTOR OF THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,<br><br>*Defendants*. | Case No. _____ |

## COMPLAINT

Silencer Shop Foundation, Gun Owners of America, Inc. ("GOA"), Firearms Regulatory Accountability Coalition ("FRAC"), B&T USA, LLC, Palmetto State Armory, LLC, SilencerCo Weapons Research, LLC ("SilencerCo"), Gun Owners Foundation ("GOF"), and Brady Wetz, by counsel, file this Complaint against the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), United States Department of Justice, Pamela Bondi, in her Official Capacity as Attorney General of the United States, and Daniel Driscoll, in his Official Capacity as Acting Director of ATF, and state as follows:

1

## INTRODUCTION

Enacted in 1934, the National Firearms Act ("NFA") is premised on Congress's taxing power. The Act imposed a $200 tax (approximately $5,000 in today's dollars) on the manufacture and transfer of particular classes of firearms. The NFA's authors left no doubt that the NFA was an exercise of the taxing power, and the Supreme Court upheld it on that basis. This has been the uncontroversial understanding of courts and commentators for nearly a century.

But the NFA no longer imposes any tax on the vast majority of firearms it purports to regulate. The One Big Beautiful Bill Act, which Congress and the President enacted on July 4, 2025, zeroes the manufacture and transfer tax on nearly all NFA-regulated firearms. That means the constitutional foundation on which the NFA rested has dissolved. *See, e.g.*, *United States v. Constantine*, 296 U.S. 287, 295 (1935) (provision that does not generate revenue cannot be justified as a tax). And the NFA cannot be upheld under any other Article I power. With respect to the untaxed firearms, the Act is now unconstitutional.

The One Big Beautiful Bill Act left undisturbed the NFA's registration requirements and restrictions on manufacture and transfer, which for most NFA firearms now lack any accompanying exercise of Congress's taxing power. Plaintiffs are individuals and organizations who are burdened by the NFA's regulatory requirements pertaining to untaxed firearms.

Plaintiffs seek an order declaring that the NFA is unconstitutional with respect to the untaxed firearms it purports to regulate and enjoining enforcement of the unconstitutional provisions.

## PARTIES

1. Plaintiff Brady Wetz is a natural person, a citizen of the United States and of the State of Texas, and a resident of San Angelo, Texas, within this district. Mr. Wetz is an adult over the age of 21 who is eligible to purchase and possess firearms under state and federal law. Mr.

Wetz is a gun owner, a member of Plaintiff GOA and a supporter of the Second Amendment right to keep and bear arms. To that end, Mr. Wetz values his personal privacy and does not wish the federal government to obtain identifying information about his personally owned firearms, including information such as his name, physical appearance and characteristics, date of birth, demographic information, fingerprints, home address, or the make, model, caliber, physical dimensions, serial number, legal classification, quantity, or physical location of his firearms. However, federal law currently requires that Mr. Wetz provide all of this identifying information to the federal government in order for him to register and legally purchase, make, or possess short-barreled rifles, short-barreled shotguns, the NFA category "any other weapons" (collectively, "short-barreled firearms"), or silencers defined and regulated under the NFA. *See* 26 U.S.C. §§ 5845, 5841; 27 C.F.R. §§ 479.62, 479.84. Mr. Wetz objects to this onerous registration requirement, which requires the collection of personal information akin to that obtained from an individual being arrested and charged with a crime. *See* Decl. Brady Wetz, Ex. 1.

