IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
San Angelo Division

SILENCER SHOP FOUNDATION; GUN
OWNERS OF AMERICA; FIREARMS
REGULATORY ACCOUNTABILITY
COALITION; B&T USA, LLC; PALMETTO
STATE ARMORY, LLC; SILENCERCO
WEAPONS RESEARCH, LLC (d/b/a
SILENCERCO); GUN OWNERS
FOUNDATION; and BRADY WETZ,

     *Plaintiffs*,

     v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES; DANIEL
DRISCOLL, in his Official Capacity as
ACTING DIRECTOR OF THE BUREAU
OF ALCOHOL, TOBACCO, FIREARMS
AND EXPLOSIVES; and PAMELA BONDI,
in her Official Capacity as ATTORNEY
GENERAL OF THE UNITED STATES;

     *Defendants*.

Case No. _____

---

## DECLARATION OF BRADY WETZ

---

1. My name is Brady Wetz.  I am an adult resident of San Angelo, Texas, within Tom Green County.  I am a citizen of the United States of America and a member of Gun Owners of America, Inc.

2. I am eligible under state and federal law to purchase and possess firearms, including firearm silencers, short-barreled rifles, and short-barreled shotguns regulated under the National

Firearms Act ("NFA").  I am an avid gun owner and supporter of the Second Amendment right to keep and bear arms.  I possess a valid Texas License to Carry a handgun.

3.   I presently have a personal collection of firearms that I have accumulated over many years. I believe that the widespread public ownership of firearms is, as the Second Amendment says, "necessary" for a "free State."

4.   I am blessed to live in Texas where, not too long ago, the Texas legislature repealed all state regulations on silencers.  Thus, so long as my silencers are lawfully possessed under federal law, they are also lawfully possessed in Texas.

5.   I currently do not own any short-barreled rifles or short-barreled shotguns.  However, I do currently own multiple silencers, which I purchased from a local federally licensed dealer.

6.   Each time I purchased a silencer, I was forced to complete a Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Form 5320.4 application, known as a Form 4, and to provide fingerprints, photographs, and other personally identifying information, including my date of birth and home address.  I then was required to pass a background check and pay a $200 excise tax per each.[1]  And aside from the obvious costs of purchase, sales tax, and excise tax, I also had to cover the cost of submitting my own fingerprints.

7.   Speaking from experience, the NFA registration process to exercise an enumerated constitutional right is invasive, onerous, and time-consuming.  No other constitutional right requires such burdens and hoops.

---

[1] Although 26 U.S.C. § 5811(b) provides that the "tax imposed … shall be paid by the transferor," dealers simply pass the cost to the purchaser – a standard practice for the industry.  Dealers either will prompt the purchaser to enter their own payment information to pay the tax, or they will cover the cost of the tax but require the purchaser to pay them an offsetting (or greater) fee.  *See, e.g.*, https://www.silencershop.com/nfa-tax-stamp.html.

8.   Consider the invasiveness of NFA registration.  In order to federally register my silencers to comply with the NFA, I in the past have been required to divulge to the government my name, physical appearance and characteristics, date of birth, demographic information, fingerprints, and home address, and additionally to provide the make, model, caliber, physical dimensions, serial number, and physical location of each of my silencers.  Then, my name and address appear on a government registry alongside detailed information on what NFA-regulated firearms I own.

9.   Not only that, but ATF Forms have to be submitted "in duplicate," meaning that I must complete two sets of ATF Forms for each firearm or silencer I wish to purchase.  And then, after I complete the Forms, I am required to send a copy of my completed Forms to my local chief law enforcement officer, who is then asked to contact ATF "should [he] have information that may disqualify [me] from acquiring or possessing a firearm...."[2]

10. Thus, not only do I have to waive my privacy with respect to the federal government, but I also must waive my privacy with respect to local law enforcement, and practically inviting the chief law enforcement officer to exercise veto power over my right to keep and bear arms.

11. This process remains substantially the same if I were to seek ATF permission to "make" my own NFA-regulated firearms, which I intend to do.  Rather than filing an ATF Form 4, I would have to file an ATF Form 5320.1, known as a Form 1, and provide the same registration information.  However, I would then face the additional requirement of *engraving* certain information onto the firearm I "make," which creates additional costs – *i.e.*, paying for a laser engraving service with NFA compliance expertise.  *See* 26 U.S.C. § 5842(a); 27 C.F.R. § 479.102(a)(1).

---

[2] *See* https://www.atf.gov/firearms/docs/form/form-4-application-tax-paid-transfer-and-registration-firearm-atf-form-53204/download at 2.

12. Also consider the onerousness of the fingerprint and photograph requirement. I have never been arrested, but the onerous registration process I had to follow to purchase my NFA items certainly made it feel that way. In order to exercise my rights, I must have my fingerprints taken, supply my own mugshot, and have my personally identifying information entered into a government database. I should not have to go through arrest-like procedures simply to exercise an enumerated right.

