**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**San Angelo Division**

| | |
|---|---|
| SILENCER SHOP FOUNDATION; GUN OWNERS OF AMERICA, INC; FIREARMS REGULATORY ACCOUNTABILITY COALITION, INC.; B&T USA, LLC; PALMETTO STATE ARMORY, LLC; SILENCERCO WEAPONS RESEARCH, LLC (d/b/a SILENCERCO); GUN OWNERS FOUNDATION; BRADY WETZ; STATE OF TEXAS; STATE OF ALASKA; STATE OF GEORGIA; STATE OF IDAHO; STATE OF INDIANA; STATE OF KANSAS; STATE OF LOUISIANA; STATE OF MONTANA; STATE OF NORTH DAKOTA; STATE OF OKLAHOMA; STATE OF SOUTH CAROLINA; STATE OF SOUTH DAKOTA; STATE OF UTAH; STATE OF WEST VIRGINIA; and STATE OF WYOMING, | Case No. 6:25-cv-56-H |
| *Plaintiffs*, | |
| v. | |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; UNITED STATES DEPARTMENT OF JUSTICE; PAMELA BONDI, in her Official Capacity as ATTORNEY GENERAL OF THE UNITED STATES; and DANIEL DRISCOLL, in his Official Capacity as ACTING DIRECTOR OF THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, | |
| *Defendants*. | |

## COMPLAINT

Silencer Shop Foundation, Gun Owners of America, Inc. ("GOA"), Firearms Regulatory

Accountability Coalition, Inc. ("FRAC"), B&T USA, LLC, Palmetto State Armory, LLC,

SilencerCo Weapons Research, LLC ("SilencerCo"), Gun Owners Foundation ("GOF"), Brady

Wetz, State of Texas, State of Alaska, State of Georgia, State of Idaho, State of Indiana, State of

Kansas, State of Louisiana, State of Montana, State of North Dakota, State of Oklahoma, State of

South Carolina, State of South Dakota, State of Utah, State of West Virginia, and State of Wyoming,

by counsel, file this Complaint against the Bureau of Alcohol, Tobacco, Firearms and Explosives

("ATF"), United States Department of Justice, Pamela Bondi, in her Official Capacity as Attorney

General of the United States, and Daniel Driscoll, in his Official Capacity as Acting Director of

ATF, and state as follows:

## INTRODUCTION

Enacted in 1934, the National Firearms Act ("NFA") is premised on Congress's taxing

power.  The Act imposed a $200 tax (approximately $5,000 in today's dollars) on the making and

transfer of particular classes of firearms.  The NFA's authors left no doubt that the NFA was an

exercise of the taxing power, and the Supreme Court upheld it on that basis.  *See Sonzinsky v.*

*United States*, 300 U.S. 506, 513 (1937) (NFA was "only a taxing measure"); *Haynes v. United*

*States*, 390 U.S. 85, 87 (1968) (NFA is "an interrelated statutory system for the taxation of certain

classes of firearms").  And its registration provisions were "obviously supportable as in aid of a

revenue purpose."  *Sonzinsky*, 300 U.S. at 513.  This has been the uncontroversial understanding

of courts and commentators for nearly a century.

But the NFA no longer imposes any tax on the vast majority of firearms it purports to

regulate.  The One Big Beautiful Bill Act, which Congress enacted and the President signed on

July 4, 2025, zeroes the making and transfer tax on nearly all NFA-regulated firearms.  That means

the constitutional foundation on which the NFA rested has dissolved.  *See, e.g.*, *United States v.*

*Constantine*, 296 U.S. 287, 295 (1935) (provision that does not generate revenue cannot be

justified as a tax).  And the NFA cannot be upheld under any other Article I power.  *See NFIB v.*

*Sebelius*, 567 U.S. 519, 535 (2012) ("The Federal Government . . . must show that a constitutional

grant of power authorizes each of its actions."). With respect to the untaxed firearms, the Act is now unconstitutional.

The One Big Beautiful Bill Act left undisturbed the NFA's regulatory requirements, including 26 U.S.C. §§ 5811, 5812, 5821, 5822, 5841, 5842, 5843, 5861, 5871, 5872, and 27 C.F.R. §§ 479.62, 479.84. That means that for most NFA firearms the NFA's regulatory provisions now lack any accompanying exercise of Congress's taxing power. Plaintiffs are individuals, organizations, and States who are burdened by the NFA's regulatory requirements pertaining to untaxed firearms.

The same firearms are protected by the Second Amendment, which secures the right of the people to "keep and bear arms." Under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the government bears the burden of justifying any regulation of an arm by identifying a "well-established and representative" historical analogue with a comparable "how and why," *id.* at 29–30. The government cannot meet that burden here.

Plaintiffs seek an order declaring that the NFA is unconstitutional with respect to the untaxed firearms it purports to regulate and enjoining enforcement of the unconstitutional provisions.

## PARTIES

1.     Plaintiff Brady Wetz is a natural person, a citizen of the United States and of the State of Texas, and a resident of San Angelo, Texas, within this district. Mr. Wetz is an adult over the age of 21 who is eligible to acquire and possess firearms under state and federal law. Mr. Wetz is a gun owner, a member of Plaintiff GOA, and a supporter of the Second Amendment right to keep and bear arms. To that end, Mr. Wetz values his personal privacy and does not wish the federal government to obtain identifying information about his personally owned firearms, including information such as his name, physical appearance and characteristics, date of birth,

demographic information, fingerprints, home address, or the make, model, caliber, physical dimensions, serial number, legal classification, quantity, or physical location of his firearms. However, federal law currently requires that Mr. Wetz provide all of this identifying information to the federal government in order for him to register and legally acquire, make, or possess short-barreled rifles, short-barreled shotguns, the NFA category "any other weapons" (collectively, "short-barreled firearms"), or silencers defined and regulated under the NFA.  *See* 26 U.S.C. §§ 5845, 5841; 27 C.F.R. §§ 479.62, 479.84.  Mr. Wetz objects to this onerous registration regime, which requires the collection of personal information akin to that obtained from an individual being arrested and charged with a crime.  *See* Decl. Brady Wetz, Ex. 1.

