IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
San Angelo Division

| | |
|---|---|
| SILENCER SHOP FOUNDATION; GUN OWNERS OF AMERICA, INC; FIREARMS REGULATORY ACCOUNTABILITY COALITION, INC.; B&T USA, LLC; PALMETTO STATE ARMORY, LLC; SILENCERCO WEAPONS RESEARCH, LLC (d/b/a SILENCERCO); GUN OWNERS FOUNDATION; BRADY WETZ; STATE OF TEXAS; STATE OF ALASKA; STATE OF GEORGIA; STATE OF IDAHO; STATE OF INDIANA; STATE OF KANSAS; STATE OF LOUISIANA; STATE OF MONTANA; STATE OF NORTH DAKOTA; STATE OF OKLAHOMA; STATE OF SOUTH CAROLINA; STATE OF SOUTH DAKOTA; STATE OF UTAH; STATE OF WEST VIRGINIA; and STATE OF WYOMING, <br><br> *Plaintiffs*, <br><br> v. <br><br> BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; DANIEL DRISCOLL, in his Official Capacity as ACTING DIRECTOR OF THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; and PAMELA BONDI, in her Official Capacity as ATTORNEY GENERAL OF THE UNITED STATES; <br><br> *Defendants*. | Case No. 6:25-cv-56-H |

## DECLARATION OF BRADY WETZ

1. My name is Brady Wetz. I am an adult resident of San Angelo, Texas, within Tom Green County. I am a citizen of the United States of America and a member of Gun Owners of America, Inc.

2. I am eligible under state and federal law to acquire and possess firearms, including firearm silencers, short-barreled rifles, short-barreled shotguns, and "Any Other Weapons" ("AOWs") regulated under the National Firearms Act ("NFA"). I am an avid gun owner and supporter of the Second Amendment right to keep and bear arms. I possess a valid Texas License to Carry a handgun.

3. I presently have a personal collection of firearms that I have accumulated over many years. I believe that the widespread public ownership of firearms is, as the Second Amendment says, "necessary" for a "free State."

4. I am blessed to live in Texas where, not too long ago, the Texas legislature repealed all state regulations on silencers. Thus, so long as my silencers are lawfully possessed under federal law, they are also lawfully possessed in Texas.

5. I currently do not own any short-barreled rifles or short-barreled shotguns. However, I do currently own multiple silencers, which I acquired from a few places, such as The Outdoorsman, a local federally licensed dealer.

6. Each time I acquired a silencer, I was forced to complete a Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Form 5320.4 application, known as a Form 4, and to provide fingerprints, photographs, and other personally identifying information, including my date of birth and home address. I then was required to pass a background check and pay a $200 excise tax per

silencer.[1]  And aside from the obvious costs of purchase, sales tax, and excise tax, I also had to cover the cost of submitting my own fingerprints.

7. Speaking from experience, the NFA registration process to exercise an enumerated constitutional right is invasive, onerous, and time-consuming.  No other constitutional right requires such burdens and hoops.

8. Consider the invasiveness of NFA registration.  In order to federally register my silencers to comply with the NFA, I in the past have been required to divulge to the government my name, physical appearance and characteristics, date of birth, demographic information, fingerprints, and home address, and additionally to provide the make, model, caliber, physical dimensions, serial number, and physical location of each of my silencers.  Then, my name and address appear on a government registry alongside detailed information on what NFA-regulated firearms I own.

9. Not only that, but ATF Forms have to be submitted "in duplicate," meaning that I must complete two sets of ATF Forms for each firearm or silencer I wish to acquire.  And then, after I complete the Forms, I am required to send a copy of my completed Forms to my local chief law enforcement officer, who is then asked to contact ATF "should [he] have information that may disqualify [me] from acquiring or possessing a firearm...."[2]

10. Thus, not only do I have to waive my privacy with respect to the federal government, but also I must waive my privacy with respect to local law enforcement, practically inviting the chief law enforcement officer to exercise veto power over my right to keep and bear arms.

