**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION**

SILENCER SHOP FOUNDATION, *et al.*,

     *Plaintiffs*,

    v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES, *et al.*,

     *Defendants.*

No. 6:25-cv-56-H

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................1

I.     Plaintiffs assert facial challenges to the relevant NFA requirements and prohibitions, not as-applied challenges. ..........................................................................................1

II.    The Constitution empowers Congress to adopt the challenged NFA regulations. ...................6

    A.    The challenged NFA regulations remain a valid exercise of Congress's taxing power. .......................................................................................................................6

    B.    Congress's power under the Commerce Clause independently authorizes the challenged NFA regulations. ...........................................................................................8

        1.    The NFA is not solely an exercise of Congress's taxing power. .......................8

        2.    The NFA regulates persons and things in interstate commerce. ....................12

        3.    The NFA regulates intrastate activities that substantially affect interstate commerce. ...............................................................................................13

    C.    The Necessary and Proper Clause further supports the challenged NFA regulations. .................................................................................................................16

III.    The challenged NFA regulations comport with the Second Amendment. .............................16

IV.    Any relief should be narrowly tailored to redress plaintiffs' actual injuries. ...........................22

    A.    Plaintiffs are not entitled to a universal injunction. .........................................................22

    B.    Nor are plaintiffs entitled to the narrower injunction they alternatively propose. ...................................................................................................................23

CONCLUSION ...............................................................................................................25

i

# TABLE OF AUTHORITIES

## Cases

*Andrews v. State,*
   50 Tenn. 165 (1871) ................................................................................................................ 20, 21

*Arizona v. Biden,*
   40 F.4th 375 (6th Cir. 2022) ........................................................................................................23

*Bondi v. VanDerStok,*
   604 U.S. 458 (2025) ......................................................................................................................2

*Book People, Inc. v. Wong,*
   91 F.4th 318 (5th Cir. 2024) ........................................................................................................18

*Calderon Lopez v. Lyons,*
   2025 WL 3683918 (N.D. Tex. Dec. 19, 2025) ............................................................................22

*Cannon v. Bryant,*
   2022 WL 487913 (N.D. Tex. Feb. 16, 2022) ............................................................................ 3, 4

*Cath. Leadership Coal. of Tex. v. Reisman,*
   764 F.3d 409 (5th Cir. 2014) ........................................................................................................4

*Collins v. Jackson Pub. Sch. Dist.,*
   609 F. App'x 792 (5th Cir. 2015) ..................................................................................................6

*Croft v. Perry,*
   624 F.3d 157 (5th Cir. 2010) ............................................................................................... 2, 3, 5

*District of Columbia v. Heller,*
   554 U.S. 570 (2008) ...........................................................................................................*passim*

*Fife v. State,*
   31 Ark. 455 (1876) ......................................................................................................................21

*Garcia v. Vanguard Car Rental USA, Inc.,*
   540 F.3d 1242 (11th Cir. 2008) ...................................................................................................16

*Gonzales v. Raich,*
   545 U.S. 1 (2005) ............................................................................................................12, 14, 15

*Haynes v. United States,*
   390 U.S. 85 (1968) ........................................................................................................................9

*Heart of Atlanta Motel, Inc. v. United States,*
   379 U.S. 241 (1964) ....................................................................................................................15

*Hewitt v. Helms,*
482 U.S. 755 (1987) ...................................................................................................................19

*Hodel v. Va. Surface Mining & Reclamation Ass'n,*
452 U.S. 264 (1981) ...................................................................................................................15

*Hull v. Kapstone Container Corp.,*
2018 WL 4409798 (N.D. Tex. Sept. 17, 2018) .........................................................................16

*In re Cao,*
619 F.3d 410 (5th Cir. 2010) ................................................................................................. 5, 6

*John Doe No. 1 v. Reed,*
561 U.S. 186 (2010) ......................................................................................................2, 4, 5, 6

*Johnson v. United States,*
576 U.S. 591 (2015) ...................................................................................................................22

*Legal Tender Cases,*
79 U.S. (12 Wall) 457 (1870) ......................................................................................................9

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992) .....................................................................................................................7

*Mock v. Garland,*
75 F.4th 563 (5th Cir. 2023) ............................................................................................... 18, 22

*Mock v. Garland,*
697 F. Supp. 3d 564 (N.D. Tex. 2023) .....................................................................................23

*Moody v. NetChoice, LLC,*
603 U.S. 707 (2024) .....................................................................................................................5

*N.Y. State Rifle & Pistol Ass'n v. Bruen,*
597 U.S. 1 (2022) .................................................................................................................18, 20

*NFIB v. Sebelius,*
567 U.S. 519 (2012) ...............................................................................................................9, 13

*Perez v. United States,*
402 U.S. 146 (1971) ...................................................................................................................15

*Scott v. Schedler,*
826 F.3d 207 (5th Cir. 2016) .....................................................................................................25

*Second Amend. Found., Inc v. ATF,*
702 F. Supp. 3d 513 (N.D. Tex. 2023) .....................................................................................17

*Smith v. Bayer Corp.,*
   564 U.S. 299 (2011) ..................................................................................................25

*Sonzinsky v. United States,*
   300 U.S. 506 (1937) ...............................................................................................6, 9

*Spencer v. Kemna,*
   523 U.S. 1 (1998) ....................................................................................................19

*State v. Kerner,*
   107 S.E. 222 (N.C. 1921) .......................................................................................21

*Summers v. Earth Island Inst.,*
   555 U.S. 488 (2009) ................................................................................................25

*Texas v. ATF,*
   700 F. Supp. 3d 556 (S.D. Tex. 2023) ..............................................................23, 24

*Texas v. ATF,*
   737 F. Supp. 3d 426 (N.D. Tex. 2024) ..................................................................24

*Texas v. United States,*
   126 F.4th 392 (5th Cir. 2025) .................................................................................24

*Trump v. CASA, Inc.,*
   606 U.S. 831 (2025) ...............................................................................5, 22, 23, 25

*United States v. Arce,*
   118 F.3d 335 (5th Cir. 1997) ..................................................................................11

*United States v. Ardoin,*
   19 F.3d 177 (5th Cir. 1994) ...............................................................................10, 11

*United States v. Barbeau,*
   2016 WL 1046093 (W.D. Wash. Mar. 16, 2016) ...................................................18

*United States v. Beaty,*
   2023 WL 9853255 (M.D. Fla. Jan. 20, 2023) .......................................................17

*United States v. Chan,*
   2024 WL 4028019 (D. Haw. Sept. 3, 2024) ..........................................................17

*United States v. Conner,*
   2025 WL 2858030 (W.D. Tex. Sept. 19, 2025) .....................................................17

*United States v. Cox,*
   235 F. Supp. 3d 1221 (D. Kan. 2017) ....................................................................17

*United States v. Cox,*
    906 F.3d 1170 (10th Cir. 2018) ........................................................................................... 17

*United States v. Danielson,*
    2023 WL 5288049 (D. Minn. Aug. 17, 2023) ..................................................................... 17

*United States v. Doremus,*
    249 U.S. 86 (1919) .................................................................................................................. 7

*United States v. Hale,*
    978 F.2d 1016 (8th Cir. 1992) ............................................................................................. 10

*United States v. Hernandez,*
    159 F.4th 425 (5th Cir. 2025) ....................................................................................... 16, 17

*United States v. Holder,*
    2024 WL 1012914 (N.D. Ga. Mar. 9, 2024) ...................................................................... 17

*United States v. Houston,*
    103 F. App'x 346 (10th Cir. 2004) ...................................................................................... 10

*United States v. Jennings,*
    195 F.3d 795 (5th Cir. 1999) ............................................................................................... 22

*United States v. Jernigan,*
    750 F. Supp. 3d 579 (E.D. Va. 2024) ................................................................................. 17

*United States v. Johnson,*
    42 F.4th 743 (7th Cir. 2022) ............................................................................................... 15

*United States v. Jones,*
    976 F.2d 176 (4th Cir. 1992) ............................................................................................... 10

*United States v. Lopez,*
    514 U.S. 549 (1995) .................................................................................................. 12, 13, 15

*United States v. Miller,*
    307 U.S. 174 (1939) ...................................................................................................... 16, 21

*United States v. Miller,*
    2023 WL 6300581 (N.D. Tex. Sept. 27, 2023) .................................................................. 17

*United States v. Morrison,*
    529 U.S. 598 (2000) .......................................................................................................... 9, 15

