**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
San Angelo Division**

| | |
|---|---|
| SILENCER SHOP FOUNDATION; GUN OWNERS OF AMERICA, INC; FIREARMS REGULATORY ACCOUNTABILITY COALITION, INC.; B&T USA, LLC; PALMETTO STATE ARMORY, LLC; SILENCERCO WEAPONS RESEARCH, LLC (d/b/a SILENCERCO); GUN OWNERS FOUNDATION; BRADY WETZ; STATE OF TEXAS; STATE OF ALASKA; STATE OF GEORGIA; STATE OF IDAHO; STATE OF INDIANA; STATE OF KANSAS; STATE OF LOUISIANA; STATE OF MONTANA; STATE OF NORTH DAKOTA; STATE OF OKLAHOMA; STATE OF SOUTH CAROLINA; STATE OF SOUTH DAKOTA; STATE OF UTAH; STATE OF WEST VIRGINIA; and STATE OF WYOMING, <br><br> *Plaintiffs*, <br><br> v. <br><br> BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; UNITED STATES DEPARTMENT OF JUSTICE; PAMELA BONDI, in her Official Capacity as ATTORNEY GENERAL OF THE UNITED STATES; and DANIEL DRISCOLL, in his Official Capacity as ACTING DIRECTOR OF THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, <br><br> *Defendants*. | Case No. 6:25-cv-56-H |

**PLAINTIFFS' SURREPLY TO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION AND BACKGROUND

Plaintiffs challenge the constitutionality of the National Firearm Act's ("NFA") registration requirements applicable to making and transferring certain firearms. *See* ECF No. 49 ("Pls.' MSJ") at 7. For more than a century, those provisions were sustained under Congress's taxing power. Reviewing courts reasoned that registering a firearm upon making and transfer aided in the collection of taxes due upon making and transfer. *See* ECF No. 75 ("Pls.' MSJ Reply & Opp'n") at 9 (collecting cases). But then, in 2025, the One Big Beautiful Bill Act set the making and transfer taxes at $0 for short-barreled shotguns, short-barreled rifles, silencers, and a category of guns known as "any other weapon." Pub. L. No. 119-21, § 70436, 139 Stat. 72, 247–48 (2025). By repealing the taxes, Congress removed the NFA registration provisions' "constitutional bedrock." *United States v. Parker*, 960 F.2d 498, 500 (5th Cir. 1992).

The Government resists this outcome with a nonsensical argument. It says that the making and transfer provisions were not designed to facilitate the collection of making and transfer taxes, but rather to facilitate the collection of a different, annual occupational tax. *See* ECF No. 60 at 7–11 ("Gov. MSJ"). In support, the Government has relied on a string of caselaw which in fact holds the opposite, *see, e.g.*, *United States v. Gresham*, 118 F.3d 258, 263 (5th Cir. 1997) ("the registration requirement … is 'part of the web of regulation aiding enforcement of the transfer tax'"); *see* Pls.' MSJ Reply & Opp'n at 9, and a declaration from an ATF employee, Gov. MSJ at 10–11; ECF No. 61 at 181–89 ("First Albro Decl.").

In opposition, Plaintiffs showed that the ATF employee's explanations only confirmed that the challenged NFA provisions are not plainly adapted to collection of the occupational tax. Pls.' MSJ Reply & Opp'n at 8–14. But instead of addressing Plaintiffs' arguments on reply, the Government submitted a new declaration with new assertions. *See* ECF No. 85 at 7–8 ("Gov. MSJ Reply"); ECF No. 86 ("Second Albro Decl."). Compounding the prejudice of its new assertions,

1

the Government also claimed that its second declaration was dispositive because it constituted

"unrebutted testimony."  Gov. MSJ Reply at 6–7.  Plaintiffs moved to strike the declaration as

improper or, in the alternative, for leave to file a surreply to address the new evidence.  *See* ECF

No. 95.  The Court then granted leave to file this surreply.  *See* ECF No. 110.

**ARGUMENT**

**I.    ATF'S DECLARATION DOES NOT CREATE A FACT ISSUE.**

To begin, the Government asserts that its new evidence is impervious to any criticism

because it was submitted in a declaration.  Gov. MSJ Reply at 6–7.  That is wrong for two reasons.

