**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

|  |  |
|---|---|
| JOHN JENSEN, *et al.*,<br><br>    *Plaintiffs,*<br><br>    v.<br><br>BUREAU OF ALCOHOL, TOBACCO,<br>FIREARMS AND EXPLOSIVES, *et al.*,<br><br>    *Defendants.* | No. 2:25-cv-00223-Z |

**<u>SECOND DECLARATION OF STEPHEN ALBRO</u>**

I, Stephen Albro, of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), declare that the following statements are true and correct to the best of my knowledge and belief, and that they are based on my personal knowledge as well as information provided to me in the ordinary course of my official duties. This declaration is made in response to the Plaintiffs' Combined Reply Memorandum of Law in Further Support of Plaintiffs' Motion for Summary Judgment and Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment.

1. I am employed by ATF in the National Firearms Act ("NFA") Division. I am the Chief of the Division. In this capacity, I am responsible for overseeing ATF's administration of the NFA and the regulations issued thereunder, including maintaining and amending the National Firearms Registration and Transfer Record ("NFRTR"), processing notices of NFA firearms manufactured or imported, and acting on all applications to make, export, transfer and register NFA firearms. In addition, I am responsible for planning and managing the full range of NFA Division operations and programs, which include workload and resource projections, staffing levels, budget

1

allocations, and monitoring compliance with Division policies, procedures and guidelines in order to most effectively and efficiently achieve Division goals.

2. I have been employed by ATF since 1999 and have been the NFA Division Chief since 2024, in addition to having been the NFA Branch Chief (before it was designated a division) in 2009. In between my supervisory roles in the NFA Division, I was the ATF Charlotte Field Division's Director of Industry Operations and the Deputy Chief and Chief of the Firearms and Explosives Services Division.

3. As Chief of the NFA Division, I am knowledgeable about the requirements of the NFA, including the taxation, registration, transfer and making requirements. And, based on my role at ATF, I am likewise familiar with ATF's protocols and processes for implementing the NFA.

4. The NFA requires that any person who would manufacture or make an NFA firearm first seek and obtain approval from the Attorney General. 26 U.S.C. §§ 5821, 5822, 5841(c).

5. The NFA differentiates between a "manufacturer" of NFA firearms and a person who "makes" such a firearm.

6. A manufacturer is "any person who is engaged in the business of manufacturing firearms." 26 U.S.C. § 5845(m). A manufacturer must register with the Attorney General before first engaging in the business of manufacturing firearms, and pay a special occupational tax as described below. 26 U.S.C. §§ 5801, 5802.

7. The NFA also imposes a special occupational tax, or "SOT." On first "engaging in the business," "every importer, manufacturer, and dealer in firearms shall pay a special (occupational) tax for each place of business" at $1000 a year for importers and manufacturers and $500 a year for dealers. 26 U.S.C. § 5801.

8. The payment of the SOT qualifies persons licensed under the Gun Control Act to manufacture, import, or deal in NFA firearms. This tax payment authorizes these licensees to engage

in the business of NFA firearms and enjoy tax-free registration of firearms manufactured or imported by a qualified licensee and the tax-free transfer of NFA firearms between qualified licensees. Licensed dealers who pay the SOT are qualified to deal NFA firearms to retail customers.

9. The NFA's requirements support the assessment, collection, and enforcement of the SOT. The NFA Division reviews every application to make or transfer. The review includes checking the National Firearms Registration and Transfer Record ("NFRTR") for applications to make to ensure the firearm and proposed serial number will not be a duplicative entry, and for applications to transfer to match the information on the application and accompanying forms to ensure the accuracy of and make any necessary updates to the NFRTR. Part of this review is to determine whether the transaction is a tax-paid or tax-exempt transfer. If the transaction requires a tax to be paid, the NFA Division confirms the tax payment was in fact made. If the application contains information regarding an FFL and special occupational taxpayer, the NFA Division confirms the information is accurate and that the status of the FFL is active and that the SOT has been paid. No application is approved—and the firearms subsequently registered—without the applicable tax being paid. The NFRTR thus provides accurate, current tax collection information.

10. Plaintiffs' suggestion that there are no examples of SOT circumvention, or investigations into such circumvention, is simply not accurate. In fact, the NFA Division regularly denies applications where a transferor or transferee hasn't properly paid the SOT. In calendar year 2025 alone, the NFA Division disapproved 691 applications because of SOT issues, including a transferor's or transferee's failure to properly pay the SOT.

11. Moreover, the Division also conducts and imposes penalty and interest calculations when assessing delinquent SOT payments on behalf of licensees. If, after a grace period the licensee does not cure the delinquency, penalties and interest are assessed in cases where the FFL continues NFA operations or it possesses post-1986 machinegun inventory.

12.    Finally, the NFA Division regularly sends out referrals to the ATF Field Divisions about delinquent SOT payments when discovered.

13.    Therefore, ATF has used and does use the information from applications to make or transfer NFA firearms for tax enforcement purposes.

Executed on this 11th day of February, 2026.

_____
Stephen Albro
Chief
National Firearms Act Division
Bureau of Alcohol, Tobacco, Firearms and
Explosives

4