**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**SAN ANGELO DIVISION**

| | | |
|---|---|---|
| SILENCER SHOP FOUNDATION, et al., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | No. 6:25-cv-56-H |
| v. | § | |
| | § | (Consolidated with No. 6:26-cv-227-H) |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS | § | |
| AND EXPLOSIVES, et al., | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

**<u>NOTICE OF SUPPLEMENTAL AUTHORITIES</u>**

*Jensen* Plaintiffs respectfully submit this Notice of Supplemental Authorities to alert the Court to three recent Supreme Court decisions that bear on the issues in this case: *United States v. Hemani*, No. 24-1234, 2026 WL 1751710 (U.S. June 18, 2026) (attached as Exhibit A); *Landor v. Louisiana Department of Corrections & Public Safety*, No. 23-1197, 2026 WL 1791277 (U.S. June 23, 2026) (attached as Exhibit B); and *Wolford v. Lopez*, No. 24-1046, 2026 WL 1825723 (U.S. June 25, 2026) (attached as Exhibit C).

*Landor* supports *Jensen* Plaintiffs' argument that Congress's taxing power, supplemented by the Necessary and Proper Clause, cannot be stretched to support the challenged National Firearms Act ("NFA") provisions. Mot. for Summ. J. Br. at 15–26, No. 6:26-cv-227-H, ECF No. 18 (Nov. 12, 2025) ("MSJ Br."); Pls.' Combined Reply & Opp'n to Defs.' Mot. for Summ. J. at 5–32, No. 6:26-cv-227-H, ECF No. 56 (Jan. 19, 2026) ("Opp'n to Gov't MSJ"). The relevant question is whether the NFA's registration scheme is a necessary and proper means of carrying into execution the exercise of the tax power via the special occupational tax for dealers and manufacturers, and *Landor* indicates that the answer is "no." Just as allowing money damages suits

against non-consenting officials would not be incidental to the spending power but rather would represent a dramatic expansion of congressional power, *Landor*, 2026 WL 1791277, at *9–11, so too would imposing a burdensome registration scheme on non-taxpayers to support the special occupational tax mark a dramatic expansion of congressional power and in principle allow Congress to regulate in minute detail the activities of untaxed Americans.

*Wolford* and *Hemani* support *Jensen* Plaintiffs' arguments that the NFA's regulation of suppressors and short-barreled rifles violate the Second Amendment.

First, *Wolford* confirms that the NFA's regulation of suppressors and short-barreled rifles implicates the Second Amendment. *Wolford* explained that as a predicate to applying any Second Amendment scrutiny to a challenged arms restriction, the only predicate question with respect to the term "Arms" is does the law at issue "concern any form of 'Arms'"? *Wolford*, 2026 WL 1825723, at *6. The answer to that question for suppressors and short-barreled rifles is beyond dispute. A suppressed firearm is a "form" of an arm, and the NFA's regulation of suppressors plainly "concern[s]" the use of firearms. And a short-barreled rifle is indisputably a "form" of an arm as well. Consequently, the Second Amendment presumptively protects conduct involving suppressors and short-barreled rifles and the onus is on the Government to prove that they are "dangerous and unusual." MSJ Br. at 28–42.

Furthermore, the Court framed the plain-text inquiry broadly. In conducting the plain-text analysis, the Court explained that the "'plain text of the Second Amendment protects' what petitioners want to do: carry handguns for self-defense." *Wolford*, 2026 WL 1825723, at *9 (quoting *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 32 (2022)). Or as Justice Jackson explained in dissent, the "majority essentially directs courts to start by simply asking whether a gun owner cannot do what she wants with her firearm." *Id.* at *23 (Jackson, J., dissenting). This

framing is consistent with *Jensen* Plaintiffs' argument that the proper question is whether the possession, making, or transfer of a suppressed firearm or a short-barreled rifle is arms-bearing conduct. MSJ Br. at 27. It is, so the NFA's regulation of suppressors and short-barreled rifles implicates the Second Amendment.

Second, *Wolford* makes clear that the "in common use" analysis to determine whether an Arm is "dangerous and unusual" is "out of place at *Bruen*'s first step. At that stage, as we have explained, the question is simply whether a challenged law falls within the Second Amendment's 'plain text.'" *Wolford*, 2026 WL 1825723, at *10 (quoting *Bruen*, 597 U.S. at 24). The contrary position effectively poses the question to this Court of whether parties "can smuggle additional limits, drawn from our regulatory tradition, into the plain-text stage of the inquiry," but "[t]he answer is and always has been no." *Id.* at *14 n.1 (Barrett, J., concurring). As Justice Jackson made plain in her dissent, applying *Wolford* requires that "at step one, courts must look *only* to the 'plain text' of the Second Amendment." *Id.* at *26 (Jackson, J., dissenting).

Third, *Wolford* also supports *Jensen* Plaintiffs' argument that there is no carveout from the *Bruen* inquiry for shall-issue licensing laws. *See* Opp'n to Gov't MSJ at 40–41. In explaining the requisite Second Amendment historical analysis that *Bruen* reaffirmed, *Wolford* made clear that it involves just "two steps": the plain-text inquiry and the historical inquiry. *Wolford*, 2026 WL 1825723, at *6, *10. If a challenged law falls within the plain text of the Second Amendment at step one, it is "presumptively unconstitutional," and the burden shifts to the government to show that "its challenged law did not infringe the historical understanding of the codified right." *Id.* at *6. Contrary to the Fifth Circuit's decision in *United States v. Peterson*, 161 F.4th 331 (5th Cir. 2025), therefore, *Wolford* leaves no room for a carveout from the *Bruen* inquiry for shall-issue licensing laws. *Wolford*, therefore, abrogates the Fifth Circuit's decision in *Peterson* in this respect.

Fourth, *Wolford* and *Hemani* support the argument that licensing and registration are distinct concepts that cannot be conflated. In both decisions, the Supreme Court carefully analyzed the "how" and the "why" of the proposed historical analogues that the government proffered. *Wolford*, 2026 WL 1825723, at *6, *10–14; *Hemani*, 2026 WL 1751710, at *5–12. The "how" and the "why" of licensing and registration are different. Licensing is focused on ensuring that the person licensed is not disqualified from possessing arms, and it is typically a one-time process subject to renewal after a specified period. Registration, by contrast, focuses on tracking firearms and who owns them. *Heller v. District of Columbia*, 670 F.3d 1244, 1291 (D.C. Cir. 2011) (Kavanaugh, J., dissenting).

Dated: July 2, 2026

Respectfully Submitted,

/s/ David H. Thompson

R. Brent Cooper
Texas Bar No. 04783250
COOPER & SCULLY, P.C.
900 Jackson Street, Suite 100
Dallas, Texas 75202
Telephone: (214) 712-9500
Telecopy: (214) 712-9540
brent.cooper@cooperscully.com

David H. Thompson*
Peter A. Patterson*
Nicholas A. Varone*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
Tel: (202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
nvarone@cooperkirk.com

*Admitted *pro hac vice*

*Attorneys for* Jensen *Plaintiffs*

4