2.  Collecting and providing this NFA registration information as a precondition to lawful ownership and possession imposes a significant regulatory burden on gun owners like Mr. Wetz. For example, in order to register an NFA-regulated item, Mr. Wetz must spend time completing application forms promulgated by ATF, and then wait for ATF to issue an approval determination, enter his registration information, and authorize his possession of the NFA-regulated item. *See* ATF, OMB No. 1140-0011, Application to Make and Register a Firearm (2022), atf.gov/firearms/docs/form/form-1-application-make-and-register-firearm-atf-form-53201/download; ATF, OMB No. 1140-0014, Application for Tax Paid Transfer and Registration of Firearm (2023), https://www.atf.gov/firearms/docs/form/form-4-application-tax-paid-transfer-and-registration-firearm-atf-form-53204/download. Completion of these ATF registration

3

application forms can take the better part of an hour to complete online, and Mr. Wetz then must wait days, weeks, or even months for ATF to enter his registration information and issue an approval determination. *See Current Processing Times*, ATF (June 10, 2025), atf.gov/resource-center/current-processing-times. Indeed, in the past, ATF has publicly stated "that registering firearms … under the NFA will impose a time burden." Factoring Criteria for Firearms with Attached ''Stabilizing Braces,'' 88 Fed. Reg. 6478, 6563 (Jan. 31, 2023). Moreover, Mr. Wetz also must incur costs related to providing his fingerprint information and a photograph with each NFA registration application. Mr. Wetz has incurred these time and monetary costs in the past, having registered silencers with ATF.

3.   As a result of Congress's recent reduction of the NFA's excise tax rate for short-barreled firearms and silencers from $200 to $0, Mr. Wetz now wishes to purchase and possess additional NFA-regulated items—specifically, a short-barreled rifle and short-barreled shotgun, which are firearms he does not currently own. He would purchase these firearms within 30 days of the effective date of the $0 tax, were he not required by law to register these items with the federal government. Mr. Wetz also would purchase at least one additional silencer within 30 days of the effective date of the $0 tax, but for the ongoing registration requirement.

4.   But if Mr. Wetz were to so much as peacefully possess an unregistered NFA short-barreled firearm or silencer, he would face arrest, prosecution, and imprisonment for felony violations of federal law. *See* 26 U.S.C. § 5861. As the Fifth Circuit explains, the NFA's provisions "have teeth" and carry "severe consequences." *Mock v. Garland*, 75 F.4th 563, 570 (5th Cir. 2023).

5.   Accordingly, Mr. Wetz will refrain from his planned acquisitions unless and until he can lawfully acquire short-barreled firearms and silencers without federal registration.

6. Mr. Wetz does not wish to wait an indeterminate period of time to acquire short-barreled firearms and silencers.

7. Finally, because one of the silencers Mr. Wetz owns no longer suits his needs, Mr. Wetz wishes to sell the silencer locally, to another law-abiding Texas resident, in a private sale that otherwise would be permissible under the Gun Control Act and Texas law. Mr. Wetz would sell his silencer as a transferor in a private sale but for the NFA's registration provisions, which prohibit him from transferring a silencer as he would any other handgun, rifle, or shotgun.

8. Plaintiff GOA is a California non-stock corporation with its principal place of business in Springfield, Virginia. GOA is organized and operated as a nonprofit membership organization that is exempt from federal income taxes under Section 501(c)(4) of the U.S. Internal Revenue Code. GOA was formed in 1976 to preserve and defend the Second Amendment rights of gun owners. GOA has more than 2 million members and supporters across the country, including tens of thousands within Texas, many of whom reside within this district. Many of these persons wish to purchase, obtain, make, or otherwise possess, and transfer NFA-regulated short-barreled firearms and silencers, and they would do so but for the NFA's onerous federal registration requirement. Other GOA members and supporters currently own NFA-registered firearms, but they object to the federal government's continued retention of their registration information. *See* Dec. Erich Pratt, Ex. 2.

9. Plaintiff GOF is a Virginia non-stock corporation with its principal place of business in Springfield, Virginia. GOF was formed in 1983 and is organized and operated as a nonprofit legal defense and educational foundation that is exempt from federal income taxes under Section 501(c)(3) of the U.S. Internal Revenue Code. GOF is supported by gun owners across the country, including residents of Texas, who fund the organization's activities so that it can, *inter*

*alia*, file litigation such as this to preserve, protect, and defend their right to keep and bear arms. Some of GOF's supporters wish to purchase, obtain, make, or otherwise possess, and transfer NFA-regulated short-barreled firearms and silencers, and they would do so but for the NFA's onerous federal registration requirement. Other GOF supporters currently own NFA-registered firearms, but they object to the federal government's continued retention of their registration information. *See* Dec. Erich Pratt, Ex. 2.