13. Finally, it takes considerable time to complete the registration process. Careful completion of an ATF Form 1 or Form 4 can take the better part of an hour if I am doing it myself. And then, notwithstanding all the paperwork that I had to complete to purchase my silencers, I have had to wait a significant amount of time for ATF to approve my paperwork before I could physically acquire my silencers from my dealer. For example, the *shortest* period that ATF has taken to approve one of my applications to obtain a silencer has been *three weeks*.

14. Even if ATF were to approve any given NFA application quickly, there is no predicting how long the waiting period will be at the outset. NFA approvals times are wholly indeterminate, and there is no statutory or regulatory requirement that ATF take action on applications within a specified period of time.

15. In fact, in contrast to the 'first in, first out' background check procedure for typical National Instant Criminal Background Check System ("NICS") checks, under which a dealer with a still-pending NICS check may transfer a firearm three days after contacting NICS, the NFA contains no provision to expedite wait times. Historically, it would seem that NFA background checks have been 'first in, last out,' which has contributed to the utterly unpredictable nature of NFA approval times. My exercise of an enumerated constitutional right should not revolve around what is convenient for bureaucrats.

16. Now, with the passage of President Trump's "One Big Beautiful Bill," I understand that the tax on short-barreled firearms and silencers has been reduced to zero. Yet while this tax is now set at zero (an oxymoron), the process of obtaining "approval" from the ATF remains the same, because the registration requirements have not been repealed. Indeed, I am still required to obtain a photograph and fingerprints, provide my personal information all over again with each subsequent application, and then submit either an ATF Form 5320.1, were I to make an NFA firearm or silencer, or an ATF Form 5320.4, if I were to purchase one from a dealer.

17. Although I already have more than one silencer registered to me, I do not believe the government has any further business knowing the number or type of firearms I own, much less maintaining a registry of the exercise of my Second Amendment rights.

18. The onerous federal registration requirement that remains in place deters me from making or purchasing any short-barreled rifles, short-barreled shotguns, or any additional silencers.

19. If I were not required by law to comply with all the NFA registration requirements and then wait days, weeks, or months for ATF approval, I would purchase and acquire a firearm silencer from a federally licensed firearm dealer, for one of my firearms that does not currently have one installed. I would make this purchase within 30 days of becoming able to do so. And if I were able to acquire a silencer without having to comply with the NFA's registration requirements, I would be able to take possession of my firearm silencer immediately, because my Texas License to Carry serves as a "Brady alternate" which exempts me from the usual repetitive background check requirement for dealer transfers imposed by the Gun Control Act.[3]

---

[3] *See* https://www.atf.gov/rules-and-regulations/laws-alcohol-tobacco-firearms-and-explosives/gun-control-act/brady-law/brady-permit-chart.

20. Moreover, if I were not required by law to comply with all the NFA registration requirements and then wait days, weeks, or months for ATF approval, I also would make my own silencer within 30 days of becoming able to do so.

21. And if I were not required by law to comply with all the NFA registration requirements and then wait days, weeks, or months for ATF approval, I would acquire a shotgun from a local firearm dealer and then shorten the barrel such that it would become a "short-barreled shotgun" under federal law. I would do so within 30 days of becoming able to do so.

22. Likewise, if I were not required by law to comply with all the NFA registration requirements and then wait days, weeks, or months for ATF approval, I also would install a short-barreled (under 16 inch barrel) upper receiver on an AR-15-style rifle I already own, such that it would become a "short-barreled rifle" under federal law. I would do so within 30 days of becoming able to do so.

23. And if I were not required by law to comply with all the NFA registration requirements and then wait days, weeks, or months for ATF approval, I would continue to make my own NFA firearms, and would continue to purchase and acquire them from a federally licensed firearm dealer, over the coming years, to add to my collection.

24. Next, if I were not required by law to comply with all the NFA registration requirements and then wait days, weeks, or months for ATF approval, I would obtain firearm silencers, short-barreled rifles, and short-barreled shotguns through private sales from other Texas residents, which would be lawful to do the same as any other firearm under the Gun Control Act, but for the federal registration and attendant transfer requirements under the NFA.

25. Finally, if not for the paperwork and registration provisions of the NFA, I would sell and transfer through a private transaction a silencer from my collection that no longer suits my needs.

Although under the Gun Control Act and Texas law, it would be permissible for me to sell this silencer to another law-abiding Texas resident, the NFA prohibits me from doing so.

26. However, because I am still required to spend time going through ATF's application procedures of photographs, fingerprints, and delay, I will not subject myself to these onerous requirements.

27. I would make, purchase, and otherwise acquire unregistered short-barreled rifles, unregistered short-barreled shotguns, and unregistered silencers, and otherwise transfer and dispose of such items that I no longer have use for, both in the near future as discussed above and also repetitively in the coming months and years after the NFA tax is reduced to $0, but for the federal registration requirement and my fear of arrest and prosecution thereunder.

I, Brady Wetz, certify under penalty of perjury that the foregoing is true and correct.

_____          _____
**DATE**                                                    **BRADY WETZ**