2.      Collecting and providing this NFA registration information as a precondition to lawful ownership and possession imposes a significant regulatory burden on gun owners like Mr. Wetz.  For example, in order to register an NFA-regulated item, Mr. Wetz must spend time completing application forms promulgated by ATF and then wait for ATF to issue an approval determination, enter his registration information, and authorize his possession of the NFA-regulated item.  *See* ATF, OMB No. 1140-0011, Application to Make and Register a Firearm (2022), https://tinyurl.com/28hrrfvh; ATF, OMB No. 1140-0014, Application for Tax Paid Transfer and Registration of Firearm (2023), https://tinyurl.com/2z52yxdj.  Completion of these ATF registration application forms can take the better part of an hour to complete online, and Mr. Wetz then must wait days, weeks, or even months for ATF to enter his registration information and issue an approval determination.  *See Current Processing Times*, ATF (June 10, 2025), https://tinyurl.com/mrxvzdm7.  Indeed, in the past, ATF has publicly stated "that registering firearms … under the NFA will impose a time burden."  Factoring Criteria for Firearms with Attached "Stabilizing Braces," 88 Fed. Reg. 6478, 6563 (Jan. 31, 2023).  Moreover, Mr. Wetz also

4

must incur costs related to providing his fingerprint information and a photograph with each NFA registration application.  Mr. Wetz has incurred these time and monetary costs in the past, having registered silencers with ATF.

3.    As a result of Congress's recent reduction of the NFA's excise tax rate for short-barreled firearms and silencers from $200 to $0, Mr. Wetz now wishes to acquire, make, and possess additional NFA-regulated items—including short-barreled rifles, short-barreled shotguns, and items classed as "any other weapon" ("AOWs"), which are firearms he does not currently own. He would acquire, make, and possess these firearms within 30 days of the effective date of the $0 tax, were he not required by law to register these items with the federal government.  Mr. Wetz also would acquire at least one additional silencer within 30 days of the effective date of the $0 tax, but for the ongoing registration requirement.

4.    Additionally, because one of the silencers Mr. Wetz owns no longer suits his needs, Mr. Wetz wishes to sell the silencer locally, to another law-abiding Texas resident, in a private sale that otherwise would be permissible under the Gun Control Act and Texas law.  Mr. Wetz would sell his silencer as a transferor in a private sale but for the NFA's registration provisions, which prohibit him from transferring a silencer as he would any other handgun, rifle, or shotgun.

5.    Mr. Wetz is deterred from these activities because each would trigger the NFA's onerous registration requirements.  Those requirements would force Mr. Wetz to expend time and money on compliance and would require him to hand over personal information to the government that he does not wish to provide.

6.    But if Mr. Wetz were to so much as peacefully possess an unregistered NFA short-barreled firearm or silencer, he would face arrest, prosecution, and imprisonment for felony violations of federal law.  *See* 26 U.S.C. § 5861.  As the Fifth Circuit explains, the NFA's

provisions "have teeth" and carry "severe consequences." *Mock v. Garland*, 75 F.4th 563, 570 (5th Cir. 2023).

7.      Accordingly, Mr. Wetz will refrain from his planned activities unless and until he can lawfully make, possess, and acquire short-barreled firearms and silencers without federal registration.  After the tax is zeroed out, he would engage in these activities within 30 days of not having to comply with the NFA registration requirements.

8.      Mr. Wetz does not wish to wait an indeterminate period of time to acquire short-barreled firearms and silencers.

9.      Plaintiff GOA is a California non-stock corporation with its principal place of business in Springfield, Virginia.  GOA is organized and operated as a nonprofit membership organization that is exempt from federal income taxes under Section 501(c)(4) of the U.S. Internal Revenue Code.  GOA was formed in 1976 to preserve and defend the Second Amendment rights of gun owners.  GOA has more than 2 million members and supporters across the country, including tens of thousands within Texas, many of whom reside within this district.  Many of these persons wish to acquire, obtain, make, or otherwise possess, and transfer NFA-regulated short-barreled firearms and silencers, and they would do so but for the NFA's onerous federal registration requirement.  Other GOA members and supporters currently own NFA-registered firearms, but they object to the federal government's continued retention of their registration information. *See* Dec. Erich Pratt, Ex. 2.

10.      Plaintiff GOF is a Virginia non-stock corporation with its principal place of business in Springfield, Virginia.  GOF was formed in 1983 and is organized and operated as a nonprofit legal defense and educational foundation that is exempt from federal income taxes under Section 501(c)(3) of the U.S. Internal Revenue Code.  GOF is supported by gun owners across the

country, including residents of Texas, who fund the organization's activities so that it can, *inter alia*, file litigation such as this to preserve, protect, and defend their right to keep and bear arms. Some of GOF's supporters wish to acquire, obtain, make, or otherwise possess, and transfer NFA-regulated short-barreled firearms and silencers, and they would do so but for the NFA's onerous federal registration requirement. Other GOF supporters currently own NFA-registered firearms, but they object to the federal government's continued retention of their registration information. *See* Dec. Erich Pratt, Ex. 2.