---

[1] Although 26 U.S.C. § 5811(b) provides that the "tax imposed … shall be paid by the transferor," dealers simply pass the cost to the transferee – a standard practice for the industry.  Dealers either will prompt the transferee to enter their own payment information to pay the tax, or they will cover the cost of the tax but require the transferee to pay them an offsetting (or greater) fee.

[2] *See* https://www.atf.gov/firearms/docs/form/form-4-application-tax-paid-transfer-and-registration-firearm-atf-form-53204/download at 2.

11. This process remains substantially the same if I were to seek ATF permission to "make" my own NFA-regulated firearms, which I intend to do. Rather than filing an ATF Form 4, I would have to file an ATF Form 5320.1, known as a Form 1, and provide the same registration information. However, I would then face the additional requirement of *engraving* certain information onto the firearm I "make," which creates additional costs – *i.e.*, paying for a laser engraving service with NFA compliance expertise. *See* 26 U.S.C. § 5842(a); 27 C.F.R. § 479.102(a)(1).

12. Also consider the onerousness of the fingerprint and photograph requirement. I have never been arrested, but the onerous registration process I had to follow to acquire my NFA items certainly made it feel that way. In order to exercise my rights, I must have my fingerprints taken, supply my own mugshot, and have my personally identifying information entered into a government database. I should not have to go through arrest-like procedures simply to exercise an enumerated right that "shall not be infringed."

13. Finally, it takes considerable time to complete the registration process. Careful completion of an ATF Form 1 or Form 4 can take the better part of an hour if I am doing it myself. And then, notwithstanding all the paperwork that I had to complete to acquire my silencers, I have had to wait a significant amount of time for ATF to approve my paperwork before I could physically acquire my silencers from my dealer. For example, the *shortest* period that ATF has taken to approve one of my applications to obtain a silencer has been *three weeks*.

14. Even if ATF were to approve any given NFA application quickly, there is no predicting how long the waiting period will be at the outset. NFA approval times are wholly indeterminate, and there is no statutory or regulatory requirement that ATF take action on applications within a specified period of time.

15. In fact, in contrast to the 'first in, first out' background check procedure for typical National Instant Criminal Background Check System ("NICS") checks, under which a dealer with a still-pending NICS check may transfer a firearm three days after contacting NICS, the NFA contains no provision to expedite wait times. Historically, it would seem that NFA background checks have been 'first in, last out,' which has contributed to the utterly unpredictable nature of NFA approval times. My exercise of an enumerated constitutional right should not revolve around what is convenient for bureaucrats.

16. Now, with the passage of President Trump's "One Big Beautiful Bill," I understand that the tax on short-barreled rifles, short-barreled shotguns, AOWs,[3] and silencers has been reduced to zero, effective on January 1, 2026. I would like to acquire and make additional NFA-regulated items within 30 days of this effective date now that I do not have to pay the additional tax. Yet while this tax is now set at zero (an oxymoron), the process of obtaining "approval" from the ATF remains the same, because the registration requirements have not been repealed. Indeed, I am still required to obtain a photograph and fingerprints, provide my personal information all over again with each subsequent application, and then submit either an ATF Form 5320.1, were I to make an NFA firearm or silencer, or an ATF Form 5320.4, if I were to acquire one from a dealer.

17. Although I already have more than one silencer registered to me, I do not believe the government has any further business knowing the number or type of firearms I own, much less

---

[3] An AOW is "any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive, a pistol or revolver having a barrel with a smooth bore designed or redesigned to fire a fixed shotgun shell, weapons with combination shotgun and rifle barrels 12 inches or more, less than 18 inches in length, from which only a single discharge can be made from either barrel without manual reloading, and shall include any such weapon which may be readily restored to fire." 26 U.S.C. § 5845(e).

maintaining a registry of the exercise of my Second Amendment rights. I value those Second Amendment rights and my privacy.