*United States v. Myers,*
    2024 WL 2924081 (D. Nev. June 10, 2024) ....................................................................... 17

iv

*United States v. Parker*,
 960 F.2d 498 (5th Cir. 1992) ........................................................................ 9, 10

*United States v. Pearson*,
 8 F.3d 631 (8th Cir. 1993) ................................................................................. 10

*United States v. Peterson*,
 161 F.4th 331 (5th Cir. 2025) ............................................................................ 18

*United States v. Rahimi*,
 602 U.S. 680 (2024) ..................................................................................... *passim*

*United States v. Robinson*,
 2023 WL 12066735 (M.D. Fla. Feb. 9, 2023) ............................................... 17

*United States v. Robinson*,
 2025 WL 870981 (11th Cir. Mar. 20, 2025) ................................................... 17

*United States v. Ross*,
 458 F.2d 1144 (5th Cir. 1972) .............................................................................. 9

*United States v. Royce*,
 2023 WL 2163677 (D.N.D. Feb. 22, 2023) ................................................... 17

*United States v. Rush*,
 130 F.4th 633 (7th Cir. 2025) ............................................................................ 17

*United States v. Rush*,
 2023 WL 403774 (S.D. Ill. Jan. 25, 2023) ..................................................... 17

*United States v. Sawyer*,
 2018 WL 572094 (D. Kan. Jan. 26, 2018) ...................................................... 17

*United States v. Serna*,
 309 F.3d 859 (5th Cir. 2002) .............................................................................. 22

*United States v. Shepherd*,
 2024 WL 71724 (S.D. Miss. Jan. 5, 2024) ..................................................... 17

*United States v. Sineneng-Smith*,
 590 U.S. 371 (2020) ............................................................................................... 5

*United States v. Solis*,
 124 F.3d 192 (5th Cir. 1997) .............................................................................. 11

*United States v. Stepp-Zafft*,
 733 F. App'x 327 (8th Cir. 2018) ...................................................................... 18

*United States v. Thompson/Ctr. Arms Co.*,
  504 U.S. 505 (1992) ........................................................................................................22

*United States v. Wilson*,
  440 F.2d 1068 (6th Cir. 1971) ........................................................................................10

*Watterson v. ATF*,
  2024 WL 897595 (E.D. Tex. Mar. 1, 2024) ...................................................................17

**Statutes**

18 U.S.C. § 922 ...................................................................................................................4

26 U.S.C. § 5802 ...............................................................................................................12

26 U.S.C. § 5812 ...............................................................................................................12

26 U.S.C. § 5841 ...............................................................................................................12

26 U.S.C. § 5842 ...............................................................................................................12

26 U.S.C. § 5843 ...............................................................................................................12

26 U.S.C. § 5844 ...............................................................................................................12

26 U.S.C. § 5845 .........................................................................................................11, 12

26 U.S.C. § 5861 .........................................................................................................11, 12

**Rules**

Fed. R. Civ. P. 56 .................................................................................................................7

Fed. R. Civ. P. 65 ...............................................................................................................25

**Legislative Materials**

H.R. Rep. No. 83-1337 (1954) .....................................................................................19, 20

## INTRODUCTION

For nearly a century, the National Firearms Act ("NFA") has regulated the manufacturing, transfer, and possession of certain classes of weapons that Congress deemed particularly dangerous, including short-barreled rifles and shotguns, suppressors, and the "any other weapons" class of concealable firearms (or "AOWs"). As demonstrated in defendants' opening brief, *see* ECF No. 60 ("Defs.' Br."), the NFA's regulation of these weapons fits squarely within Congress's constitutional authority and does not facially violate the Second Amendment. Plaintiffs offer no persuasive response to defendants' arguments, and thus have failed to carry their burden to clearly demonstrate that the challenged NFA regulations are facially unconstitutional. This Court should therefore grant summary judgment in defendants' favor on both of plaintiffs' claims.[1]

## ARGUMENT

### I.     Plaintiffs assert facial challenges to the relevant NFA requirements and prohibitions, not as-applied challenges.

Since commencing this case six months ago, plaintiffs have litigated their claims as *facial* challenges to the NFA's requirements and prohibitions on the manufacture, transfer, and possession of short-barreled rifles and shotguns, suppressors, and AOWs. Yet, in seeking to totally upend these statutory regulations, plaintiffs insist that they need not satisfy a facial challenge's demanding standard because, they posit, they are actually asserting *as-applied* challenges. *See* Pls.' Opp. 3–5, 46. But in so arguing, plaintiffs misapprehend the distinctions between facial and as-applied challenges and refuse to acknowledge the inherently facial nature of their claims and arguments.

Contrary to what plaintiffs contend, *id.* at 4–5, in determining whether a plaintiff has brought

---

[1] Plaintiffs' opposition, *see* ECF No. 75 ("Pls.' Opp."), is replete with gratuitous mischaracterizations of defendants' arguments. To address each and every one of these in this brief would be distracting and would muddle the issues that are actually before the Court. Therefore, defendants will let their briefing speak for itself without conceding the correctness of plaintiffs' mischaracterizations of defendants' arguments.

a facial or as-applied challenge, "[t]he label" the plaintiff chooses "is not what matters." *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). "The important point" of distinction is whether the plaintiff's "claim and the relief that would follow … reach beyond" the plaintiff's "particular circumstances." *Id.* If so, the plaintiff must "satisfy [the] standards for a facial challenge." *Id.*

Applying those principles here, plaintiffs' constitutional claims are plainly facial attacks on the challenged NFA regulations. In both their complaint and summary-judgment briefing, plaintiffs have claimed and argued that the NFA's regulation of short-barreled rifles and shotguns, suppressors, and AOWs is *categorically* beyond Congress's enumerated powers and *categorically* violates the Second Amendment. *See, e.g.*, Compl. p. 2 ("[T]he NFA cannot be upheld under any … Article I power."); *id.* at 3 ("With respect to the untaxed firearms, the Act is now unconstitutional."); *id.* ¶ 67 ("The NFA's regulatory requirements pertaining to untaxed firearms exceed Congress's enumerated powers …."); *id.* ¶ 72 ("The NFA's regulatory requirements pertaining to untaxed firearms violate the Second Amendment …."); Pls.' Memo. ISO Pls.' MSJ ("Pls.' Br.") 1, ECF No. 49 ("Applying the NFA to the now-untaxed firearms is flatly unconstitutional."); *id.* at 14 ("The challenged NFA provisions are unconstitutional. *First*, they exceed Congress's enumerated powers…. *Second*, the challenged NFA provisions violate the Second Amendment."). Because plaintiffs contend that the NFA's regulation of these weapons is entirely unconstitutional, plaintiffs must "establish that no set of circumstances exists under which [such regulation] would be valid." *United States v. Rahimi*, 602 U.S. 680, 693 (2024); *cf. Bondi v. VanDerStok*, 604 U.S. 458, 467 (2025) (applying this standard where plaintiffs challenged ATF's "authority to regulate any weapons parts kits or unfinished frames or receivers"). Nowhere have plaintiffs "limited" their arguments, or asked this Court to limit its constitutional analyses, to the idiosyncrasies of their "particular circumstances." *See Croft v. Perry*, 624 F.3d 157, 164 (5th Cir. 2010).

Nor have plaintiffs limited their requested relief. Based on their categorical claims, plaintiffs have requested two forms of relief: *first*, a declaration that the NFA's regulation of short-barreled rifles

and shotguns, suppressors, and AOWs exceeds Congress's enumerated powers and violates the Second Amendment, *see* Pls.' Br. 1; Compl., Prayer for Relief ¶¶ A, B; and *second*, a permanent injunction imposing "[a] blanket ban on the enforcement of the challenged NFA provisions," *see* Pls.' Br. 48; Pls.' Opp. 46; Compl., Prayer for Relief ¶ C; *see also Croft*, 624 F.3d at 164 ("Our conclusion that the challenges are facial attacks is confirmed by the relief sought by the plaintiffs: that the pledge be invalidated in its entirety, not merely that it not be applied to them or their children."). And so, given the nature of plaintiffs' claims, arguments, and requested relief, each of their challenges is "clearly a facial attack." *See Croft*, 624 F.3d at 164; *accord, e.g., Cannon v. Bryant*, 2022 WL 487913, at *10 (N.D. Tex. Feb. 16, 2022). Indeed, across *50 pages* of argument on their enumerated-powers claim, plaintiffs' summary-judgment briefing references their own particular circumstances only *once*, in five lines, and only to provide an example. *See* Pls.' Br. 14–36; Pls.' Opp. 7–35. References to plaintiffs' particular circumstances are similarly sparce in their Second Amendment argument. *See* Pls.' Br. 36–46; Pls.' Opp. 35–45. If plaintiffs truly brought a challenge based on their particular circumstances, one would not have expected their briefing to treat those circumstances as an afterthought.