*First*, "[t]he constitutionality of a federal statute is a question of law."  *United States v. Sanders*, 133 F.4th 341, 387 (5th Cir. 2025); *see also United States v. Ho*, 311 F.3d 589, 601 (5th Cir. 2002) ("review[ing] the constitutionality of a federal statute *de novo*" in as-applied enumerated-powers challenge).  Indeed, the Government has conceded that "the parties dispute no material facts and agree that the only issues before the court are pure questions of law."  Gov. MSJ at 5 (quotations omitted).  The Government cites no case holding that the federal government can save a statute from unconstitutionality with a government employee's belated declaration.  *Accord McNutt v. DOJ*, 173 F.4th 204, 219 (5th Cir. 2026) (rejecting Government's fact-bound argument about provisions' utility in "protect[ing] the revenue on distilled spirits" because statutory "regulations repudiate[d] the government's position").

*Second*, Plaintiffs did not contest the veracity of the "facts" in the Government's first declaration but instead explained that they do not "support the conclusion" that the challenged NFA provisions are plainly adapted to collecting the occupational tax.  *Matter of Ingram Barge Co., L.L.C.*, 2023 WL 6123107, at *4 (5th Cir. Sept. 19, 2023).  For example, Plaintiffs never disputed that 98.5% of short-barreled-shotgun transfers are made by occupational taxpayers. First Albro Decl. ¶ 29.  Plaintiffs instead pointed out that because ATF's anti-evasion rationale is

2

inapplicable to 98.5% of transfers, the declaration shows that the challenged registration provisions are not plainly adapted to tax collection.  *See* Pls.' MSJ Reply & Opp'n at 10–11; *see also infra* II.B.1.  Filing a second declaration does not fix these problems.

## II.    ATF'S DECLARATION CONFIRMS THE CHALLENGED NFA PROVISIONS CANNOT BE SUSTAINED UNDER THE TAX POWER.

### A.    ATF's Declaration Confirms The Challenged NFA Provisions Cannot Be Sustained Under The Taxation Clause.

"Congress's authority under the taxing power is limited to requiring an individual to pay money into the Federal Treasury, *no more*."  *McNutt*, 173 F.4th at 216 (emphasis in original); *see also Texas v. United States*, 945 F.3d 355, 390 (5th Cir. 2019), *rev'd on other grounds California v. Texas*, 593 U.S. 659 (2021).  ATF's declaration does not dispute that the challenged NFA provisions, *see* Pls.' MSJ at 7, do not themselves raise any revenue.  Thus, the declaration confirms that the challenged provisions cannot be sustained under the Taxation Clause.  *See McNutt*, 173 F.4th at 216 (provisions "exceed[ed]" tax power "[p]rimarily" because they did not "raise[ ] revenue"); *Texas*, 593 U.S. at 390 (similar).

### B.    ATF's Declaration Confirms The Challenged NFA Provisions Are Neither Necessary Nor Proper To Collect A Tax.

ATF's declaration also cannot salvage the challenged NFA provisions as an exercise of the Necessary and Proper Clause—what the Fifth Circuit recently called "the 'last, best hope of those who defend ultra vires congressional action.'"  *McNutt*, 173 F.4th at 217 (quoting *Printz v. United States*, 521 U.S. 898, 923 (1997)).  *First*, the declaration does not show that the challenged NFA provisions are "necessary"—i.e., that they are "plainly adapted" to collecting the occupational tax.  *McNutt*, 173 F.4th at 218.  *Second*, the declaration does not show that the challenged NFA provisions are "proper"—i.e., that the Government's legal theory would avoid a "violat[ion] [of] this court's obligation to read the Constitution 'carefully to avoid creating a general federal

3

authority akin to the police power.'"  *Id.* at 221.

  1. <u>ATF's Declaration Confirms The Challenged NFA Provisions Are Not "Necessary" To Collect A Tax.</u>

Conceding that the NFA's firearm registration requirements cannot be supported by the now-zeroed firearm making and transfer taxes, the Government argues they are supported by the special occupational tax.  But the firearm registration requirements are "not 'plainly adapted' to effectuate Congress's" occupational tax, *McNutt*, 173 F.4th at 218, as Plaintiffs' opposition brief showed.  Pls.' MSJ Reply & Opp'n at 8–11.  The Government's new declaration purports to undermine Plaintiffs' opposition brief, asserting that "the NFA Division regularly denies applications where a transferor or transferee hasn't properly paid the SOT."[1]  Second Albro Decl. ¶ 10; *see* Gov. MSJ Reply at 7–8.  But even taking that belated assertion at face value, it makes no difference.