10. Plaintiff FRAC is a nonprofit IRC 501(c)(6) association working to improve business conditions for the firearms industry by ensuring the industry receives fair and consistent treatment from firearms regulatory agencies. FRAC is headquartered and maintains its principal place of business in Bismarck, North Dakota, and it serves as the premiere national trade association representing U.S. firearms manufacturers, retailers, importers, and innovators on regulatory and legislative issues impacting the industry in the United States. As part of its advocacy, FRAC regularly files comments with firearms regulatory agencies and litigates firearms regulatory issues. *See, e.g.*, *FRAC v. Garland*, 112 F.4th 507 (8th Cir. 2024). FRAC's industry members suffer regulatory compliance costs and economic losses as a result of the NFA's registration requirements. For example, FRAC's industry members expend significant monetary resources to design, market, and sell products in compliance with the NFA. And although many of these industry members currently sell NFA-regulated short-barreled firearms and silencers on the commercial marketplace, the current federal registration requirement limits the pool of willing purchasers for these products, discouraging some from purchasing altogether. Indeed, FRAC's industry members have communicated with prospective customers who have explained that they would purchase short-barreled firearms and silencers if they did not have to sacrifice their personal privacy and divulge identifying information to the federal government. FRAC's industry members

therefore suffer from an artificially restricted marketplace and resultant economic losses by virtue of the NFA's registration requirements.

11.     Plaintiff B&T is a federally licensed firearms importer and manufacturer based in Tampa, Florida, and a member of Plaintiff FRAC. B&T is a leading manufacturer of firearm sound suppression devices that are regulated under federal law as "silencers." B&T manufactures silencers for governmental and commercial sale, the latter of which constitutes a significant portion of B&T's silencer sales and revenue. B&T also manufactures firearms for commercial sale, including NFA-regulated short-barreled firearms and other firearms intentionally designed, manufactured, and marketed as non-NFA firearms. B&T incurs significant regulatory costs in order to comply with the NFA's registration requirements. For example, B&T offers firearms in configurations it would not otherwise offer so that consumers opposed to NFA registration may purchase them. Indeed, many of B&T's customers do not wish to purchase a product requiring submission of personally identifying information to the federal government and registration. Accordingly, B&T loses potential customers and business revenue by virtue of the NFA's registration requirements.

12.     Plaintiff Palmetto State Armory, LLC is a limited liability company formed under the laws of the state of South Carolina, and has its principal place of business in Columbia, South Carolina. Palmetto State Armory is one of the nation's largest federally licensed manufacturers and retailers of AR-15-style firearms in the country, which constitute a significant portion of Palmetto State Armory's sales revenue. Palmetto State Armory offers these firearms in non-NFA "rifle" and "pistol" configurations in order to comply with the NFA's registration requirements. But for the NFA's registration requirements, Palmetto State Armory would offer additional AR-15-style firearms for sale as short-barreled rifles and enjoy additional sales revenue currently

limited by Defendants' registration regime. Moreover, Palmetto State Armory recently has begun selling silencers through its online retail website. Palmetto State Armory has heard from prospective customers who expressed frustration with the NFA's registration requirements. These prospective customers would purchase silencers and short-barreled rifles from Palmetto State Armory but for the legal requirement that they divulge personally identifying information to the federal government and register their firearms. Consequently, the NFA's registration requirements deprive Palmetto State Armory of a willing customer base and resultant revenue.

13.     Plaintiff SilencerCo is a licensed manufacturer of firearm silencers based in West Valley City, Utah. SilencerCo is one of the largest names in the silencer industry, and its diverse product models are widely popular among firearm hobbyists, hunters, competitive shooters, and those who seek to facilitate armed self-defense. By virtue of the continued federal registration requirement for firearm silencers, SilencerCo suffers a restricted market and artificially limited sales. Indeed, SilencerCo has heard from many prospective customers who have indicated that their sole deterrent from purchasing one of SilencerCo's products is the federal registration requirement.