11.     Plaintiff FRAC is a nonprofit IRC 501(c)(6) association working to improve business conditions for the firearms industry by ensuring the industry receives fair and consistent treatment from firearms regulatory agencies. FRAC is headquartered and maintains its principal place of business in Bismarck, North Dakota, and it serves as the premiere national trade association representing U.S. firearms manufacturers, retailers, importers, and innovators on regulatory and legislative issues impacting the industry in the United States. As part of its advocacy, FRAC regularly files comments with firearms regulatory agencies and litigates firearms regulatory issues. *See, e.g.*, *FRAC v. Garland*, 112 F.4th 507 (8th Cir. 2024). FRAC's industry members suffer regulatory compliance costs and economic losses as a result of the NFA's registration requirements. For example, FRAC's industry members expend significant monetary resources to design, market, and sell products in compliance with the NFA. And although many of these industry members currently sell NFA-regulated short-barreled firearms and silencers on the commercial marketplace, the current federal registration requirement limits the pool of willing transferees for these products, discouraging some from acquiring altogether. Indeed, FRAC's industry members have communicated with prospective customers who have explained that they would acquire short-barreled firearms and silencers if they did not have to sacrifice their personal

privacy and divulge identifying information to the federal government. FRAC's industry members therefore suffer from an artificially restricted marketplace and resultant economic losses by virtue of the NFA's registration requirements.

12.     Plaintiff B&T is a federally licensed firearms importer and manufacturer based in Tampa, Florida, and a member of Plaintiff FRAC. B&T is a leading manufacturer of firearm sound suppression devices that are regulated under federal law as "silencers." B&T manufactures silencers for governmental and commercial sale, the latter of which constitutes a significant portion of B&T's silencer sales and revenue. B&T also manufactures firearms for commercial sale, including NFA-regulated short-barreled firearms and other firearms intentionally designed, manufactured, and marketed as non-NFA firearms. B&T incurs significant regulatory costs in order to comply with the NFA's registration requirements. For example, B&T offers firearms in configurations it would not otherwise offer so that consumers opposed to NFA registration may acquire them. Indeed, many of B&T's customers do not wish to acquire a product requiring submission of personally identifying information to the federal government and registration. Accordingly, B&T loses potential customers and business revenue by virtue of the NFA's registration requirements.

13.     Plaintiff Palmetto State Armory, LLC is a limited liability company formed under the laws of the state of South Carolina and has its principal place of business in Columbia, South Carolina. Palmetto State Armory is one of the nation's largest federally licensed manufacturers and retailers of AR-15-style firearms in the country, which constitute a significant portion of Palmetto State Armory's sales revenue. Palmetto State Armory offers these firearms in non-NFA "rifle" and "pistol" configurations in order to comply with the NFA's registration requirements. But for the NFA's registration requirements, Palmetto State Armory would offer additional AR-

15-style firearms for sale as short-barreled rifles and enjoy additional sales revenue currently limited by Defendants' registration regime. Moreover, Palmetto State Armory recently has begun selling silencers through its online retail website. Palmetto State Armory has heard from prospective customers who expressed frustration with the NFA's registration requirements. These prospective customers would acquire silencers and short-barreled rifles from Palmetto State Armory but for the legal requirement that they divulge personally identifying information to the federal government and register their firearms. Consequently, the NFA's registration requirements deprive Palmetto State Armory of a willing customer base and resultant revenue.

14.    Plaintiff SilencerCo is a licensed manufacturer of firearm silencers based in West Valley City, Utah. SilencerCo is one of the largest names in the silencer industry, and its diverse product models are widely popular among firearm hobbyists, hunters, competitive shooters, and those who seek to facilitate armed self-defense. By virtue of the continued federal registration requirement for firearm silencers, SilencerCo suffers a restricted market and artificially limited sales. Indeed, SilencerCo has heard from many prospective customers who have indicated that their sole deterrent from acquiring one of SilencerCo's products is the federal registration requirement.

15.    Plaintiff Silencer Shop Foundation is a nonprofit organization dedicated to defending and restoring the constitutional rights of law-abiding Americans, with a specific focus on the Second Amendment. Through targeted litigation, legislative support, and public education, the Foundation challenges federal overreach—specifically the outdated and unconstitutional provisions of the NFA. Its mission is to eliminate unjust barriers to firearm ownership and ensure that citizens are not penalized for exercising their right to keep and bear arms.

16.    Plaintiff State of Texas is a sovereign state of the United States of America. Texas

sues to vindicate its sovereign, quasi-sovereign, and proprietary interests, including its interest in protecting its citizens, businesses, and employees. Texas brings this suit through its attorney general Ken Paxton. He is the chief legal officer of the State of Texas and has the authority to represent Texas in civil litigation. *Perry v. Del Rio*, 67 S.W.3d 85, 92 (Tex. 2011).

17.     Plaintiff State of Alaska is a sovereign state of the United States of America. Alaska sues to vindicate its sovereign, quasi-sovereign, and proprietary interests, including its interest in protecting its citizens, businesses, and employees. Alaska brings this suit through its attorney general Treg R. Taylor. He is the chief legal officer of the State of Alaska and has the authority to represent Alaska in civil litigation.

18.     Plaintiff State of Georgia is a sovereign state of the United States of America. Georgia sues to vindicate its sovereign, quasi-sovereign, and proprietary interests, including its interest in protecting its citizens, businesses, and employees. Georgia brings this suit through its attorney general Christopher M. Carr. He is the chief legal officer of the State of Georgia and has the authority to represent Georgia in civil litigation.

19.     Plaintiff State of Idaho is a sovereign state of the United States of America. Idaho sues to vindicate its sovereign, quasi-sovereign, and proprietary interests, including its interest in protecting its citizens, businesses, and employees. Idaho brings this suit through its attorney general Raúl R. Labrador. He is the chief legal officer of the State of Idaho and has the authority to represent Idaho in civil litigation.