18. As discussed in more detail below, I would, absent the NFA's registration requirements, acquire short-barreled rifles, short-barreled shotguns, AOWs, and additional silencers after the tax on these items is repealed. I would add these items to my existing firearms collection, which I have amassed over the years as an avid hobbyist. I would use these items for hunting, target practice, and to defend myself, my family, and my property. Some of these items I would acquire immediately, as I am eager to obtain them as quickly as possible. Others I would make myself, as I enjoy the process of building and modifying guns and gun accessories.

19. The onerous federal registration requirement that remains in place—backed by felony criminal penalties—deters me from making or acquiring any short-barreled rifles, short-barreled shotguns, AOWs, or additional silencers. Because the NFA's registration provisions require me to expend time and money on compliance and require me to hand over personal information to the Government that I do not want to provide, under present circumstances I will not acquire or make any short-barreled rifles, short-barreled shotguns, AOWs, or additional silencers while the registration requirement is in effect.

20. After the tax on silencers is set to $0, if I were not required by law to comply with all the NFA registration requirements and then wait days, weeks, or months for ATF approval, I would acquire a Lone Star Silencer silencer, Scoundrel model, a .22 caliber silencer, from Red Status Gunworks, a federally licensed firearm dealer. I would attach this silencer to one of my firearms that does not currently have one installed. This silencer satisfies the definition of "silencer" and "firearm" at 26 U.S.C. § 5845(a)(7) and 18 U.S.C. § 921(a)(25). I would not register the silencer. I would acquire this within 30 days. And if I were able to acquire a silencer without having to

comply with the NFA's registration requirements, I would be able to take possession of my firearm silencer immediately, because my Texas License to Carry serves as a "Brady alternate" which exempts me from the usual repetitive background check requirement for dealer transfers imposed by the Gun Control Act.[4]

21. Moreover, after the tax on silencers is set to $0, if I were not required by law to comply with all the NFA registration requirements and then wait days, weeks, or months for ATF approval, I also would make my own silencer within 30 days.  Specifically, I would utilize materials available in my local community such as thread adapters, tubing, bottles, plumbing materials, washers, tape, automotive components, and/or mesh filling to construct a silencer.  The silencer would satisfy the definition of "silencer" and "firearm" at 26 U.S.C. § 5845(a)(7) and 18 U.S.C. § 921(a)(25).  I would not register the silencer.

22. And, after the tax on short-barreled shotguns is set to $0, if I were not required by law to comply with all the NFA registration requirements and then wait days, weeks, or months for ATF approval, I would make a short-barreled shotgun within 30 days.  Specifically, I would acquire a Mossberg 500 featuring a buttstock from Red Status Gunworks.  I would then use my bandsaw to shorten the shotgun barrel to 14 inches, rendering it a "short-barreled shotgun" and a "firearm" under 26 U.S.C. § 5845(a)(1)–(2).  I would not register the short-barreled shotgun.

23. Likewise, after the tax on short-barreled rifles is set to $0, if I were not required by law to comply with all the NFA registration requirements and then wait days, weeks, or months for ATF approval, I also would make a short-barreled rifle within 30 days.  Specifically, I would acquire a Red Status Gunworks brand AR-15 upper receiver featuring a barrel length of 14.5 inches from

---

[4] *See* https://www.atf.gov/rules-and-regulations/laws-alcohol-tobacco-firearms-and-explosives/gun-control-act/brady-law/brady-permit-chart.

Red Status Gunworks. I would then install that short-barreled upper receiver on a made in Texas, Red Status Gunworks AR-15-style lower receiver with buttstock such that it would become a "short-barreled rifle" and a "firearm" under 26 U.S.C. § 5845(a)(3)–(5). I would not register the short-barreled rifle.

24. After the tax on AOWs is set to $0, if I were not required by law to comply with all the NFA registration requirements and then wait days, weeks, or months for ATF approval, I also would make an AOW within 30 days. Specifically, I would acquire a Bond Arms derringer, "The Texan" model with 6 inch barrel, handgun chambered in .45LC / .410ga from my local FFL, The Outdoorsman, and upon receiving the firearm, I would remove the barrel and take the barrel to Red Status Gunworks to have the barrel rifling removed, rendering the barrel smoothbore, and then I would reinstall the smoothbore barrel on the Bond Arms derringer receiver, rendering the weapon an "AOW" under 26 U.S.C. § 5845(e) and a "firearm" under 26 U.S.C. § 5845(a)(5). I would not register the AOW.