Plaintiffs' contrary arguments can't change the inherently facial nature of their challenges. Principally, plaintiffs contend that their claims are as-applied because, rather than challenge the NFA in its entirety, they challenge only the NFA's requirements and prohibitions "as applied" to four classes of regulated weapons.[2] *See* Pls.' Opp. 4–5. But that misses the point. Plaintiffs attempt to show that these regulations are unconstitutional in their entirety for these weapons, so they must meet a standard that matches that categorical claim and their request for categorical relief. Again, whether a plaintiff

---

[2] Plaintiffs do not have a consistent view of their claims. While plaintiffs say at one point that they are bringing both facial and as-applied challenges, *see* Pls.' Opp. 4, elsewhere they claim to be asserting only as-applied challenges, *see id.* at 46. And the upshot of their argument would be that plaintiffs are asserting only as-applied challenges, as all their claims are focused solely on the NFA's application to short-barreled rifles and shotguns, suppressors, and AOWs. Regardless, that argument is incorrect, as defendants have explained.

has brought a facial or as-applied challenge does not turn on the words they choose to characterize the scope of their claim. *Reed*, 561 U.S. at 194; *accord, e.g.*, *Cath. Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 426 (5th Cir. 2014); *Cannon*, 2022 WL 487913, at *10 ("[T]he court determines that [plaintiff's] due process challenge is facial in nature regardless of how it is characterized in her pleadings or summary judgment response."). Moreover, a challenge is not as-applied simply because it does not attack an entire Act of Congress. *See, e.g.*, *Rahimi*, 602 U.S. at 693 (facial challenge to 18 U.S.C. § 922(g)(8), not the entire Gun Control Act). Indeed, the Supreme Court in *Reed* rejected this exact argument, finding that the plaintiffs had brought a facial First Amendment challenge even though the claim was, in a sense, "'as applied' in … that it [did] not seek to strike [Washington's Public Records Act] in all its applications, but only to the extent it cover[ed] referendum petitions." 561 U.S. at 194. Plaintiffs' claims are thus no less of a facial attack simply because they challenge the NFA's regulation of four classes of weapons.[3]

Plaintiffs also maintain (remarkably) that the injunction they seek—*i.e.*, "a *blanket ban* on the enforcement" of the challenged NFA regulations—is "as-applied relief," because it "is necessary to afford" the plaintiffs "complete relief." *See* Pls.' Opp. 5 (emphasis added). But plaintiffs do not dispute that both the declaratory and injunctive relief they request would extend well beyond their particular circumstances, which is the relevant remedial question. *See, e.g.*, *Reed*, 561 U.S. at 194 ("The important point is that plaintiffs' claim and the relief that would follow—an injunction barring the secretary of state from making referendum petitions available to the public—reach beyond the particular

---

[3] Plaintiffs also point to the fact that their Commerce Clause arguments on summary judgment focus almost entirely on the NFA's regulation of intrastate activities. *See* Pls.' Opp. 6. But that's beside the point. Plaintiffs' *claim for relief* is that the NFA's regulation of short-barreled rifles and shotguns, suppressors, and AOWs categorically exceeds Congress's enumerated powers, not only insofar as it applies to intrastate activities. *See* Compl., Count I; Pls.' Br. 14. That plaintiffs try to prove that claim by arguing that only *some* of the NFA's applications exceed Congress's Commerce Clause authority proves only that plaintiffs' arguments fail to show facial unconstitutionality, *not* that plaintiffs have brought an as-applied challenge.

circumstances of these plaintiffs." (cleaned up)); *Croft*, 624 F.3d at 164 ("Our conclusion that the challenges are facial attacks is confirmed by the relief sought by the plaintiffs: that the pledge be invalidated in its entirety, not merely that it not be applied to them or their children."). Indeed, plaintiffs' requested relief would extend to individuals whose particular circumstances are completely unknown the Court. Also, affording complete relief to plaintiffs is the *very most* a federal court can do. *See Trump v. CASA, Inc.*, 606 U.S. 831, 854 (2025). So the fact that plaintiffs have asked this Court for the greatest remedy it can possibly grant hardly demonstrates that plaintiffs have brought the limited, case-specific, as-applied challenges they suggest.

In hedging their bets, plaintiffs suggest that, regardless of whether they have asserted as-applied challenges, this Court can still consider the constitutionality of the challenged NFA regulations as applied to plaintiffs. *See* Pls.' Opp. 4. But resolving as-applied challenges that plaintiffs never asserted would contravene "the principle of party presentation." *United States v. Sineng-Smith*, 590 U.S. 371, 375–76 (2020). Plaintiffs' claims should be resolved on the grounds on which plaintiffs have chosen to litigate them. And therefore, to succeed on those claims, plaintiffs must "establish that no set of circumstances exists under which" the challenged NFA regulations "would be valid." *Rahimi*, 602 U.S. at 693 (citation omitted). As explained, *see* Defs.' Br. 7–32, plaintiffs cannot satisfy that demanding standard. Moreover, plaintiffs cite no authority to support their suggestion that the Court should resolve unasserted as-applied challenges, aside from two concurring opinions. *See* Pls.' Opp. 4 (citing *Moody v. NetChoice, LLC*, 603 U.S. 707, 757 n.1 (2024) (Thomas, J., concurring); *In re Cao*, 619 F.3d 410, 442 (5th Cir. 2010) (Jones, C.J., concurring in part and dissenting in part)). But in *Moody*, the Supreme Court did not conduct an as-applied analysis when presented with a facial challenge. *See* 603 U.S. at 723–45. Nor did the Supreme Court in *Reed* or the Fifth Circuit in *Croft*. *Reed*, 561 U.S. at 194; *Croft*, 624 F.3d at 164. And Judge Jones's concurrence *In re Cao* takes issue with the majority doing the exact opposite—*i.e.*, analyzing an as-applied challenge under a facial-challenge standard. *See* 619 F.3d

at 442 (Jones, C.J., concurring in part and dissenting in part); *see also id.* at 434.

If the Court disagrees with defendants, however, and finds that plaintiffs are asserting as-applied challenges, then at the very least, plaintiffs cannot obtain injunctive relief on behalf of unknown individuals whose "particular circumstances" are completely unknown to the Court, *see Reed*, 561 U.S. at 194, including unknown members of the associational plaintiffs.

## II.     The Constitution empowers Congress to adopt the challenged NFA regulations.

### A.     The challenged NFA regulations remain a valid exercise of Congress's taxing power.

As defendants' opening brief explains, *see* Defs.' Br. 7, the NFA, in its current form, continues to impose a special occupational tax on businesses that import, manufacture, or deal in short-barreled rifles and shotguns, suppressors, and AOWs. And unrebutted testimony from the Chief of ATF's NFA Division establishes that the challenged NFA requirements and prohibitions continue, in several ways, to assist ATF in collecting and enforcing that special occupational tax, including by providing ATF with information that helps ensure that the tax is being paid by those who owe it, and by deterring those who do business in NFA firearms from evading their tax obligations. *See id.* at 10; *see also infra* 7–8. That unrebutted record evidence thus establishes that the challenged NFA regulations continue to be "in aid of a revenue purpose" and are therefore firmly within Congress's taxing power. *See Sonzinsky v. United States*, 300 U.S. 506, 513 (1937).

Plaintiffs do not meaningfully dispute any of this. Rather, convinced that the NFA's application and registration requirements "do not support collection of the special occupational tax," *see* Pls.' Opp. 7, plaintiffs' opposition largely engages in an abstract discussion about what plaintiffs *believe* the NFA's various requirements are used for, *see id.* at 8–13. But nowhere do they rebut ATF's sworn testimony to the contrary. *Collins v. Jackson Pub. Sch. Dist.*, 609 F. App'x 792, 795–96 (5th Cir. 2015) ("Arguments in briefs, like allegations in a complaint, are assertions, not evidence" sufficient to create a genuine factual dispute for purposes of summary judgment). Given the unrebutted testimony

of the Chief of ATF's NFA Division, plaintiffs' unfounded views are simply beside the point. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("In response to a summary judgment motion," "the plaintiff can no longer rest on … 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts.'") (quoting Fed. R. Civ. P. 56(e)). Regardless, a couple points warrant a response.