*First*, as Plaintiffs already explained, Defendants' purported justification is illogical following passage of the One Big Beautiful Bill Act.  "Prior to the Act, checking whether a business had paid its annual special occupational tax might plausibly bear on its qualification to receive the statutory exemption from also paying the making or transfer taxes."  Pls.' MSJ Reply & Opp'n at 9–10; *see* 26 U.S.C. § 5852(c) (making exemption), (d) (transfer exemption).  "But now that there are no making or transfer taxes on most classes of NFA firearms (and thus no exemption to qualify for), whether a business has paid its special occupational tax has zero relevance to a transaction involving those firearms."  *Id.* at 10.

---

[1]  Most of ATF's latest declaration is irrelevant.  The first eight paragraphs describe the employee's background and the statutory scheme.  The first half of paragraph nine attests that ATF reviews making and transfer applications to avoid "duplicative entr[ies]" and "accuracy" in a database.  Paragraphs 11 and 12 talk about ATF's tax-collection practices but makes no mention of how registration aids them.  None of these statements have anything to do with the contested legal issues in this litigation.

ATF's new declaration confirms exactly what Plaintiffs said.  It states that ATF conducts application-by-application review "to determine whether the transaction is a tax-paid or tax-exempt transfer."  Second Albro Decl. ¶ 9; *see also id.* ¶ 8.  But after the One Big Beautiful Bill Act there is no longer such thing as a "a tax-paid or tax-exempt transfer" when it comes to the untaxed firearms.  *Every* transfer is tax-exempt.  So, again, even if ATF *historically* has denied some applications for wrongly claiming the transfer tax exemption, neither the Government's new declaration nor the Government's Reply Brief contends that ATF can *currently* deny an application for claiming an obsolete exemption from a $0 tax.

*Second*, the Government plays word games trying to justify its *post hoc* occupational-tax theory.  It triumphantly proclaims that in calendar year 2025, "the NFA Division disapproved 691 applications because of SOT issues, including a transferor's or transferee's failure to properly pay the SOT."  Second Albro Decl. ¶ 10; *see* Gov. MSJ Reply at 8.  However, that carefully worded phrasing—"SOT issues"—strongly implies that these disapprovals were overwhelmingly for mundane paperwork errors, not nonpayment.[2]  No doubt, ATF knows why it denied these 691 applications and could have explained how many were actually for nonpayment.  Its silence on that score is thus telling.

Next, even if some small fraction of those 691 "issues" *were* for nonpayment, that does not come close to supporting the Government's anticircumvention theory.  According to that theory, ATF might identify a criminal that evades the occupational tax but nevertheless diligently reports "transferring a meaningful number of firearms."  Gov. MSJ Reply at 10.  Even with a second

---

[2] The record in this case also supports that conclusion.  ATF *admits* it has denied applications *in error* over minor paperwork issues.  *See, e.g.*, ECF No. 100 at 2 ("the examiner disapproved the application based on the vagueness of the GOA member's answer … which is not a valid reason for disapproval").

bespoke declaration, ATF still cannot identify even a single instance in which it caught an occupational-tax evader in this manner.[3]

But set all that aside for a moment. Even taking 691 tax "issues" at face value, that number pales in comparison to the "2,195,034 total NFA weapons [that] were transferred" in fiscal year 2025. First Albro Decl. ¶ 32. Plaintiffs' opposition brief had conservatively estimated "the firearm registration requirements' only potential revenue effect" as somewhere between "the 1 to 12 percent of transactions occurring outside the occupational tax regime." Pls.' Reply & Opp'n 10–11. But, as it turns out, that grossly overstates things. The Government's new declaration, citing 691 instances out of nearly 2.2 million, confirms the actual figure is *at most* 0.03 percent. That is not even a rounding error, and it confirms that the registration provisions are not plainly adapted to collection of the occupational tax.