14.     Plaintiff Silencer Shop Foundation is a non-profit organization dedicated to defending and restoring the constitutional rights of law-abiding Americans, with a specific focus on the Second Amendment. Through targeted litigation, legislative support, and public education, the Foundation challenges federal overreach—specifically the outdated and unconstitutional provisions of the NFA. Its mission is to eliminate unjust barriers to firearm ownership and ensure that citizens are not penalized for exercising their right to keep and bear arms.

15.     Defendant ATF is a component of the DOJ and is headquartered at 99 New York Avenue, Washington, D.C. 20226. ATF is delegated authority to enforce federal gun control laws,

including the NFA's taxation and registration provisions. *See* 28 U.S.C. § 599A; 28 C.F.R. § 0.130; 18 U.S.C. § 926(a). ATF receives and processes NFA-related registration applications, issues approval determinations for those applications, and maintains the National Firearms Registration and Transfer Record, the central registry of all NFA-regulated firearms "which are not in the possession or under the control of the United States." 26 U.S.C. § 5841(a).

16. Defendant Daniel P. Driscoll is the Acting Director of ATF and is responsible for overseeing the agency's enforcement of the NFA's taxation and registration provisions. *See* 28 C.F.R. §§ 0.130(a)(1)-(3); 28 U.S.C. § 510. He is sued in his official capacity.

17. Defendant Pamela J. Bondi is the United States Attorney General. Attorney General Bondi oversees the Department of Justice, an executive department of the United States. 28 U.S.C. §§ 501, 503. She is vested with authority to enforce federal firearms laws, including the provisions of the NFA at issue in this case. *See* 26 U.S.C. § 7801(a)(2). She is sued in her official capacity.

18. Defendants have not disclaimed criminal enforcement of the NFA's registration requirement. To the contrary, Defendants continue to enforce the NFA nationwide, and if Plaintiffs were to manufacture, purchase, transfer, or possess unregistered short-barreled firearms or silencers in violation of federal law, it is likely that Defendants would prosecute them for it.

## JURISDICTION AND VENUE

19. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this civil action arises under the laws of the United States.

20. Plaintiffs seek equitable relief to prevent federal officers and entities from acting unconstitutionally. *See Free Enter. Fund v. PCAOB*, 561 U.S. 477, 491 n.2 (2010).

21. Plaintiffs seek remedies pursuant to the Court's inherent authority and the Declaratory Judgment Act. *See* 28 U.S.C. §§ 2201, 2202.

22. Venue is proper in this Court because Defendants are officers and agencies of the United States, no real property is involved in this action, and Plaintiff Wetz resides in this judicial district. *See* 28 U.S.C. § 1391(e)(1).

## **STANDING**

### **Plaintiff Brady Wetz's and Silencer Shop Foundation's Standing**

23. Mr. Wetz has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Texas v. BATFE*, 737 F. Supp. 3d 426, 434 (N.D. Tex. 2024). "[T]raceability and redressability 'typically overlap' when a plaintiff challenges government action." *Id.* at 435.

24. Mr. Wetz wishes to make and acquire silencers, short-barreled rifles, and short-barreled shotguns, and transfer a silencer within Texas to another person. He would take these actions immediately with the $0 tax rate but for the NFA's paperwork and registration requirements, which cause Mr. Wetz an immediate injury. *See Texas v. BATFE*, 700 F. Supp. 3d 556, 566 (S.D. Tex. 2023).

25. Silencer Shop Foundation wishes to acquire silencers, short-barreled rifles, and short-barreled shotguns, and any other weapons for demonstration and educational purposes, among other reasons. They also wish to transfer these types of firearms within Texas to another person. They would take these actions immediately with the $0 tax rate but for the NFA's paperwork and registration requirements, which cause Silencer Shop Foundation an immediate injury.