20.     Plaintiff State of Indiana is a sovereign state of the United States of America. Indiana sues to vindicate its sovereign, quasi-sovereign, and proprietary interests, including its interest in protecting its citizens, businesses, and employees. Indiana brings this suit through its attorney general Theodore E. Rokita. He is the chief legal officer of the State of Indiana and has

the authority to represent Indiana in civil litigation.

21.    Plaintiff State of Kansas is a sovereign state of the United States of America. Kansas sues to vindicate its sovereign, quasi-sovereign, and proprietary interests, including its interest in protecting its citizens, businesses, and employees.  Kansas brings this suit through its attorney general Kris W. Kobach.  He is the chief legal officer of the State of Kansas and has the authority to represent Kansas in civil litigation.

22.    Plaintiff State of Louisiana is a sovereign state of the United States of America. Louisiana sues to vindicate its sovereign, quasi-sovereign, and proprietary interests, including its interest in protecting its citizens, businesses, and employees. Louisiana brings this suit through its attorney general Elizabeth B. Murrill.  She is authorized by Louisiana law to sue on the State's behalf.  La. Const. art. IV, § 8.  Her offices are located at 1885 North Third Street, Baton Rouge, Louisiana 70802.

23.    Plaintiff State of Montana is a sovereign state of the United States of America. Montana sues to vindicate its sovereign, quasi-sovereign, and proprietary interests, including its interest in protecting its citizens, businesses, and employees.  Montana brings this suit through its attorney general Austin Knudsen.  He is the chief legal officer of the State of Montana and has the authority to represent Montana in civil litigation.

24.    Plaintiff State of North Dakota is a sovereign state of the United States of America and brings this suit to vindicate its sovereign, quasi-sovereign, and proprietary interests.  Drew Wrigley is the Attorney General of North Dakota and is authorized to "[i]nstitute and prosecute all actions and proceedings in favor or for the use of the state."  N.D.C.C. § 54-12-01(2).

25.    Plaintiff State of Oklahoma is a sovereign state of the United States of America. Oklahoma sues to vindicate its sovereign, quasi-sovereign, and proprietary interests, including its

interest in protecting its citizens, businesses, and employees.  Oklahoma brings this suit through its attorney general Gentner Drummond.  He is the chief legal officer of the State of Oklahoma and has the authority to represent Oklahoma in civil litigation.

26.    Plaintiff State of South Carolina is a sovereign state of the United States of America. South Carolina sues to vindicate its sovereign, quasi-sovereign, and proprietary interests, including its interest in protecting its citizens, businesses, and employees.  South Carolina brings this suit through its attorney general Alan Wilson.  He is the chief legal officer of the State of South Carolina and has the authority to represent South Carolina in civil litigation.

27.    Plaintiff State of South Dakota is a sovereign state of the United States of America. South Dakota sues to vindicate its sovereign, quasi-sovereign, and proprietary interests, including its interest in protecting its citizens, businesses, and employees.  South Dakota brings this suit through its attorney general Marty J. Jackley.  He is the chief legal officer of the State of South Dakota and has the authority to represent South Dakota in civil litigation.

28.    Plaintiff State of Utah is a sovereign state of the United States of America.  Utah sues to vindicate its sovereign, quasi-sovereign, and proprietary interests, including its interest in protecting its citizens, businesses, and employees.  Utah brings this suit through its attorney general Derek Brown.  He is the chief legal officer of the State of Utah and has the authority to represent Utah in civil litigation.

29.    Plaintiff State of West Virginia is a sovereign state of the United States of America. West Virginia sues to vindicate its sovereign, quasi-sovereign, and proprietary interests, including its interest in protecting its citizens, businesses, and employees.  West Virginia brings this suit through its attorney general John B. McCuskey.  He is the chief legal officer of the State of West Virginia and has the authority to represent West Virginia in civil litigation.

30.    Plaintiff State of Wyoming is a sovereign state of the United States of America. Wyoming sues to vindicate its sovereign, quasi-sovereign, and proprietary interests, including its interest in protecting its citizens, businesses, and employees.  Wyoming brings this suit through its attorney general Keith G. Kautz.  He is the chief legal officer of the State of Wyoming and is authorized to bring legal actions on behalf of the State of Wyoming under Wyo. Stat. Ann.

31.    Defendant ATF is a component of the Department of Justice and is headquartered at 99 New York Avenue, Washington, D.C. 20226.  ATF is delegated authority to enforce federal gun control laws, including the NFA's taxation and registration provisions.  *See* 28 U.S.C. § 599A; 28 C.F.R. § 0.130; 18 U.S.C. § 926(a).  ATF receives and processes NFA-related registration applications, issues approval determinations for those applications, and maintains the National Firearms Registration and Transfer Record, the central registry of all NFA-regulated firearms "which are not in the possession or under the control of the United States."  26 U.S.C. § 5841(a).

32.    Defendant Daniel P. Driscoll is the Acting Director of ATF and is responsible for overseeing the agency's enforcement of the NFA's taxation and registration provisions.  *See* 28 C.F.R. §§ 0.130(a)(1)-(3); 28 U.S.C. § 510.  He is sued in his official capacity.

33.    Defendant Pamela J. Bondi is the United States Attorney General.  Attorney General Bondi oversees the Department of Justice, an executive department of the United States. 28 U.S.C. §§ 501, 503.  She is vested with authority to enforce federal firearms laws, including the provisions of the NFA at issue in this case.  *See* 26 U.S.C. § 7801(a)(2).  She is sued in her official capacity.

34.    Defendants have not disclaimed criminal enforcement of the NFA's registration requirement.  To the contrary, Defendants continue to enforce the NFA nationwide, and if Plaintiffs were to make, manufacture, acquire, receive, transfer, possess, or otherwise use

unregistered short-barreled firearms or silencers in violation of federal law, it is likely that Defendants would prosecute them for it.