25. After the tax on silencers is set to $0, if I were not required by law to comply with all the NFA registration requirements and then wait days, weeks, or months for ATF approval, I also would acquire a silencer within 30 days. I would acquire a Lone Star Silencer brand silencer, model Scoundrel, a .22 caliber silencer, which is manufactured in Texas, from Red Status Gunworks. That silencer satisfies the definition of "silencer" and "firearm" at 26 U.S.C. § 5845(a)(7) and 18 U.S.C. § 921(a)(25). I would not register the silencer.

26. After the tax on short-barreled rifles is set to $0, if I were not required by law to comply with all the NFA registration requirements and then wait days, weeks, or months for ATF approval, I also would acquire a short-barreled rifle within 30 days. I would acquire a short-barreled AR-15 pattern rifle in 5.56mm featuring a barrel of 11.5 inches in length from Red Status Gunworks,

which is manufactured in Texas, from Red Status Gunworks. That rifle satisfies the definition of "short-barreled rifle" and a "firearm" under 26 U.S.C. § 5845(a)(3)–(5). I would not register the short-barreled rifle.

27. After the tax on short-barreled shotguns is set to $0, if I were not required by law to comply with all the NFA registration requirements and then wait days, weeks, or months for ATF approval, I would acquire a short-barreled shotgun within 30 days. I would acquire a short-barreled Mossberg 590 shotgun, with the barrel being 14 inches in length, from Red Status Gunworks, which is manufactured in Texas, from Red Status Gunworks. That shotgun satisfies the definition of a "short-barreled shotgun" and a "firearm" under 26 U.S.C. § 5845(a)(1)–(2). I would not register the short-barreled shotgun.

28. After the tax on AOWs is set to $0, if I were not required by law to comply with all the NFA registration requirements and then wait days, weeks, or months for ATF approval, I would acquire an AOW within 30 days. I would acquire an AR-15 pattern firearm in 5.56mm, made in Texas by Red Status Gunworks, featuring an overall length of under 26 inches, a barrel length of 10.5 inches, and a vertical foregrip, and not featuring a buttstock, from Red Status Gunworks, which is manufactured in Texas, from Red Status Gunworks. That firearm satisfies the definition of a "any other weapon" and a "firearm" under 26 U.S.C. § 5845(a)(5). I would not register the any other weapon.

29. After the tax on silencers is set to $0, if I were not required by law to comply with all the NFA registration requirements and then wait days, weeks, or months for ATF approval, I also would, within 30 days, sell and transfer through a private transaction a silencer from my collection that no longer suits my needs. Although under the Gun Control Act and Texas law, it would be

permissible for me to sell this silencer to another law-abiding Texas resident, the NFA deters me from doing so.

30. In addition to these immediate plans following the zeroing out of taxes on NFA firearms—if not required by law to comply with all the NFA registration requirements and then wait days, weeks, or months for ATF approval—I would continue to make my own NFA firearms, and would continue to acquire them from Texas-based federally licensed firearm dealers and from other Texas residents over the coming years, to add to my collection.  I would also sell NFA firearms through private sales to other Texas residents, when various firearms no longer suit my needs.  I would not register the NFA firearms when engaging in these activities.

31. In sum, I would make, acquire, and possess unregistered short-barreled rifles, unregistered short-barreled shotguns, unregistered AOWs, and unregistered silencers, and otherwise transfer and dispose of such items that I no longer have use for, both in the near future and also repetitively in the coming months and years after the NFA tax is reduced to $0, but for the federal registration requirement and my fear of arrest and prosecution thereunder for noncompliance.

I, Brady Wetz, certify under penalty of perjury that the foregoing is true and correct.



_____  
DATE  

_____  
BRADY WETZ