*First*, while no case is on all fours, defendants' authorities explain exactly how the NFA''s application and registration requirements help facilitate collection and enforcement of the special occupational tax. *Contra* Pls.' Opp. 9. Take *United States v. Doremus*, 249 U.S. 86 (1919), which plaintiffs fail to mention. In upholding the taxation-and-regulation scheme of the Harrison Anti-Narcotics Control Act of 1914 under Congress's taxing power, the Supreme Court in *Doremus* explained that that statute's requirements that certain drugs be sold only by registered dealers and only to patients who had valid prescriptions served a revenue-raising purpose because they kept "the traffic" in the regulated drugs "aboveboard and subject to inspection by those authorized to collect the revenue," and "diminish[ed] the opportunity of unauthorized persons to obtain the drugs and sell them clandestinely without paying the tax imposed by" the statute. *Id.* at 94. Likewise, the NFA's application and registration requirements help keep the traffic in NFA firearms aboveboard, enabling ATF to review all making and transfer applications to ensure that any business associated with the relevant firearm has paid the special occupational tax. Also, because these requirements help keep this traffic aboveboard, they further deter and reduce the opportunity for a person doing business in NFA firearms to evade paying the special occupation tax. Other cases dealing directly with the NFA have upheld the Act's regulatory requirements under Congress's taxing power for the same general reasons—*i.e.*, that they provide ATF with helpful information to enforce the NFA's taxes and deter tax evasion. *See* Defs.' Br. 9–10 (collecting cases).

*Second*, plaintiffs confidently assert that "the Government cannot claim to have ever found even a single occupational tax evader." *See* Pls.' Opp. 11. But it can. As ATF explains, "the NFA

Division regularly denies applications where a transferor or transferee hasn't properly paid the [special occupational tax]." *See* Second Decl. of Stephen Albro ¶ 10, SuppApp.0002–5. Indeed, in 2025 alone, "the NFA Division disapproved *691 applications* because of [special-occupational-tax] issues, including a transferor's or transferee's failure to properly pay the [special occupational tax]." *Id.* (emphasis added). Moreover, the NFA Division regularly refers delinquent special-occupational-tax payments to ATF Field Divisions, and also assesses federal firearms licensees penalties and interest for such delinquent payments, if the licensee does not cure the delinquency. *Id.* ¶¶ 11–12. Plaintiffs' speculative assertion that the NFA's application and registration requirements do not support the collection and enforcement of the special occupational tax thus falls flat in light of this unrebutted evidence.

*     *     *

Rather than an imaginative tax on grocers and broccoli, *see* Pls.' Opp. 14, this case concerns a real tax on those who do business in certain types of uniquely dangerous weapons. As the Supreme Court and Fifth Circuit have made clear, Congress has the constitutional authority to impose and enforce regulatory requirements that help ensure that those businesses pay their taxes. Because the challenged NFA regulations continue to serve that revenue-raising purpose, they are a valid exercise of Congress' taxing power. On that basis alone, plaintiffs' enumerated-power claim must fail.

### B.   Congress's power under the Commerce Clause independently authorizes the challenged NFA regulations.

#### 1.   The NFA is not solely an exercise of Congress's taxing power.

Plaintiffs go to great lengths to convince this Court not to reach the question of whether the Commerce Clause independently authorizes the challenged NFA regulations. As they see it, the NFA's constitutionality turns on Congress's taxing power. But their arguments on this score are flawed, for reasons already explained. *See* Defs.' Br. 20–22. A few points bear emphasis.

*First*, plaintiffs continue to misread *Sonzinsky* for the proposition that the NFA is *solely* an exercise of Congress's taxing power. *See* Pls.' Opp. 14–15. But that is *not* what *Sonzinsky* says. In the

8

section of the opinion from which plaintiffs cite, the Supreme Court was addressing the petitioner's argument that the NFA's special occupational tax exceeds Congress's taxing power because it was intended as a penalty. *Sonzinsky*, 300 U.S. at 512–14. Latching onto the Court's observation that the special occupational tax is "[o]n its face … only a taxing measure," plaintiffs repeatedly insist that the Court therein held that the NFA can be based only on Congress's taxing power. *Id.* at 513. But that's plainly wrong. When read in context, the Court was explaining that the special occupational tax is *not* on its face "a penalty resorted to as a means of enforcing the regulations" in the statute. *Id.* And because the tax is on its face a tax and not a penalty, the Court refused to inquire into Congress's "hidden motives" for imposing it. *Id.* at 513–14. Nowhere in this discussion did the Court suggest, as plaintiffs repeatedly assert, that any of the NFA's regulations (much less the *entire* NFA) are solely an exercise of Congress' taxing power, or that they could not be sustained on another enumerated power.

The other cases plaintiffs cite do not help their argument on this point. Plaintiffs quote *Haynes v. United States*, 390 U.S. 85 (1968), and *NFIB v. Sebelius*, 567 U.S. 519 (2012), as saying that the NFA is a "valid exercise of the taxing power." *See* Pls.' Opp. 14. Defendants agree. *See supra* 6–8; Defs.' Br. 7–11. But just because an Act of Congress is a valid exercise of one enumerated power says nothing about whether it can also be a valid exercise of another enumerated power. *United States v. Morrison*, 529 U.S. 598, 607 (2000) ("Every law enacted by Congress must be based on one *or more* of its powers enumerated in the Constitution." (emphasis added)); *Legal Tender Cases*, 79 U.S. (12 Wall) 457, 534 (1870) (Congress is permitted to "group together any number of [constitutional powers] and infer from them all that the power claimed has been conferred."); Defs.' Br. 20–21 (collecting cases). Plaintiffs also cite *United States v. Ross*, 458 F.2d 1144 (5th Cir. 1972), and *United States v. Parker*, 960 F.2d 498 (5th Cir. 1992), as saying that the NFA's constitutional "bedrock" is the taxing power. *See* Pls.' Opp. 16. But again, neither case addressed whether the NFA's requirements or prohibitions could also be upheld under another enumerated power (a question the Fifth Circuit addressed later in *United*

*States v. Ardoin*, 19 F.3d 177 (5th Cir. 1994), discussed below), and that's unsurprising given *Sonzinsky*'s controlling ruling.[4] Plaintiffs have thus cited no authority supporting their view that the NFA is solely an exercise of Congress's taxing power.

On the other side of the ledger are numerous courts that *have* upheld the NFA on other grounds, namely the Commerce Clause. *See, e.g.*, *Ardoin*, 19 F.3d at 180; *United States v. Jones*, 976 F.2d 176, 184 (4th Cir. 1992); *United States v. Wilson*, 440 F.2d 1068 (6th Cir. 1971); *United States v. Pearson*, 8 F.3d 631, 633 (8th Cir. 1993); *United States v. Hale*, 978 F.2d 1016, 1018 (8th Cir. 1992); *United States v. Houston*, 103 F. App'x 346, 349–50 (10th Cir. 2004). Plaintiffs only response to these cases is to observe that some of them, including *Ardoin*, involve machineguns, which they suggest are different for purposes of the Commerce Clause because Congress prohibited private possession of machineguns manufactured after 1986. *See* Pls.' Opp. 15. Setting aside that this argument is incompatible with plaintiffs' contention that, under *Sonzinsky*, the NFA can *only* be an exercise of the taxing power, *see supra* 8–9, plaintiffs never cogently explain why Congress would have the authority under the Commerce Clause to completely ban a type of firearm but *not* have the authority to merely regulate it. And as explained below, *see infra* 14–15, this is a distinction without a constitutional difference.

Moreover, contrary to plaintiffs' argument, *see* Pls.' Opp. 16, the Fifth Circuit's holding in *Ardoin* that the NFA is a valid exercise of Congress's Commerce Clause authority *is* binding precedent, not mere dicta. The Fifth Circuit in *Ardoin* resolved the question of whether the NFA rests on an enumerated power by upholding the Act as both a valid exercise of the taxing power and Commerce Clause power, and contrary to what plaintiffs suggest, *see id.*, the court never elevated its taxing power holding over its Commerce Clause holding, *see* 19 F.3d at 180 ("The NFA can be upheld on the … power to tax or on the power to regulate interstate commerce."); *see also United States v. Arce*, 118 F.3d

---

[4] What's more, *Parker* is a double-jeopardy habeas case. *See* 960 F.2d at 499. Nowhere does it conduct an analysis of the enumerated powers that support the NFA.