*Third*, other statements in the new declaration similarly undermine the Government's position that the firearm registration requirements support collection of the special occupational tax. The declaration says ATF checks for payment of the special occupational tax when an application to make or transfer affirmatively states that the applicant is a special occupational taxpayer. *See* Second Albro Decl. ¶ 9 ("If the application contains information regarding an FFL and special occupational taxpayer, the NFA Division confirms the information is accurate and that the status of the FFL is active and that the SOT has been paid."). But if ATF's purpose were actually to catch special occupational tax evaders, then ATF would check payment status regardless. ATF need not wait for any application as the special occupational tax is due every year regardless of whether any new application is filed. Second Albro Decl. ¶ 7.

---

[3] That omission is unsurprising, given that any nonpayment was almost certainly identified due to claiming the now-obsolete tax exemption. *See supra*.

The real reason ATF only checks when an applicant self-reports as a special occupational taxpayer is obvious: to determine whether the now-nugatory exemption from the making and transfer taxes is merited. *See* Second Albro Decl. ¶ 9. It has nothing to do with collection of the annual special occupational tax, which is owed independent of any particular transaction.

Even ATF's own paperwork agrees. Transfer applications are submitted on ATF Form 4, as ATF's new declaration tacitly acknowledges. *See* Second Albro Decl. ¶ 9 (discussing "applications to transfer"); 27 C.F.R. § 479.84. The "purpose" of ATF requiring Form 4 is stated on the Form itself: it "facilitates collecting the required *transfer* tax." Application to Transfer and Register NFA Firearm, ATF Form 5320.4 (Form 4), https://www.atf.gov/file/61546/download (emphasis added). ATF Form 4 says nothing about any purpose in collecting the special occupational tax, which is handled through separate ATF Form 56307.7. *See* Special Tax Registration and Return National Firearms Act, ATF Form 56307.7, https://www.atf.gov/firearms/docs/form/special-tax-registration-and-return-national-firearms-act-atf-form-56307/download.

*Finally*, ATF's new declaration cannot defeat the fact that the NFA's statutory "regulations repudiate the government's position." *McNutt*, 173 F,4th at 219. The NFA plainly required registration for *making* and *transfer* to collect the now-zeroed taxes on *making* and *transfer*. *See, e.g.*, *United States v. Matthews*, 438 F.2d 715, 717 (5th Cir. 1971) ("the registration requirement was … designed to aid the collection of tax on any future transfer of the registered item"); *Bezet v. United States*, 714 F. App'x 336, 341 (5th Cir. 2017) ("Section 5821 taxes the making" and "§ 5822 establishes registration and application requirements for making").

Indeed, even with the new declaration, the Government's theory makes no sense under the statutory scheme. It purports to catch a subset of criminals that unlawfully evade the occupational

tax but nevertheless dutifully comply with the statute's registration provisions. The NFA's drafters themselves rejected the notion that criminals would have such scruples. *See The National Firearms Act of 1934: Hearings on H.R. 9066 Before the H. Comm. on Ways & Means*, 73d Cong. 10 (1934) (statement of Homer Cummings, U.S. Att'y Gen.) (Def. App.15) (explaining that "the theory of the bill" is "that the criminal elements are not going to obtain permits and they are not going to obtain licenses"). Thus, even accepting as true ATF's *post hoc* assertion that it uses registration data to assist with collection of the occupational tax in a tiny fraction of cases, *but see supra*, the statutory scheme still shows that the registration provisions are "not 'plainly adapted'" for that purpose.

   2.  <u>ATF's Declaration Confirms The Challenged NFA Provisions Are Not A "Proper" Means To Collect A Tax.</u>

  Throughout this litigation, the Government's tax-power theory has been that it can engage in pervasive monitoring of all persons who possess, transfer, or make NFA firearms—even when those activities are not taxed—because it imposes a completely separate flat occupational tax on those who do business in NFA firearms. *See* Gov MSJ at 10–11. But, as Plaintiffs have shown, this theory would result in the creation of a prohibited federal police power. "For example," Plaintiffs explained, "if Congress imposed a $1 annual tax on grocery stores, anyone wishing to possess broccoli could be compelled to seek Government permission, notify law enforcement, and forfeit their fingerprints for inclusion in a federal database—all to make sure they are not unlawfully 'engaged in the business' of being a grocer." Pls.' MSJ Reply at 14. Because "the government's theory" of the challenged NFA provisions' constitutionality lacks "any limiting principle," the provisions "are not 'proper' within the meaning of the Necessary and Proper Clause." *McNutt*, 173 F.4th at 221; *see also BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 617 (5th Cir. 2021) ("courts *always* have rejected readings of the" Constitution "that would permit

8

Congress to exercise a police power" (emphasis in original; quotations omitted)).