26. Defendants enforce the NFA's unconstitutional provisions. A favorable judicial decision declaring these provisions unconstitutional and enjoining Defendants from enforcing them would redress Mr. Wetz's and Silencer Shop Foundation's injuries. Accordingly, Mr. Wetz's

and Silencer Shop Foundation's injuries satisfy Article III.

### Organization Plaintiffs' Associational Standing

27.     FRAC and GOA have associational standing to bring suit on behalf of their members because "(a) [their] members would otherwise have standing to sue in their own right; (b) the interests [they] seek[] to protect are germane to the organization[s'] purpose[s]; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *see also Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199–201 (2023).

28.     *First*, several of FRAC's members have standing to sue in their own right. The same is true for GOA: Plaintiff Brady Wetz. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975) (to establish standing, "association must allege that its members, or any one of them, are suffering immediate or threatened injury").

29.     *Second*, putting a stop to ATF's unlawful actions is germane to FRAC's and GOA's organizational purpose of protecting the firearms industry from "government overreach" and "holding the government accountable for arbitrary and capricious policies." *E.g.*, *Our Mission*, FRAC, fracaction.org/mission (last visited July 4th, 2025).

30.     *Third*, neither the claims asserted nor the relief requested by FRAC and GOA require the participation of individual members because FRAC and GOA "seek[] a declaration, injunction, or some other form of prospective relief" which "if granted, will inure to the benefit of those members." *Hunt*, 432 U.S. at 343.

31.     Plaintiff GOF additionally bears indicia of membership sufficient to confer associational standing, as this Court has found once before. *See Texas*, 737 F. Supp. 3d at 438 ("The foregoing, together, suffice for GOF's associational standing."). GOF is a nonprofit legal

defense and educational foundation that is supported by gun owners across the country. GOF receives all its funding from its supporters, who voluntarily fund its activities. GOF litigates cases throughout the country on behalf of its supporters. GOF's supporters receive information about its activities through a quarterly newsletter and regular emails about its activities. And GOF's supporters regularly communicate their views to GOF about issues on which GOF should focus.

### Commercial Plaintiffs' Standing

32. Plaintiffs B&T, Palmetto State Armory, and SilencerCo all suffer injuries in fact that are traceable to Defendants' enforcement of the NFA's registration provisions and redressable by a favorable judicial decision.

33. Courts widely recognize that commercial entities have standing to challenge governmental actions, regulations, and laws that affect the entities' customers, restrict their respective markets, or cause increases in business costs and decreases in revenue. *See, e.g.*, *Kansas City S. Indus., Inc. v. ICC*, 902 F.2d 423, 428–30 (5th Cir. 1994) (finding that the owner of a railroad terminal had standing to challenge governmental approval of a merger between two railroads because it would cause the terminal owner "revenue loss and increased costs"); *Wedges/Ledges of Cal. v. City of Phoenix*, 24 F.3d 56, 61 (9th Cir. 1994) ("It is well settled that a provider of goods or services has standing to challenge government regulations that directly affect its customers and restrict its market."); *Mountain States Legal Found. v. Costle*, 630 F.2d 754, 764–65 (10th Cir. 1980) ("'Injury in fact' means concrete and certain harm. It may be . . . the unwanted result of a government rule whether or not a pecuniary loss is sustained."); *Block v. Meese*, 793 F.2d 1303, 1308–09 (D.C. Cir. 1986) (finding that film distributor had standing to challenge the government's classification of a film as propaganda because the action was likely to result in fewer numbers of buyers and "affects . . . sales").

34. The NFA's registration requirements deter a significant number of existing and prospective gun owners from purchasing short-barreled firearms and silencers. But for Defendants' enforcement of these registration requirements, many of these individuals would purchase these firearms from Plaintiffs. Defendants' continued enforcement therefore directly affects Plaintiffs' customers, deprives Plaintiffs of revenue from sales, and increases Plaintiffs' regulatory compliance costs.

## STATUTORY FRAMEWORK

### The National Firearms Act

35. First enacted in 1934, the NFA established an excise tax of $200 on the manufacture and transferring of certain categories of firearms within the United States. *See* National Firearms Act of 1934, § 3, 48 Stat. 1236, 1237.