## JURISDICTION AND VENUE

35.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this civil action arises under the laws of the United States.

36.     Plaintiffs seek equitable relief to prevent federal officers and entities from acting unconstitutionally.  *See Free Enter. Fund v. PCAOB*, 561 U.S. 477, 491 n.2 (2010).

37.     Plaintiffs seek remedies pursuant to the Court's inherent authority and the Declaratory Judgment Act.  *See* 28 U.S.C. §§ 2201, 2202, 2412.

38.     Venue is proper in this Court because Defendants are officers and agencies of the United States, no real property is involved in this action, and Plaintiff Wetz and Plaintiff State of Texas reside in this judicial district.  *See* 28 U.S.C. § 1391(e)(1).

## STANDING

### Plaintiff Brady Wetz's and Silencer Shop Foundation's Standing

39.     Mr. Wetz has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Texas v. BATFE*, 737 F. Supp. 3d 426, 434 (N.D. Tex. 2024).  "[T]raceability and redressability 'typically overlap' when a plaintiff challenges government action."  *Id.* at 435.

40.     Mr. Wetz wishes to make, acquire, and possess silencers, short-barreled rifles, short-barreled shotguns, and firearms from the "any other weapons" category, and transfer a silencer within Texas to another person.  He would take these actions immediately with the $0 tax rate but for the NFA's paperwork and registration requirements, which cause Mr. Wetz an immediate injury.  *See, e.g.*, *Texas v. BATFE*, 700 F. Supp. 3d 556, 566 (S.D. Tex. 2023).

41.     Silencer Shop Foundation wishes to acquire silencers, short-barreled rifles, and

short-barreled shotguns, and AOWs for demonstration and educational purposes, among other reasons. It also wishes to transfer these types of firearms within Texas to another person. It would take these actions immediately with the $0 tax rate but for the NFA's paperwork and registration requirements, which cause Silencer Shop Foundation an immediate injury.

42.    Defendants enforce the NFA's unconstitutional provisions. A favorable judicial decision declaring these provisions unconstitutional and enjoining Defendants from enforcing them would redress Mr. Wetz's and Silencer Shop Foundation's injuries. Accordingly, Mr. Wetz's and Silencer Shop Foundation's injuries satisfy Article III.

43.    Based on ATF's decades-long history of aggressive enforcement, Mr. Wetz and Silencer Shop Foundation face the substantial threat of prosecution. If they violate the National Firearms Act by failing to register NFA firearms they make, transfer, receive, possess, or otherwise use, ATF will likely pursue felony charges against them.

### Organization Plaintiffs' Associational Standing

44.    FRAC and GOA have associational standing to bring suit on behalf of their members because "(a) [their] members would otherwise have standing to sue in their own right; (b) the interests [they] seek[] to protect are germane to the organization[s'] purpose[s]; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *see also Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199–201 (2023).

45.    *First*, several of FRAC's members have standing to sue in their own right. The same is true for GOA: Plaintiff Brady Wetz. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975) (to establish standing, "association must allege that its members, or any one of them, are suffering immediate or threatened injury").

15

46.    *Second*, putting a stop to ATF's unlawful actions is germane to FRAC's and GOA's organizational purpose of protecting the firearms industry from "government overreach" and "holding the government accountable for arbitrary and capricious policies." *E.g.*, *Our Mission*, FRAC, fracaction.org/mission (last visited August 7th, 2025).

47.    *Third*, neither the claims asserted nor the relief requested by FRAC and GOA require the participation of individual members because FRAC and GOA "seek[] a declaration, injunction, or some other form of prospective relief" which "if granted, will inure to the benefit of those members." *Hunt*, 432 U.S. at 343.

48.    Plaintiff GOF additionally bears indicia of membership sufficient to confer associational standing, as this Court has found once before. *See Texas*, 737 F. Supp. 3d at 438 ("The foregoing, together, suffice for GOF's associational standing."). GOF is a nonprofit legal defense and educational foundation that is supported by gun owners across the country. GOF receives all its funding from its supporters, who voluntarily fund its activities. GOF litigates cases throughout the country on behalf of its supporters. GOF's supporters receive information about its activities through a quarterly newsletter and regular emails about its activities. And GOF's supporters regularly communicate their views to GOF about issues on which GOF should focus.

### Commercial Plaintiffs' Standing

49.    Plaintiffs B&T, Palmetto State Armory, and SilencerCo all suffer injuries in fact that are traceable to Defendants' enforcement of the NFA's registration provisions and redressable by a favorable judicial decision.

50.    Courts widely recognize that commercial entities have standing to challenge governmental actions, regulations, and laws that affect the entities' customers, restrict their respective markets, or cause increases in business costs and decreases in revenue. *See, e.g., Kansas City S. Indus., Inc. v. ICC*, 902 F.2d 423, 428–30 (5th Cir. 1994) (finding that the owner of a

railroad terminal had standing to challenge governmental approval of a merger between two railroads because it would cause the terminal owner "revenue loss and increased costs"); *Wedges/Ledges of Cal. v. City of Phoenix*, 24 F.3d 56, 61 (9th Cir. 1994) ("It is well settled that a provider of goods or services has standing to challenge government regulations that directly affect its customers and restrict its market."); *Mountain States Legal Found. v. Costle*, 630 F.2d 754, 764–65 (10th Cir. 1980) ("'Injury in fact' means concrete and certain harm.  It may be . . . the unwanted result of a government rule whether or not a pecuniary loss is sustained."); *Block v. Meese*, 793 F.2d 1303, 1308–09 (D.C. Cir. 1986) (finding that film distributor had standing to challenge the government's classification of a film as propaganda because the action was likely to result in fewer numbers of buyers and "affects . . . sales").