335, 342 (5th Cir. 1997) ("[T]his court has recently *held* that the constitutionality of the NFA can be upheld based on either the taxing power or on the interstate commerce power." (emphasis added) (citing *Ardoin*, 19 F.3d at 180)). Nor would there be any basis for this Court to treat *Ardoin*'s holding as mere dicta simply because the Fifth Circuit in a subsequent unpublished (a detail plaintiffs failed to note) opinion held under plain-error review that 26 U.S.C. § 5861(d) is a valid exercise of Congress's taxing power under binding Circuit precedent, and thus had no reason to address the Commerce Clause. *See United States v. Solis*, 124 F.3d 192, at *1 (5th Cir. 1997) (unpublished).

     *Second*, plaintiffs' arguments regarding the NFA's text are puzzling. Plaintiffs observe that the NFA's text makes clear that its requirements facilitate the collection and enforcement of the Act's taxes. *See* Pls.' Opp. 18. Defendants agree. *See supra* 6–8; Defs.' Br. 7–11. But just because a regulatory requirement supports a tax says nothing about whether that requirement also validly regulates interstate commerce, and plaintiffs cite no authority suggesting that a regulatory requirement cannot do both, which is the upshot of their textual argument. *Contra supra* 10 (citing cases finding that the NFA's regulations support taxes *and* regulate interstate commerce); *cf.* Max Pam, *Powers of Regulation Vested in Congress*, 24 Harv. L. Rev. 77, 102 (1910) (quoting Justice Story: "[T]he taxing power … is often applied as a regulation of commerce.").

     Plaintiffs also continue to ignore the practical reality that, by its basic operation, the NFA's text directly regulates interstate commerce in certain weapons. *See* Defs.' Br. 12–13, 16–17, 22. Nowhere do plaintiffs contest that the "firearms" that the NFA regulates, *see* 26 U.S.C. § 5845(a)(1)–(8), are nearly always commodities manufactured, sold, and purchased in an interstate firearms market. *See* Defs.' Br. 12–13 (noting that 91% of NFA firearms transferred in 2025 were transferred interstate). Nor do they contest that the "manufacturers," "dealers," and "importers" that the NFA regulates, *see, e.g.*, 26 U.S.C. §§ 5802, 5841, 5842, 5843, 5845, are commercial actors that participate in that interstate firearms market, *see* Defs.' Br. 12–13, 22. Nor can they seriously contest that the importing,

manufacturing, distributing, dealing, selling, leasing, transporting, and purchasing that the NFA expressly regulates, *see, e.g.*, 26 U.S.C. §§ 5802, 5812, 5841, 5842, 5843, 5844, 5845, is commerce itself. *See* Defs.' Br. 12–14, 22. To then maintain that the NFA does not in fact "regulate commercial actors and commodities," *see* Pls.' Opp. 18, defies reality.[5]

### 2.     The NFA regulates persons and things in interstate commerce.

As defendants' opening brief explains, *see* Defs.' Br. 12–14, in the vast majority of applications, the challenged NFA requirements and prohibitions directly regulate manufacturers, distributors, dealers, and purchasers (*i.e.*, "the persons") as they participate in an interstate firearms market and the firearms (*i.e.*, "the things") that flow through that market, *see United States v. Lopez*, 514 U.S. 549, 558 (1995), and thereby regulate "the ingredients of interstate commerce itself," *see Gonzales v. Raich*, 545 U.S. 1, 34 (2005) (Scalia, J., concurring in the judgment). Plaintiffs dispute none of this. Rather, they suggest that it is all irrelevant because they have argued on summary judgment that the NFA exceeds Congress's Commerce Clause authority only insofar as it regulates intrastate activities. *See* Pls.' Opp. 23. But that's a defect in plaintiffs' argument.

As explained, *see supra* 2, 4 n.3, plaintiffs' *claim for relief* is that the NFA's regulation of short-barreled rifles and shotguns, suppressors, and AOWs *categorically* exceeds Congress's enumerated powers. *See, e.g.*, Compl. p. 2 ("[T]he NFA cannot be upheld under any … Article I power."); *id.*, Count I ("Declaratory Judgment That The NFA's Regulatory Requirements Exceed Congress's Article I

---

[5] Plaintiffs also argue that 26 U.S.C. § 5861(j)'s and (k)'s express references to foreign or interstate commerce show that Congress "knew how to invoke the Commerce Clause," but chose not to in enacting the NFA's other provisions. *See* Pls.' Opp. 19. But those textual references to foreign and interstate commerce serve only to *limit* the reach of those statutory provisions to activities or firearms that are *in* foreign or interstate commerce, *see* 26 U.S.C. § 5861(j) ("to transport, deliver, or receive any firearm *in* interstate commerce which has not been registered" (emphasis added)); *id.* § 5861(k) ("to receive or possess a firearm which *has been imported or brought into* the United States in violation of section 5844" (emphasis added)), whereas other NFA provisions apply also to intrastate activities that substantially affect foreign and interstate commerce.

Enumerated Powers With Respect To Untaxed Firearms"); *id.* ¶ 67 ("The NFA's regulatory requirements pertaining to untaxed firearms exceed Congress's enumerated powers …."); Pls.' Br. 14 ("The Challenged NFA Provisions Exceed Congress's Enumerated Powers"); *id.* ("The challenged NFA provisions are unconstitutional. *First*, they exceed Congress's enumerated powers…."). It is thus plaintiffs' burden to "clearly demonstrate[]," *NFIB*, 567 U.S. at 538 (citation omitted), that the challenged NFA regulations facially exceed Congress's authority—*i.e.*, that there is "no set of circumstances" under which those regulations can be applied *within* Congress's authority, *Rahimi*, 602 U.S. at 693 (citation omitted). And therefore, if this Court agrees with plaintiffs that the challenged NFA regulations facially exceed Congress's taxing power, it must then decide whether those regulations also facially exceed Congress's Commerce Clause authority in order to resolve plaintiffs' enumerated-powers claim. But as explained, *see supra* 12; Defs.' Br. 12–14, in most of their applications, the challenged NFA regulations fall within the heartland of the Commerce Clause by regulating commercial actors that participate in, and commodities that flow through, an interstate firearms market. *See Lopez*, 514 U.S. at 558. So even if plaintiffs were correct that the NFA's regulation of purely intrastate activities exceeds Congress's authority under the Commerce Clause, that would not advance their facial enumerated-powers claim. The Court can therefore resolve that claim on this ground alone.

### 3.    The NFA regulates intrastate activities that substantially affect interstate commerce.

As defendants opening brief explains, *see* Defs.' Br. 15–18, the NFA's regulation of intrastate activities is likewise a valid exercise of Congress's Commerce Clause authority. The NFA regulates a class of activities that are "quintessentially economic": the manufacture, distribution, sale, and possession of weapons that, in Congress's judgment, are particularly susceptible to criminal misuse. *See Raich*, 545 U.S. at 25. Although these regulated activities occur most often as part of an interstate market in NFA firearms, *see* Defs.' Br. 12–13, failing to regulate the *intrastate* manufacture, distribution, sale, and possession of these same weapons would clearly "undercut" the NFA's regulation of that

13

interstate market by creating an unregulated sub-market in unregistered NFA firearms. *See Raich*, 545 U.S. at 18. And for that reason, it was (at the very least) rational for Congress not to exempt those intrastate activities from the NFA's broader regulatory scheme.

Plaintiffs' arguments to the contrary largely rehash their mistaken view of the relevant precedent and continue to deny the same basic realities. While defendants have already rebutted these arguments, a few points deserve emphasis.

*First*, underlying virtually all of plaintiffs' arguments is their asserted view that the challenged NFA regulations have "nothing to do with 'commerce'" or economic activity. *See* Pls.' Opp. 24; *id.* at 33 ("firearms possession, receipt, transfer, manufacturing, and making … are noneconomic"). But the Supreme Court doesn't see it that way. As it explained in *Raich*, "the production, distribution, and consumption of commodities," like NFA firearms, are "quintessentially economic" activities. 545 U.S. at 25–26. And "[p]rohibiting the intrastate possession or manufacture of an article of commerce," whether entirely or, like the NFA, when certain "regulatory requirements" are not met, "is a rational (and commonly utilized) means of regulating commerce in that product." *Id.* at 26.