ATF's news declaration does not rebut—and in fact, only crystallizes—this problem. The declarant claims that, for each and every NFA firearm, ATF must require registration with the federal government, the provision of fingerprints and a photograph to ATF, and local law-enforcement notification—all on pain of felony criminal penalties—to determine whether any given person is potentially "engaged in the business of" manufacturing or selling NFA firearms and thus required to pay a flat $500 or $1,000 annual tax. Second Albro Decl. ¶¶ 6–10. That only confirms that Plaintiffs' purportedly "imaginative tax on grocers and broccoli," Gov. MSJ Reply at 8, is not some farfetched hypothetical. Rather, one need only replace "NFA firearm" with "an ordinary firearm" or any other commodity (like broccoli) to see the mischief that the Government's legal theory would bless.

## CONCLUSION

The Court should grant Plaintiffs' motion for summary judgment and deny the Government's cross-motion for summary judgment.

Dated: May 20, 2026                                      Respectfully submitted,

*/s/ Stephen D. Stamboulieh*                             */s/ Michael D. Faucette*
Stephen D. Stamboulieh                                   Michael D. Faucette
                                                         Stephen J. Obermeier
**STAMBOULIEH LAW, PLLC**                                Jeremy J. Broggi
NDTX#: 102784MS                                          Boyd Garriott
MS Bar No. 102784
P.O. Box 428                                             **WILEY REIN LLP**
Olive Branch, MS 38654                                   2050 M Street NW
(601) 852-3440                                           Washington, D.C. 20036
stephen@sdslaw.us                                        Tel: (202) 719-7000
                                                         Fax: (202) 719-7049
*Attorney for Plaintiffs Gun Owners of*                  mfaucette@wiley.law
*America, Inc., Gun Owners Foundation*                   sobermeier@wiley.law
*and Brady Wetz*                                         jbroggi@wiley.law
                                                         bgarriott@wiley.law


*/s/ Brandon W. Barnett*                                 *Attorneys for Plaintiffs Silencer Shop*

Brandon W. Barnett
Texas Bar No. 24053088

**BARNETT HOWARD & WILLIAMS PLLC**
930 W. 1st St., Suite 202
Fort Worth, Texas 76102
Tel: (817) 993-9249
Fax: (817) 697-4388
barnett@bhwlawfirm.com

*Attorney for Private Plaintiffs*

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Ralph Molina
Deputy First Assistant Attorney General

Ryan Walters
Deputy Attorney General for Legal Strategy

*/s/ Munera Al-Fuhaid*
Munera Al-Fuhaid
Special Counsel, Special Litigation Division
Texas Bar No. 24094501

Office Of The Attorney General Of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 461-6494
Munera.al-fuhaid@oag.texas.gov

*Counsel for Plaintiff State of Texas*

Stephen J. Cox
Attorney General of Alaska

*/s/ Aaron C. Peterson*
Aaron C. Peterson
(Alaska Bar No. 1011087)
Senior Assistant Attorney General

*Foundation, Firearms Regulatory Accountability Coalition, Palmetto State Armory, LLC, B&T USA, LLC, and SilencerCo Weapons Research, LLC*

Christopher M. Carr
Attorney General of Georgia

*/s/ Elijah J. O'Kelley*
Elijah J. O'Kelley
Deputy Solicitor General

Office Of The Georgia Attorney General

10

Department of Law
1031 West Fourth Avenue, Ste. 200
Anchorage, AK 99501
Telephone: (907) 269-5232
Facsimile: (907) 276-3697
Email: aaron.peterson@alaska.gov

*Counsel for Plaintiff State of Alaska*

Raúl R. Labrador
Attorney General of Idaho

*/s/ Michael A. Zarian*
Michael A. Zarian
Deputy Solicitor General
Texas Bar No. 24115978

Office Of The Idaho Attorney General
700 W Jefferson St #210
Boise, ID 83720
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
michael.zarian@ag.idaho.gov