36. Purportedly in furtherance of ensuring the collection of the tax imposed by the NFA, the NFA concurrently established a central registry for recording the makings, transfers, and corresponding tax payments of firearms subject to the NFA (the National Firearms Registration and Transfer Record).

37. The tax imposed by the NFA—nearly $5,000 per firearm in today's dollars—was a pretextual attempt to preclude average citizens from possessing NFA firearms.

### The One Big Beautiful Bill Act

38. On July 4, 2025, President Donald J. Trump signed into law the One Big Beautiful Bill Act, H.R. 1, 119th Cong. (2025).

39. The Act eliminated the transfer and manufacture tax on all NFA firearms except machineguns and destructive devices. *Id.* § 70436. The transfer and manufacture tax on machineguns and destructive devices remains at $200. But the transfer and manufacture tax is now

13

set to zero dollars for silencers, short-barreled rifles, short-barreled shotguns, and the NFA's "any other weapons" category.

40. ATF nevertheless continues to enforce the transfer and registration requirements established in the NFA against Plaintiffs and other similarly situated parties.

## COUNT I
### Declaratory Judgment That the NFA's Registration and Transfer Requirements Exceed Congress's Article I Enumerated Powers With Respect to Untaxed Firearms

41. Plaintiffs incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though set forth fully herein.

42. The NFA's registration, manufacture, and transfer requirements pertaining to untaxed firearms exceed Congress's enumerated powers.

43. These requirements were enacted and sustained as an exercise of Congress's taxing power. *See Sonzinsky v. United States*, 300 U.S. 506, 513–14 (1937). Silencers, short-barreled rifles, short-barreled shotguns, and the NFA's "any other weapons" category are now untaxed, yet the registration and transfer requirements persist.

44. Plaintiffs are injured by the NFA's unconstitutional requirements.

45. Plaintiffs are entitled to a declaration that the NFA's registration and transfer requirements exceed Congress's enumerated powers.

## COUNT II
### Injunctive Relief Against Federal Officials from Implementing or Enforcing NFA With Respect to Untaxed Firearms

46. Plaintiffs incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though set forth fully herein.

47. Plaintiffs are entitled to a permanent injunction against Defendants from implementing or otherwise enforcing any part of the NFA that pertains to untaxed firearms.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs' request that this court enter the following relief:

A. Declare that the NFA's registration and transfer requirements pertaining to untaxed firearms exceed Congress's enumerated powers.

B. Enjoin Defendants and their employees, agents, successors, or any other person acting in concert with them, from implementing, enforcing, or otherwise acting under the authority of the NFA with respect to untaxed firearms.

C. Award Plaintiffs their reasonable costs, including attorney fees.

D. Grant Plaintiffs any and all such other and further relief to which they are justly entitled at law and in equity.

Dated:  July 4, 2025                                        Respectfully Submitted

*/s/ Stephen D. Stamboulieh*
**STEPHEN D. STAMBOULIEH**
**STAMBOULIEH LAW, PLLC**
NDTX#: 102784MS
MS Bar No. 102784
P.O. Box 428
Olive Branch, MS 38654
(601) 852-3440
stephen@sdslaw.us

*Attorney for Plaintiffs Gun Owners of America, Inc., Gun Owners Foundation and Brady Wetz*

Michael D. Faucette (*pro hac vice* forthcoming)
Jeremy J. Broggi (*pro hac vice* forthcoming)
Isaac J. Wyant (*pro hac vice* forthcoming)
**WILEY REIN LLP**
2050 M Street NW
Washington, D.C. 20036
Tel: (202) 719-7000
Fax: (202) 719-7049
mfaucette@wiley.law
jbroggi@wiley.law
iwyant@wiley.law

*Attorneys for Plaintiffs Silencer Shop Foundation, Firearms Regulatory Accountability Coalition, Palmetto State Armory, LLC, B&T USA, LLC, and SilencerCo Weapons Research, LLC,*