51.     The NFA's registration requirements deter a significant number of existing and prospective gun owners from acquiring short-barreled firearms and silencers.  But for Defendants' enforcement of these registration requirements, many of these individuals would acquire these firearms from Plaintiffs.  Defendants' continued enforcement therefore directly affects Plaintiffs' customers, deprives Plaintiffs of revenue from sales, and increases Plaintiffs' regulatory compliance costs.

52.     The NFA's registration requirements also impose burdensome compliance costs on the commercial Plaintiffs.

53.     Like Mr. Wetz and Silencer Shop Foundation, the commercial Plaintiffs face the substantial threat of prosecution.  If they violate the National Firearms Act by failing to register NFA firearms they make, manufacture, transfer, receive, or otherwise use, ATF will likely pursue felony charges against them.

### States' Standing

54.     Plaintiffs State of Texas, State of Alaska, State of Georgia, State of Idaho, State of

Indiana, State of Kansas, State of Louisiana, State of Montana, State of North Dakota, State of Oklahoma, State of South Carolina, State of South Dakota, State of Utah, State of West Virginia, and State of Wyoming suffer injuries in fact that are traceable to Defendants' enforcement of the NFA's registration provisions against the State and such harm is redressable by a favorable judicial decision. The NFA's registration provisions impose operational, administrative, and compliance-related costs and burdens on State agencies. Defendants' imposition of taxation-related registration controls on state-owned NFA firearms is no longer related to the collection of a tax on those firearms since the NFA tax burden is reduced to $0. Thus, the States will incur the cost of continued compliance with NFA registration and transfer procedures and requirements for State-owned firearms in furtherance of zero tax collection by Defendants. This is an unconstitutional imposition against the States by Defendants.

## STATUTORY FRAMEWORK

### The National Firearms Act

55.     First enacted in 1934, the NFA established an excise tax of $200 on the transfer of certain categories of firearms within the United States. *See* National Firearms Act of 1934, § 3, 48 Stat. 1236, 1237. Subsequently, as amended in 1952 and then again in 1968, the NFA contained an excise tax of $200 on the making of such firearms. *See* Act of May 21, 1952, Pub. L. No. 353, § 1, 66 Stat. 87, 87; Gun Control Act of 1968, Pub. L. No. 90-618, § 201, 82 Stat. 1213, 1228–29.

56.     Purportedly in furtherance of ensuring the collection of the tax imposed by the NFA, the NFA established a central registry for recording the makings, transfers, and corresponding tax payments of firearms subject to the NFA (the National Firearms Registration and Transfer Record).

57.     The $200 tax imposed by the NFA—nearly $5,000 per firearm in today's dollars—was a pretextual means test to preclude average citizens from possessing NFA firearms.

58.     All references contained herein to "National Firearms Act" or "NFA" are in

reference to Chapter 53 of Title 26, U.S. Code (26 U.S.C. §§ 5801–5872) unless specific context indicates otherwise.

## The One Big Beautiful Bill Act

59.     On July 4, 2025, President Donald J. Trump signed into law the One Big Beautiful Bill Act, Pub. L. No. 119-21, H.R. 1, 119th Cong. (2025).

60.     The Act eliminated the transfer and making tax on all NFA firearms except machineguns and destructive devices.  *Id.* § 70436.  The transfer and making tax on machineguns and destructive devices remains at $200.  But the transfer and making tax is now set to zero dollars for silencers, short-barreled rifles, short-barreled shotguns, and the NFA's AOWs category.

61.     ATF nevertheless continues to enforce the regulatory requirements established in the NFA against Plaintiffs and other similarly situated parties.

## THE SECOND AMENDMENT

62.     The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court explained that the Second Amendment protects the preexisting right to keep and carry arms for self-defense and defense of others in the event of a violent confrontation.  *Id.* at 592; *see also Bruen*, 597 U.S. at 10; *United States v. Rahimi*, 602 U.S. 680, 692 (2024).

63.     *Bruen* explained that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."  597 U.S. at 17.  To justify a regulation of an arm, the "government may not simply posit that the regulation promotes an important interest" but rather "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation."  *Id.* at 17; *see also Rahimi*, 602 U.S. at 692 ("As we explained in *Bruen*, the appropriate analysis involves considering whether the challenged

regulation is consistent with the principles that underpin our regulatory tradition.").

64.    No one disputes that short-barreled rifles and short-barreled shotguns are "arms." So are silencers—they "facilitate armed self-defense," *Bruen*, 597 U.S. at 28, and as the government recognizes itself, the NFA's provisions "impose a burden on using firearms that implicates the Second Amendment," *United States v. Peterson*, No. 24-30043, (5th Cir. May 29, 2025), Appellee's Suppl. Resp. to Appellant's Pet. for Rehearing En Banc, ECF No. 135 at 5.

65.    That means the NFA's regulations of those arms are presumptively unconstitutional. And the presumption is not rebutted when a firearm is in "common use." *Bruen*, 597 U.S. at 47. Short-barreled rifles, short-barreled shotguns, and silencers are all in common use. *See* ATF, Firearms Commerce in the United States, Statistical Update 2024 at 12 (May 2024), tinyurl.com/mscuvayt (there are approximately 3,536,623 suppressors, 870,286 short-barreled rifles, and 165,180 short-barreled shotguns registered in the National Firearms Registration and Transfer Record).  Had there been no tax or registration requirements on these firearms, use would be orders of magnitude more common.  No historical tradition supports the regulation of these firearms.  The NFA's regulations are unconstitutional.

## COUNT I

**Declaratory Judgment That The NFA's Regulatory Requirements Exceed Congress's Article I Enumerated Powers With Respect To Untaxed Firearms**

66.    Plaintiffs incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though set forth fully herein.

67.    The NFA's regulatory requirements pertaining to untaxed firearms exceed Congress's enumerated powers, including 26 U.S.C. §§ 5811, 5812, 5821, 5822, 5841, 5842, 5843, 5861, 5871, 5872, and 27 C.F.R. §§ 479.62, 479.84.