*Second*, plaintiffs contend that the NFA does not regulate an "interstate firearms market." *See* Pls.' Opp. 24–25 (emphasis removed). But that's clearly wrong. As explained, *see* Defs.' Br. 12–13, the NFA regulates virtually every commercial step that occurs in the interstate market in NFA firearms, including importing, manufacturing, distributing, transporting, dealing in, transferring, purchasing, and possessing each and every NFA firearm within that market. Still, plaintiffs argue that that level of regulation is insufficient to create a Commerce Clause "hook" because the NFA does not regulate the price of NFA firearms, eliminate or cap their supply, or "otherwise change any market conditions." *See* Pls.' Opp. 25–26. But plaintiffs cite *no* case that so limits Congress's authority to regulate intrastate activities that substantially affect interstate commerce. Indeed, Congress was not regulating the price or capping the supply of any commodity when it regulated loan sharking, *see Perez v. United States*, 402

U.S. 146, 150–57 (1971), the operation of hotels, *see Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 253–62 (1964), or mining, *see Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 275–83 (1981). At any rate, the NFA *does* "change … market conditions," *contra* Pls.' Opp. 25–26, by regulating under what circumstances and the process by which certain firearms can be lawfully manufactured, distributed, sold, purchased, and possessed. And it *does* seek to eliminate by regulation the supply and demand for unregistered NFA firearms. In that way, the NFA employs the "rational (and commonly utilized) means of regulating commerce in [a] product" by "requiring that [an NFA firearm] be withdrawn from the market as a result of the failure to comply with regulatory requirements." *See Raich*, 545 U.S. at 26.

*Third*, plaintiffs continue to misrely on, and misapply, *Lopez* and *Morrison*. As already explained, *see* Defs.' Br. 18–19, 24–25, the NFA is nothing like the laws challenged in *Lopez* and *Morrison*, which "ha[d] nothing to do with 'commerce' or any sort of economic enterprise." *Lopez*, 514 U.S. at 561; *Morrison*, 529 U.S. at 613. Rather, as defendants have established, *see* Defs.' Br. 16–17, the NFA's regulation of intrastate activities is akin to the law challenged in *Raich*, which upheld a broad statutory scheme's regulation of intrastate activities under the Commerce Clause without analyzing most of *Lopez* and *Morrison*'s considerations, and treating none of them as "dispositive." *Contra* Pls.' Opp. 31. Bottom line, plaintiffs' insistence that this Court march through each of *Lopez* and *Morrison*'s considerations, treating them as requirements for a regulation to be a valid exercise of the Commerce Clause, cannot be squared with the Supreme Court's subsequent decision in *Raich. See, e.g., United States v. Johnson*, 42 F.4th 743, 748–49 (7th Cir. 2022) ("[T]he Supreme Court in *Raich* did not strictly rely on the *Morrison* factors to sustain the Controlled Substances Act…. Based on this, we observe that the considerations articulated by the Supreme Court in *Morrison* need not be applied mechanically, and no single factor is dispositive."); *Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242, 1251–52 (11th Cir. 2008) ("*Raich* makes clear that when a statute regulates economic or commercial activity, *Lopez*

and *Morrison*," and the "considerations" they analyzed, "are inapposite.").

### C.    The Necessary and Proper Clause further supports the challenged NFA regulations.

Remarkably, plaintiffs do not even respond to defendant's defense of the challenged NFA regulations under the Necessary and Proper Clause. *See* Defs.' Br. 26–27. Plaintiffs have thus conceded that point. *See Hull v. Kapstone Container Corp.*, 2018 WL 4409798, at *2 (N.D. Tex. Sept. 17, 2018). Their enumerated-powers claim fails on that basis, as well.

## III.    The challenged NFA regulations comport with the Second Amendment.

As explained, *see* Defs.' Br. 27–30, plaintiffs' Second Amendment challenge fails in its entirety under binding precedent. Plaintiffs' arguments to the contrary are unavailing.

*First*, plaintiffs cannot escape the fact that *United States v. Miller*, 307 U.S. 174 (1939), and *District of Columbia v. Heller*, 554 U.S. 570 (2008), foreclose their Second Amendment claim as it pertains to short-barreled shotguns and rifles. *See* Defs.' Br. 27. While plaintiffs insist that neither *Miller* nor *Heller* were definitive that the Second Amendment does not protect the right to possess short-barreled shotguns, *see* Pls.' Opp. 36–37, *Heller* could not have been clearer: *Miller* holds that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, *such as short-barreled shotguns*," a holding that is "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Heller*, 554 U.S. at 625, 627 (emphasis added). And if *Heller* really left any doubt on that issue, the Fifth Circuit resolved it two months ago in *United States v. Hernandez*, 159 F.4th 425 (5th Cir. 2025)—binding precedent that plaintiffs again fail to cite. There, the Fifth Circuit was crystal clear: *Miller* and *Heller* hold "that the Second Amendment does not protect a right to possess short-barreled shotguns," a binding "explication[] of law" that was "fatal" to the petitioner's Second Amendment challenge to the NFA's prohibition on possessing an unregistered short-barreled shotgun. *Id.* at 427–28 & n.1. So given *Hernandez*, plaintiffs' arguments regarding *Miller*'s and *Heller*'s supposed "limitations," Pls.' Opp. 36–38, are simply beside the point.

16

Plaintiffs also offer no persuasive reason this Court should treat short-barreled rifles differently than short-barreled shotguns under the Second Amendment. As explained, *see* Defs.' Br. 27, there is a *unanimous* view among courts throughout the country—including several Courts of Appeals and courts within this District, and in numerous opinions post-*Bruen*—that short-barreled shotguns and rifles are constitutionally indistinguishable. *See, e.g.*, *United States v. Rush*, 130 F.4th 633, 637 (7th Cir. 2025), *cert. denied*, 2025 WL 3620422 (U.S. Dec. 15, 2025); *United States v. Robinson*, 2025 WL 870981, at *5 (11th Cir. Mar. 20, 2025), *cert. denied*, 2025 WL 3620471 (U.S. Dec. 15, 2025); *United States v. Cox*, 906 F.3d 1170, 1185–86 (10th Cir. 2018); *Second Amend. Found., Inc v. ATF*, 702 F. Supp. 3d 513, 536–37 (N.D. Tex. 2023); *United States v. Miller*, 2023 WL 6300581, at *1–3 (N.D. Tex. Sept. 27, 2023); *United States v. Conner*, 2025 WL 2858030, at *3–4 (W.D. Tex. Sept. 19, 2025); *United States v. Chan*, 2024 WL 4028019, at *3–4 (D. Haw. Sept. 3, 2024); *United States v. Myers*, 2024 WL 2924081, at *3–4 (D. Nev. June 10, 2024); *United States v. Holder*, 2024 WL 1012914, at *2 (N.D. Ga. Mar. 9, 2024); *Watterson v. ATF*, 2024 WL 897595, at *18 (E.D. Tex. Mar. 1, 2024); *United States v. Shepherd*, 2024 WL 71724, at *5 (S.D. Miss. Jan. 5, 2024); *United States v. Jernigan*, 750 F. Supp. 3d 579, 586–88 (E.D. Va. 2024); *United States v. Danielson*, 2023 WL 5288049, at *5 (D. Minn. Aug. 17, 2023); *United States v. Royce*, 2023 WL 2163677, at *3 (D.N.D. Feb. 22, 2023); *United States v. Robinson*, 2023 WL 12066735, at *4 (M.D. Fla. Feb. 9, 2023); *United States v. Rush*, 2023 WL 403774, at *3 (S.D. Ill. Jan. 25, 2023); *United States v. Beaty*, 2023 WL 9853255, at *7 (M.D. Fla. Jan. 20, 2023); *United States v. Sawyer*, 2018 WL 572094, at *4 (D. Kan. Jan. 26, 2018); *United States v. Cox*, 235 F. Supp. 3d 1221, 1227 (D. Kan. 2017); *United States v. Barbeau*, 2016 WL 1046093, at *3 (W.D. Wash. Mar. 16, 2016); *see also Mock v. Garland*, 75 F.4th 563, 596 (5th Cir. 2023) (Higginson, J., dissenting); *cf. United States v. Stepp-Zafft*, 733 F. App'x 327, 329 (8th Cir. 2018). Plaintiffs try to brush off this overwhelming judicial consensus as "uninformed decisions" by "a handful of modern judges." *See* Pls.' Opp. 39–40. That "handful" accounts for at least *twenty seven* judges that have carefully considered this issue. And how many judges

17

have adopted plaintiffs' view? Zero, it appears. And for reasons explained in the cases cited above, this Court shouldn't be the first.