*Counsel for Plaintiff State of Idaho*

Kris W. Kobach
Attorney General of Kansas

*/s/ James Rodriguez*
James Rodriguez
(KS Bar #29172)
Assistant Attorney General

Office Of Kansas Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, KS 66612-1597
Tel. (785) 368-8197
Jay.Rodriguez@ag.ks.gov

*Counsel for Plaintiff State of Kansas*

Austin Knudsen
Attorney General of Montana

*/s/ Christian B. Corrigan*

40 Capitol Square, SW
Atlanta, Georgia 30334
(470) 816-1342
eokelley@law.ga.gov

*Counsel for Plaintiff State of Georgia*

Theodore E. Rokita
Attorney General of Indiana

*/s/ James A. Barta*
James A. Barta
Solicitor General

Indiana Attorney General's Office
IGCS – 5th Floor
302 W. Washington St.
Indianapolis, IN 46204
(317) 232-0709
james.barta@atg.in.gov

*Counsel for Plaintiff State of Indiana*

Liz Murrill
Attorney General of Louisiana

*/s/ J. Benjamin Aguiñaga*
J. Benjamin Aguiñaga*
Solicitor General

Louisiana Department Of Justice
1885 N. Third Street
Baton Rouge, LA 70804
(225) 326-6766
AguinagaB@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*
*\*motion for pro hac vice admission forthcoming*

Drew H. Wrigley
Attorney General of North Dakota

*/s/ Philip Axt*

11

Christian B. Corrigan*
Solicitor General

Montana Department Of Justice
P.O. Box 201401
Helena, Montana 59620-1401
(406) 444-2026
Christian.Corrigan@mt.gov

*Counsel for Plaintiff State of Montana*
*\*motion for pro hac vice admission*
*forthcoming*

Gentner Drummond
Attorney General of Oklahoma

*/s/ Garry M. Gaskins, II*
Garry M. Gaskins, II
Solicitor General

Office Of The Attorney General Of
Oklahoma
313 NE Twenty-First St.
Oklahoma City, OK 73105
(405) 521-3921
garry.gaskins@oag.ok.gov

*Counsel for Plaintiff State of Oklahoma*

Marty J. Jackley
Attorney General of South Dakota

*/s/ Grant Flynn*
Grant Flynn
Assistant Attorney General

Office Of The Attorney General Of South
Dakota
1302 East Highway 14, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
grant.flynn@state.sd.us

*Counsel for Plaintiff State of South Dakota*

Philip Axt
Solicitor General

Office Of North Dakota Attorney General
600 E. Boulevard Ave., Dept. 125
Bismarck, ND 58505
Phone: (701) 328-2210
Email: pjaxt@nd.gov

*Counsel for Plaintiff State of North Dakota*

Alan Wilson
Attorney General of South Carolina

/s/ *Thomas T. Hydrick*
Thomas T. Hydrick
(SC Bar No. 103098)
Assistant Deputy Solicitor General

Office Of The Attorney General Of South
Carolina
PO Box 11549
Columbia, South Carolina 29201
(803) 734-3765
benmcgrey@scag.gov

*Counsel for Plaintiff State of South Carolina*

Derek Brown
Attorney General of Utah

*/s/ Andrew Dymek*
Andrew Dymek
Solicitor General

Office Of The Utah Attorney General
160 E. 300 S., 5th floor
Salt Lake City, Utah 84111

*Counsel for Plaintiff State of Utah*

12

John B. McCuskey
Attorney General of West Virginia

*/s/ Michael R. Williams*
Michael R. Williams
Solicitor General

Office Of The Attorney General
Of West Virginia
State Capitol Complex
Building 1, Room E-26
1900 Kanawha Blvd. E
Charleston, WV 25301
(304) 558-2021
michael.r.williams@wvag.gov

*Counsel for Plaintiff State of West Virginia*

Keith G. Kautz
Attorney General of Wyoming

*/s/ Ryan Schelhaas*
Ryan Schelhaas
Chief Deputy Attorney General

Office of the Attorney General of Wyoming
109 State Capitol
Cheyenne, WY 82002
(307) 777-5786
ryan.schelhaas@wyo.gov

*Counsel for Plaintiff State of Wyoming*

13