68.    These requirements were enacted and sustained as an exercise of Congress's taxing

power.  *See Sonzinsky*, 300 U.S. at 513–14.   Silencers, short-barreled rifles, short-barreled shotguns, and the NFA's "any other weapons" category are now untaxed, yet the regulatory requirements persist.

69.    Plaintiffs are injured by the NFA's unconstitutional requirements.

70.    Plaintiffs are entitled to a declaration that the NFA's regulatory requirements exceed Congress's enumerated powers, both facially and/or as applied to Plaintiffs.

## COUNT II

**Declaratory Judgment That the NFA and Corresponding Regulatory Requirements Violate the Second Amendment With Respect To Untaxed Firearms**

71.    Plaintiffs incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though set forth fully herein.

72.    The NFA's regulatory requirements pertaining to untaxed firearms violate the Second Amendment, including 26 U.S.C. §§ 5811, 5812, 5821, 5822, 5841, 5842, 5843, 5861, 5871, 5872, and 27 C.F.R. §§ 479.62, 479.84.   *See also* related requirements in 18 U.S.C. §§ 922(a)(4) and 922(b)(4).

73.    The continued requirement for obtaining prior permission from the federal government (*e.g.*, U.S. Attorney General) prior to transferring or transporting an untaxed short-barreled rifle or untaxed short-barreled shotgun as contained in 18 U.S.C. §§ 922(a)(4) and 922(b)(4) violate the Second Amendment.   This is currently enforced by the governmental Defendants using NFA forms.

74.    Plaintiffs are injured by these unconstitutional requirements.

75.    Plaintiffs are entitled to a declaration that these regulatory requirements violate the Second Amendment, both facially and/or as applied to Plaintiffs.

## COUNT III

**Injunctive Relief Against Federal Officials From Implementing or Enforcing The NFA's Regulatory Requirements With Respect to Untaxed Firearms**

76.    Plaintiffs incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though set forth fully herein.

77.    Plaintiffs are entitled to a permanent injunction against Defendants from implementing or otherwise enforcing any part of the NFA that pertains to untaxed firearms.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs' request that this court enter the following relief:

A.  Declare that the NFA's regulatory requirements pertaining to untaxed firearms exceed Congress's enumerated powers.

B.  Declare that the NFA and corresponding regulatory requirements pertaining to untaxed firearms violate the Second Amendment.

C.  Enjoin Defendants and their employees, agents, successors, or any other person acting in concert with them, from implementing, enforcing, or otherwise acting under the authority of the NFA with respect to untaxed firearms.

D.  Award Plaintiffs their reasonable costs, including attorney fees.

E.  Grant Plaintiffs any and all such other and further relief to which they are justly entitled at law and in equity.

Dated:  August 8, 2025                       Respectfully submitted,

*/s/ Stephen D. Stamboulieh*                 */s/ Michael D. Faucette*
**STEPHEN D. STAMBOULIEH**                   Michael D. Faucette
                                             Stephen J. Obermeier*
**STAMBOULIEH LAW, PLLC**                    Jeremy J. Broggi
NDTX#: 102784MS                              Boyd Garriott*
MS Bar No. 102784                            Isaac J. Wyant

P.O. Box 428
Olive Branch, MS 38654
(601) 852-3440
stephen@sdslaw.us

*Attorney for Plaintiffs Gun Owners of
America, Inc., Gun Owners Foundation
and Brady Wetz*

*/s/ Brandon W. Barnett*
**BRANDON W. BARNETT**
Texas Bar. No. 24053088

**BARNETT HOWARD & WILLIAMS PLLC**
930 W. 1st St., Suite 202
Fort Worth, Texas 76102
Tel: (817) 993-9249
Fax: (817) 697-4388
barnett@bhwlawfirm.com

*Attorney for Private Plaintiffs*

**WILEY REIN LLP**
2050 M Street NW
Washington, D.C. 20036
Tel: (202) 719-7000
Fax: (202) 719-7049
mfaucette@wiley.law
sobermeier @wiley.law
jbroggi@wiley.law
bgarriott@wiley.law
iwyant@wiley.law

*Attorneys for Plaintiffs Silencer Shop Foundation,
Firearms Regulatory Accountability Coalition,
Palmetto State Armory, LLC, B&T USA, LLC,
and SilencerCo Weapons Research, LLC*

*\*motion for pro hac vice admission forthcoming*

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN WALTERS
Deputy Attorney General for Legal Strategy

/s/ *Munera Al-Fuhaid*
MUNERA AL-FUHAID
Special Counsel, Special Litigation Division
Texas Bar No. 24094501

CHRISTINA CELLA
Special Counsel, Legal Strategy Division
Texas Bar No. 240106199

OFFICE OF THE ATTORNEY GENERAL OF
TEXAS
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 461-6494
Munera.al-fuhaid@oag.texas.gov
christina.cella@oag.texas.gov

    *Counsel for Plaintiff State of Texas*

TREG R. TAYLOR
Attorney General of Alaska

/s/ *Aaron C. Peterson*
AARON C. PETERSON*
(Alaska Bar No. 1011087)
Senior Assistant Attorney General

Department of Law
1031 West Fourth Avenue, Ste. 200
Anchorage, AK 99501
Telephone: (907) 269-5232
Facsimile: (907) 276-3697
Email: aaron.peterson@alaska.gov

    *Counsel for Plaintiff State of Alaska*
*motion for pro hac vice admission*
*forthcoming*