*Second*, plaintiffs have no answer for how their Second Amendment claim survives under *United States v. Peterson*, 161 F.4th 331 (5th Cir. 2025). They concede (as they must) that *Peterson* holds that the NFA's regulations are "presumptively constitutional," and that a challenger can overcome that presumption (and thus proceed to the second step of *Bruen*'s analysis) only with a showing that the challenged regulations have "been 'put toward abusive ends' through 'exorbitant fees' or 'lengthy wait times'" for application approval. 161 F.4th at 334, 339–40 (quoting *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 38 n.9 (2022)). As already explained, *see* Defs.' Br. 29–30, plaintiffs have come nowhere close to showing that the challenged NFA's requirements have "been put toward abusive ends," *see Peterson*, 161 F.4th at 340 (cleaned up), conceding that ATF approves most NFA making and transfer applications within days. Rather, plaintiffs try to overcome the NFA's presumptive constitutionality simply by citing a few past instances where NFA applicants experienced prolonged approval times. *See* Pls.' Opp. 42–43. But as explained, *see* Defs.' Br. 30 & n.8, these isolated past instances are irrelevant in analyzing plaintiffs' *facial* challenge, nor can they support the issuance of *prospective* relief, whether injunctive or declaratory. *See Book People, Inc. v. Wong*, 91 F.4th 318, 328 (5th Cir. 2024) ("Plaintiffs seek injunctive relief, so they must show a continuing injury or threatened future injury, not a past one." (cleaned up)).

Plaintiffs dispute neither point. Instead, they suggest that these few past instances are still relevant because this Court can grant them "retrospective[]" declaratory relief. *See* Pls.' Opp. 43. That's incorrect. Federal courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." *Spencer v. Kemna*, 523 U.S. 1, 18 (1998). What makes a declaratory judgment "a proper judicial resolution of a 'case or controversy' rather than an advisory opinion" is the "settling of some dispute which affects the behavior of the defendant towards

the plaintiff." *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (emphasis removed). Plaintiffs cannot seriously contend that a pronouncement from this Court that a few past NFA application approval times were "abusive" would change defendants' behavior towards plaintiffs, especially in light of ATF's current wait times, which plaintiffs do not suggest are abusively lengthy. Plaintiffs have thus failed to overcome the NFA's presumptive constitutionality. That alone forecloses their Second Amendment claim.

*Third*, plaintiffs do not dispute that at least some AOWs are similar to short-barreled shotguns, possess the same characteristics that make short-barreled shotguns uniquely susceptible to criminal misuse, and thus should be treated similarly to short-barreled shotguns under the Second Amendment. So, for reasons already explained, *see* Defs.' Br. 27–28, plaintiffs' facial Second Amendment challenge to the NFA's regulation of AOWs fails on that basis, too. That plaintiffs try to pivot in their opposition to focus on two specific AOWs that one of them wishes to acquire, *see* Pls.' Opp. 40–41, does nothing to advance their facial challenge. *See Rahimi*, 602 U.S. at 701.[6]

*Lastly*, while it is unnecessary for the Court to reach *Bruen*'s second step given the multiple threshold issues that defeat plaintiffs' Second Amendment claim, the NFA's regulation of short-barreled shotguns and rifles, suppressors, and AOWs is "consistent with this Nation's historical tradition of firearm regulation." *See Bruen*, 597 U.S. at 17. As explained, *see* Defs.' Br. 30, the Supreme Court has consistently acknowledged a historical "tradition of prohibiting the carrying of 'dangerous and unusual weapons,'" which permits a legislature to prohibit or regulate those arms that are not

---

[6] Even if plaintiffs had brought a valid as-applied challenge, plaintiffs have not shown that these particular weapons—"a Bond Arms derringer, 'The Texan' model," with a "6 inch," ".410ga" smooth-bored barrel; and "an AR-15 pattern firearm in 5.56mm" with an "overall length of under 26 inches, a barrel length of 10.5 inches," "a vertical foregrip," and no buttstock, *see* Decl. of Brady Wetz ¶¶ 24, 28, ECF No. 50—are the type of weapons "typically possessed by law-abiding citizens for lawful purposes," like self-defense. *See Heller*, 554 U.S. at 625, 627. Indeed, based on the limited description provided, these weapons appear to possess many of the same attributes that make short-barreled shotguns or short-barreled rifles particularly dangerous and susceptible to criminal misuse, which is why they are regulated as AOWs under the NFA. *See* H.R. Rep. No. 83-1337, at A395 (1954) (the NFA targets particularly dangerous weapons that "could be used readily and efficiently by criminals").

"typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 625, 627 (citation omitted). Moreover, there is a related historical tradition of prohibiting or regulating particularly dangerous and concealable weapons that are uniquely susceptible to criminal misuse, as reflected in several 19th century state court decisions upholding such laws against constitutional attack. *See* Defs.' Br. 30 & n. 9. Congress has thus correctly determined, consistent with similar legislative conclusions throughout our Nation's history, that the uniquely dangerous and concealable weapons regulated under the NFA are a proper subject of regulation. *See* H.R. Rep. No. 83-1337, at A395 (noting that NFA firearms possess unique characteristics that make them uniquely susceptible to criminal misuse).

Plaintiffs fault defendants for not citing any historical analogues, *see* Pls.' Opp. 44, but that overlooks defendants' cited sources. *See* Defs.' Br. 30 & n. 9. For example, in 1870, Tennessee enacted a statute that prohibited the possession of various concealable weapons, including "belt or pocket pistol[s]." *Andrews v. State*, 50 Tenn. 165, 171 (1871) (citation omitted). The Tennessee Supreme Court concluded that the statute's prohibitions related to pocket pistols did not violate a state constitutional analogue to the Second Amendment. In reaching that conclusion, the court explained that the right to keep arms did not extend to "every thing that may be useful for offense or defense," but instead extended only to "the usual arms of the citizen of the country," the "use of which will properly train and render him efficient in defense of his own liberties, as well as of the State." *Id.* at 179. Applying that test, the court concluded that the particularly concealable belt or pocket pistol (among other concealable weapons) did not constitute the usual and protected arms and could thus be constitutionally prohibited. *Id.* at 186. By contrast, the court concluded that the statute's regulation of revolvers was potentially unconstitutional, because at least some revolvers were—unlike the other weapons regulated by the statute—properly "adapted to" the aims of defense undergirding the constitutional right. *See id.*

Along the same lines, in *Fife v. State*, 31 Ark. 455, 461 (1876), the Arkansas Supreme Court

20

confronted a state statute prohibiting the carrying of various concealable weapons, including pistols. In addressing a state constitutional challenge to the statute's prohibition as applied to pistols, the court construed the statute in light of "the company in which the pistol is placed" as applying only to particularly small, concealable pistols—that is, those that were "usually carried in the pocket, or of a size to be concealed about the person, and used in private quarrels and brawls." *Id.* With that limitation, the court concluded that the legislature could properly prohibit the possession of such pistols "without any infringement of the" state constitutional right. *Id.*; *see also, e.g., State v. Kerner*, 107 S.E. 222, 225 (N.C. 1921) (describing similar "reasonable regulation[s]" that applied to "pistols of small size which are not borne as arms but which are easily and ordinarily carried concealed").

This historical tradition of regulating concealable weapons is mutually reinforcing of the distinct historical tradition permitting legislatures to prohibit the carrying of weapons that are not in common use for lawful purposes. *See Heller*, 554 U.S. at 581-82, 625. As the authorities cited above make clear, the reason that concealable weapons have generally been held unprotected is that those weapons are not commonly used for lawful purposes but are, instead, more well-suited to criminal misuse. Congress relied on similar reasoning in enacting the NFA as the basis for regulating distinct and narrow categories of uniquely dangerous and concealable weapons that it concluded were particularly susceptible to criminal misuse. And both Supreme Court and Fifth Circuit decisions embrace that logic. *See, e.g., Miller*, 307 U.S. at 178; *Heller*, 554 U.S. at 624, 627 (explaining that short-barreled shotguns are unprotected because they are not "in common use" for "lawful purposes like self-defense" (citation omitted)); *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517 (1992) (plurality opinion) ("[The NFA's] regulation of short-barreled rifles" targets "a concealable weapon" "likely to be used for criminal purposes."); *Mock*, 75 F.4th at 570 (the NFA's regulation of short-barreled shotguns targets weapons "valued for their ability to be easily concealed and to unleash devastating damage at short range"); *United States v. Jennings*, 195 F.3d 795, 799 n.4 (5th Cir. 1999) (the

21

NFA regulates weapons that are "primarily weapons of war" (citation omitted)); *United States v. Serna*, 309 F.3d 859, 863 (5th Cir. 2002) ("In enacting gun control legislation Congress expressed the view that a short-barreled firearm, or sawed-off shotgun, when unlawfully possessed, is primarily used for violent purposes."); *Johnson v. United States*, 576 U.S. 591, 640, 642 (2015) (Alito, J., dissenting) (short-barreled shotguns "are not typically possessed for lawful purposes," as they are "notoriously dangerous" and are "uniquely attractive to violent criminals" because they "combine the deadly characteristics of conventional shotguns with the more convenient handling of handguns").