CHRISTOPHER M. CARR
Attorney General of Georgia

/s/ *Elijah J. O'Kelley*
ELIJAH J. O'KELLEY*
Deputy Solicitor General

OFFICE OF THE GEORGIA ATTORNEY GENERAL
40 Capitol Square, SW
Atlanta, Georgia 30334
(470) 816-1342
eokelley@law.ga.gov

    *Counsel for Plaintiff State of Georgia*
*motion for pro hac vice admission forthcoming*

RAÚL R. LABRADOR
Attorney General of Idaho

/s/ Michael A. Zarian
MICHAEL A. ZARIAN
Deputy Solicitor General
Texas Bar No. 24115978

OFFICE OF THE IDAHO ATTORNEY GENERAL
700 W Jefferson St #210
Boise, ID 83720
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
michael.zarian@ag.idaho.gov

    Counsel for Plaintiff State of Idaho

KRIS W. KOBACH
Attorney General of Kansas

/s/ James Rodriguez
JAMES RODRIGUEZ
(KS Bar #29172)
Assistant Attorney General

OFFICE OF KANSAS ATTORNEY GENERAL
120 SW 10th Ave., 2nd Floor
Topeka, KS 66612-1597
Tel. (785) 368-8197
Jay.Rodriguez@ag.ks.gov

    Counsel for Plaintiff State of Kansas

THEODORE E. ROKITA
Attorney General of Indiana

/s/ James A. Barta
JAMES A. BARTA*
Solicitor General

INDIANA ATTORNEY GENERAL'S OFFICE
IGCS – 5th Floor
302 W. Washington St.
Indianapolis, IN 46204
(317) 232-0709
james.barta@atg.in.gov

    Counsel for Plaintiff State of Indiana
    *motion for pro hac vice admission forthcoming

LIZ MURRILL
Attorney General of Louisiana

/s/ J. Benjamin Aguiñaga
J. BENJAMIN AGUIÑAGA*
Solicitor General

LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third Street
Baton Rouge, LA 70804
(225) 326-6766
AguinagaB@ag.louisiana.gov

    Counsel for Plaintiff State of Louisiana
    *motion for pro hac vice admission forthcoming

AUSTIN KNUDSEN
Attorney General of Montana

*/s/Christian B. Corrigan*
CHRISTIAN B. CORRIGAN*
Solicitor General

MONTANA DEPARTMENT OF JUSTICE
P.O. Box 201401
Helena, Montana 59620-1401
(406) 444-2026
Christian.Corrigan@mt.gov

*Counsel for Plaintiff State of Montana*
*\*motion for pro hac vice admission forthcoming*

GENTNER DRUMMOND
Attorney General of Oklahoma

*/s/ Garry M. Gaskins, II*
GARRY M. GASKINS, II*
Solicitor General

OFFICE OF THE ATTORNEY GENERAL OF
OKLAHOMA
313 NE Twenty-First St.
Oklahoma City, OK 73105
(405) 521-3921
garry.gaskins@oag.ok.gov

*Counsel for Plaintiff State of Oklahoma*
*\*motion for pro hac vice admission forthcoming*

MARTY J. JACKLEY
Attorney General of South Dakota

*/s/ Amanda Miiller*
AMANDA MIILLER*
(SD Bar No. 4271)
Deputy Attorney General

OFFICE OF THE ATTORNEY GENERAL OF SOUTH
DAKOTA
1302 East Highway 14, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
amanda.miiller@state.sd.us
*Counsel for Plaintiff State of South Dakota*
*\*motion for pro hac vice admission forthcoming*

DREW H. WRIGLEY
Attorney General of North Dakota

*/s/ Philip Axt*
PHILIP AXT
Solicitor General

OFFICE OF NORTH DAKOTA ATTORNEY GENERAL
600 E. Boulevard Ave., Dept. 125
Bismarck, ND 58505
Phone: (701) 328-2210
Email: pjaxt@nd.gov

*Counsel for Plaintiff State of North Dakota*

ALAN WILSON
Attorney General of South Carolina

*/s/ Benjamin M. McGrey*
BENJAMIN M. MCGREY*
 (Fed. Bar No. 14374)
Assistant Deputy Solicitor General

OFFICE OF THE ATTORNEY GENERAL OF SOUTH
CAROLINA
PO Box 11549
Columbia, South Carolina 29201
(803) 734-3765
benmcgrey@scag.gov

*Counsel for Plaintiff State of South Carolina*
*\*motion for pro hac vice admission forthcoming*

DEREK BROWN
Attorney General of Utah

*/s/ Andrew Dymek*
ANDREW DYMEK*
Solicitor General

OFFICE OF THE UTAH ATTORNEY GENERAL
160 E. 300 S., 5th floor
Salt Lake City, Utah 84111

*Counsel for Plaintiff State of Utah*
*\*motion for pro hac vice admission forthcoming*

26

JOHN B. MCCUSKEY
Attorney General of West Virginia

*/s/ Michael R. Williams*
MICHAEL R. WILLIAMS*
Solicitor General

OFFICE OF THE ATTORNEY GENERAL
OF WEST VIRGINIA
State Capitol Complex
Building 1, Room E-26
1900 Kanawha Blvd. E
Charleston, WV 25301
(304) 558-2021
michael.r.williams@wvag.gov

*Counsel for Plaintiff State of West Virginia*
*\*motion for pro hac vice admission forthcoming*

KEITH G. KAUTZ
Attorney General of Wyoming

/s/ Ryan Schelhaas
RYAN SCHELHAAS*
Chief Deputy Attorney General

OFFICE OF THE ATTORNEY GENERAL OF WYOMING
109 State Capitol
Cheyenne, WY 82002
(307) 777-5786
ryan.schelhaas@wyo.gov

*Counsel for the State of Wyoming*
*\*motion for pro hac vice admission forthcoming*