## IV.    Any relief should be narrowly tailored to redress plaintiffs' actual injuries.

### A.    Plaintiffs are not entitled to a universal injunction.

"[F]ederal courts lack authority to issue [universal injunctions]." *CASA*, 606 U.S. at 856; *accord, e.g., Calderon Lopez v. Lyons*, 2025 WL 3683918, at *13 (N.D. Tex. Dec. 19, 2025) (Hendrix, J.). And yet, plaintiffs demand that this Court enter a "*blanket ban*" on enforcing the challenged NFA regulations against *anyone anywhere. See* Pls.' Opp. 46 (emphasis added). For reasons already explained, *see* Defs.' Br. 32–35, such sweeping relief would contravene the constitutional and equitable constraints on this Court's remedial authority and, in any event, is unjustified on this record.

Plaintiffs largely ignore defendants' arguments on this score, and offer no persuasive response to the ones they do acknowledge. Instead, plaintiffs' opposition merely repeats the threadbare assertion that anything less than a universal injunction would be "unworkable," given that the associational plaintiffs have large memberships, the commercial plaintiffs have many potential customers, and the states comprise numerous officers. *See* Pls.' Opp. 46. But as explained, *see* Defs.' Br. 33, the Supreme Court in *CASA* rejected that exact argument from several large associational plaintiffs, *see* 606 U.S. at 852–53, and other courts have not found it "unworkable" to grant party-specific relief in similar contexts, *see, e.g., Mock v. Garland*, 697 F. Supp. 3d 564, 592–93 (N.D. Tex. 2023); *Texas v. ATF*, 700 F. Supp. 3d 556, 573 (S.D. Tex. 2023). Plaintiffs make no attempt to

differentiate those cases from this one, and thus are no more entitled to universal relief than the plaintiffs in those cases. In any event, it is up to the government, not this Court, to determine in the first instance whether complying with a properly limited injunction is sufficiently unworkable. *See Arizona v. Biden*, 40 F.4th 375, 398 (6th Cir. 2022) (Sutton, C.J., concurring) ("[T]hat is initially the National Government's problem, not ours …."). That a party-specific injunction might present implementation burdens on the government does not justify imposing an even broader injunction that contravenes constitutional and equitable principles.

### B.    Nor are plaintiffs entitled to the narrower injunction they alternatively propose.

As explained, *see* Defs.' Br. 35, plaintiffs' opening brief failed to justify the breadth of their alternative injunction, which would cover (i) themselves; (ii) the commercial plaintiffs' customers; (iii) members and supporters of the associational plaintiffs; (iv) customers of the commercial members of the associational plaintiffs; and (v) resident family members living in the same household of anyone covered by the injunction. *See* Pls.' Br. 50. Plaintiffs' opposition lends no further support.

*First*, as explained, *see* Defs.' Br. 35,  plaintiffs' proposed injunction would apply to fourteen states—Alaska, Georgia, Idaho, Indiana, Kansas, Louisiana, Montana, North Dakota, Oklahoma, South Carolina, South Dakota, Utah, West Virgina, and Wyoming—that have submitted *no* evidence upon which the Court could find that they are entitled to injunctive relief. *See, e.g.*, *Texas v. United States*, 126 F.4th 392, 421 (5th Cir. 2025) (narrowing injunction to apply only to the state plaintiff that demonstrated an actual injury). Plaintiffs don't dispute that point, and thus have conceded it.

*Second*, plaintiffs' reliance on *Texas v. ATF*, 700 F. Supp. 3d 556 (S.D. Tex. 2023), to support their request to extend injunctive relief to "resident family members" is misplaced for multiple reasons. For one, in *Texas*, unlike here, the plaintiffs had made an actual argument for why their resident family members needed the protection of an injunction. *See Texas v. ATF*, No. 6:23-cv-13 (S.D. Tex.), ECF No. 46. Across two briefs, plaintiffs in this case have made no such argument. Moreover, unlike in

*Texas*, plaintiffs here don't only ask that the Court extend injunctive relief to the resident family members of the associational plaintiffs' members, but also the resident family members of *anyone covered by the requested injunction*, including, *e.g.*, resident family members *of* customers *of* business members *of* the associational plaintiffs. *See* Pls.' Br. 50. Nothing in *Texas* (or in any case plaintiffs cite) supports granting injunctive relief to individuals so far removed from this Court's jurisdiction.

Plaintiffs' reliance on *Texas v. ATF*, 737 F. Supp. 3d 426 (N.D. Tex. 2024), to support their request to extend injunctive relief to the associational plaintiffs' "supporters" is likewise misplaced. In that case, as plaintiffs point out, the district court held that an organization had standing to bring suit on behalf of its "supporters." *See* Pls.' Opp. 48. But that was only after finding that the organization had demonstrate on the record that its "supporters" possessed specific indicia of membership. *Texas*, 737 F. Supp. 3d at 438. The associational plaintiffs here have made no similar showing on this record. In any event, they have made no effort to define who they consider to be a "supporter." This case is thus more like *Texas v. ATF*, 700 F. Supp. 3d 556 (S.D. Tex. 2023), where the district court rejected an organization's attempt to litigate on behalf of its "supporters" because it had "not defined the scope of who it considers to be its 'supporters,'" requiring the district court to "operate on inferences or to impose an arbitrary scope on who those supporters might be." *Id.* at 567. Granting an injunction that covers such an ill-defined group of individuals would thus, at a minimum, run afoul of Federal Rule of Civil Procedure 65(d)'s specificity requirement. *See Scott v. Schedler*, 826 F.3d 207, 211–12 (5th Cir. 2016) (Rule 65(d) requires that an injunction "state its terms specifically and describe in reasonable detail the conduct restrained or required," such that "an ordinary person reading" the order can "ascertain from the document itself exactly what conduct is proscribed." (citations omitted)).

*And finally*, if the Court is inclined to grant relief, it should limit any injunction only to the named plaintiffs and the associational plaintiffs' members that those groups have chosen to identify and who have standing to challenge the NFA's regulations. The Court cannot directly grant a universal

injunction. *CASA*, 606 U.S. at 856. Nor can it indirectly do so by obtaining relief on behalf of nonparties who are represented by a party, other than through class certification under Rule 23 or properly established associational standing. Plaintiffs have not sought or obtained class certification, and they have submitted declarations identifying a limited number of members—all named plaintiffs—for standing purposes. *See Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011) ("[A] 'properly conducted class action' … can come about in federal courts in just one way—through the procedure set out in Rule 23."); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 497–500 (2009) ("[T]he Court has required plaintiffs claiming an organizational standing to identify members who have suffered the requisite harm."). Plaintiffs cannot end-run all three of those limits—*CASA*, Rule 23, and associational standing requirements—by obtaining an injunction barring defendants from enforcing a regulation against individuals whose membership is unknown to the defendants.

Limiting a remedy to the members the associational plaintiffs have identified for standing purposes appropriately leaves the breadth of the remedy the groups can receive in their own hands. Nothing prevents them from naming as many of their members as they wish so that each member can benefit from any relief the Court orders. Likewise, nothing prevents the advocacy groups from seeking to litigate this case as a class action. But what the Court cannot do is enjoin the government from enforcing the NFA against members of the associational plaintiffs when the government does not know who those members are because the groups have not identified them. Therefore, should any injunction issue in this case, the Court should make clear that the injunction runs only to the members that the associational plaintiffs chose to identify to defendants for purposes of standing.

## CONCLUSION

The Court should grant summary judgment in defendants' favor on both of plaintiffs' claims.

Dated: January 14, 2026        Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

Civil Division

ANDREW I. WARDEN
Assistant Branch Director

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Mont. Bar No. 55816869
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

On January 14, 2026, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Trial Attorney
U.S. Department of Justice