**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**San Angelo Division**

SILENCER SHOP FOUNDATION; et al,

*Plaintiffs,*

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; et al,

*Defendants.*

Case No.6:25-cv-56

**PLAINTIFF STATES' MOTION FOR CLARIFICATION OF SCOPE OF INJUNCTIVE RELIEF**

On August 5, 2026, the Court issued a permanent injunction that enjoined Defendants and their agents from enforcing the challenged provisions of the National Firearms Act (NFA) "against the plaintiffs and, where applicable, the plaintiffs' agencies, political subdivisions, members, and customers—both current and future." Order at 66. With respect to the Plaintiff States specifically, the Court stated: "Thus, the Court's injunction will accordingly extend to those states, their agencies, and their political subdivisions." Order at 64.

Plaintiff State Attorney General Offices have subsequently been deluged with inquiries from licensed dealers and prospective firearms purchasers asking if their transfers of the relevant items are covered by the injunction. Many of these questions come after licensed dealers contact ATF, which has refused advise whether the prospective purchaser must complete a Form 4 registration. In a conference between Plaintiffs and Defendants following the issuance of the Order, it became clear that the respective parties understand the scope and requirements of the Order in different ways.

The undersigned State Plaintiffs accordingly seek clarification of the Court's Order in two respects: (1) whether the injunction applies statewide to all relevant transfers within the Plaintiff States; and (2) whether ATF must take any action to notify or identify individuals covered by the injunction.

## LEGAL STANDARD

A party may seek "district court clarification" where it has "doubts about the meaning of any part of [an] injunction." *Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 517 (5th Cir. 1969); *see also Second Amend. Found. v. ATF*, 2023 WL 4504587, at *1–2 (N.D. Tex. May 31, 2023) (granting motion to clarify whether a preliminary injunction applied to associational plaintiff's members). A district court should not "withhold a clarification" about an injunction's scope if doing so would leave the parties "in the dark as to their duty toward the court." *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945); *accord Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 586 (5th Cir. 2013).

## ISSUES TO BE CLARIFIED

### I. Does the injunction apply geographically to State Plaintiffs as sovereign states, or only to their agencies and political subdivisions?

Most of the fifteen Plaintiff States interpreted this order as applying within the entire state—a geographically limited injunction that prevents Defendants from enforcing the enjoined NFA provisions to transfers of relevant items within the boundaries of the state. The States advised Defendants of this interpretation on August 13. *See* AG Letter (attached as Exhibit A). At a subsequent conference, Defendants stated they did not agree with the States' interpretation.[1]

---

[1] Defendants have never argued for a narrow injunction that did not apply statewide. *See* ECF 60 at 32-35.

The most natural reading of the Order is that the injunction, as applied to the States, has a geographic scope that prohibits Defendants from enforcing the law within the borders of the Plaintiff States. First, the text of the Order clearly indicates that the term "States" means more than just "state agencies." The Order expressly states that "the Court's injunction will accordingly extend to those states, their agencies, and their political subdivisions." Order at 64. "States" and "their agencies" appear separately and have distinct meanings. *See Duncan v. Walker*, 533 U.S. 167 (2001) (applying canon of surplusage to statute so as "to give effect, if possible, to every clause and word.") (internal quotations omitted). Thus, the most natural reading of the order is that the injunction applies to the "States" as sovereign states, as well as to their internal agencies. Had the Court intended to limit its injunction as Defendants suggest, it would have simply referred to the relevant agencies and political subdivisions. This is particularly true given the Court's finding that the enjoined provisions of the law were facially invalid.

Second, the most common form of injunction issued by federal district courts eschewing a universal injunction in a case involving a plaintiff group that includes both states and private litigants is to enjoin defendants "from enforcing the [challenged law] within [the states] and against [the private parties]." *Kansas v. United States Dep't of Lab.*, 749 F. Supp. 3d 1363, 1383 (S.D. Ga. 2024), *reconsideration denied,* No. 2:24-CV-76, 2024 WL 5697302 (S.D. Ga. Aug. 29, 2024); *see also, e.g.*, *Kansas v. United States Dep't of Educ.*, 739 F. Supp. 3d 902, 936, 935 (D. Kan. 2024), *appeal dismissed*, No. 24-3097, 2025 WL 1914861 (10th Cir. Mar. 13, 2025) (barring the federal government from enforcing its rule "against Kansas, Alaska, Utah, Wyoming, [and various associational plaintiffs], " and "enjoin[ing] implementation and enforcement of the Final Rule with respect to the States, including any education programs or

activities within those States."); *Washington v. FDA*, 668 F. Supp. 3d 1125, 1144 (E.D. Wash. 2023) (enjoining federal government from acting "in Plaintiff States"). In the District of North Dakota, the court issued an order enjoining a federal agency "from enforcing the final rule *against* the 19 Plaintiff States." *Kansas v. United States*, No. 1:24-CV-00150, 2025 WL 1483469, at *1 (D.N.D. Jan. 15, 2025) (emphasis added). In answering a motion for clarification, the court interpreted its injunction as having "geographic scope" and made clear that it applied to all relevant persons *within* the 19 states. *Id*. The specific question presented concerned whether the rule applied outside of the 19 states. It did not. But the assumption (confirmed by the court) was that an order enjoining the federal government from enforcing the rule "against" the plaintiff states operated with a "geographic scope" to cover all persons within the states' jurisdiction. *See id*.

The District of Texas has followed the same practice when applying an injunction to a plaintiff state in another case involving firearms transactions. In *Texas v. ATF*, 737 F. Supp. 3d 426 (N.D. Tex. 2024), the court enjoined the challenged ATF "Engaged in the Business" rule "against all Plaintiffs," including all relevant firearms transactions occurring within the borders of State Plaintiff Texas, even though the "Engaged in the Business" rule had no direct application to the State, itself. In that case, "against all Plaintiffs" necessarily indicated a geographic application to all relevant firearms transactions within the State.

The Order's statewide geographic scope is consistent with the Fifth Circuit's order in *Texas v. United States*, 126 F.4th 392 (5th Cir. 2025). There, the Court decided between a nationwide injunction and a narrower, statewide injunction, choosing the latter. However, the Fifth Circuit awarded complete, statewide relief—"a geographically limited injunction"—to Texas, the only state that proved standing. *See id.* at 421. In the case at bar, the Court found that

all fifteen Plaintiff States possessed standing. Order at 14. In the wake of *Texas*, when "the Court tailors its remedy to the parties," *id.* at 19, and enjoins federal action "against the parties," the States understand the Court's remedy to be a "geographically limited injunction" covering all relevant transfers occurring within the geographic boundaries of the Plaintiff States.

Third, statewide relief is always appropriate when a state itself is challenging the constitutional authority of the federal government to act. If the state prevails, and the federal statute or regulation is found unconstitutional, then the federal action can have no effect within the geographic territory of the state. *Any* operation of the unconstitutional federal statute within the state infringes upon the sovereignty of the state. An unconstitutional federal statute also operates to unconstitutionally displace any state laws to the contrary. States have a sovereign interest in "the power to create and enforce a legal code, both civil and criminal," *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez*, 458 U.S. 592, 601 (1982), particularly in the context of "(1) federal assertions of authority to regulate matters they believe they control, (2) federal preemption of state law, and (3) federal interference with the enforcement of state law." *Texas v. United States*, 809 F.3d 134, 153 (2015). This sovereign interest was the basis on which the States brought their suit against Defendants. *See, e.g.,* ECF 15, ¶ 21.

The Order's findings on State standing do not indicate otherwise. While the Court found that the states "are the objects of the challenged NFA provisions" and thus "incur[] compliance costs", Order at 13–14, the Court recognized standing only with respect to the States' law enforcement agencies, *id.* at 63. Yet the Court's relief does not enjoin the application of the relevant provisions to only those situations where the States or their agencies and political subdivisions would incur compliance costs, nor limit it only to State law enforcement. *See id*. at 66.

The Plaintiff States ask the Court to make clear whether its injunction applies to the States as sovereigns, encompassing all relevant transfers with the geographic boundaries of the States, or whether the injunction applies only to transfers involving the States' agencies and their political subdivisions.

**II. Does the injunction require ATF to identify persons covered by the injunction?**

The Plaintiff States also request clarification as to the actions Defendants must take in order to "not enforce" the enjoined provisions. In conference, ATF stated its belief that it is not required to determine whether any individual is covered by the Court's injunction and is required to register in order to complete a transaction under the enjoined provisions of the NFA. To date, ATF has taken no public action to acknowledge that the injunction removes the NFA registration requirements from *any* transfers at all. Upon information and belief, when asked by FFL dealers about whether a prospective purchaser must complete a Form 4, ATF now tells them to consult an attorney to determine for themselves whether they are covered by the Court's Order.

The Plaintiff States believe the Court's Order requires ATF to acknowledge whether particular firearms transactions require Form 4 registrations under the Court's injunction. At the very least, ATF must inform FFL dealers of the categories of individuals who are covered by the Court's Order. In the absence of any acknowledgment from ATF, most firearms purchasers and dealers, who are either unaware of the injunction or will not be sufficiently confident in their layman's reading of a court's order, will not risk the severe penalties that come with failing to register. *See* 26 U.S.C. § 5871 (authorizing a fine of up to $10,000 and a sentence of imprisonment of up to ten years); 18 U.S.C. § 922(g)(1) (felony conviction requiring individual to forfeit his Second Amendment rights). Under these circumstances, an individual covered by the Court's injunction who submits to registration under the enjoined provisions does not

necessarily do so voluntarily. *See Ex Parte Young*, 209 U.S. 123, 147 (1908) (finding that "when the penalties for disobedience are by fines so enormous and imprisonment so severe as to intimidate [people] from resorting to the courts to test the validity of the legislation, the result is the same as" outright prohibition).

The Court should accordingly clarify what actions, if any, must be taken by ATF to comply with the Court's Order.

September 11, 2026

Respectfully submitted,

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS

*/s/ James Rodriguez*
James Rodriguez, No. #29172
Deputy Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, KS 66612
Phone: (785) 368-8197
Jay.Rodriguez@ag.ks.gov

*Counsel for Plaintiff State of Kansas*

KEN PAXTON
ATTORNEY GENERAL OF TEXAS

*/s/ Munera Al-Fuhaid*
Munera Al-Fuhaid
Special Counsel, Special Litigation Division
PO Box 12548, Capitol Station
Austin, TX 78711-2548
512-472-2700
Email: munera.al-fuhaid@oag.texas.gov

*Counsel for Plaintiff State of Texas*

CORI MILLS
ACTING ATTORNEY GENERAL OF ALASKA

*/s/ Jessica M. Alloway*
Jessica M. Alloway
Acting Solicitor General
Department of Law
1031 West Fourth Avenue, Ste. 200
Anchorage, AK 99501
Phone: (907) 269-5100
Facsimile: (907) 276-3697
Email: jessie.alloway@alaska.gov

*Counsel for Plaintiff State of Alaska*

TODD E. ROKITA
ATTORNEY GENERAL OF INDIANA

/s/ James A. Barta
James A. Barta
Solicitor General
Indiana Attorney General's Office
IGCS – 5th Floor
302 W. Washington St.
Indianapolis, IN 46204
(317) 232-0709
james.barta@atg.in.gov

*Counsel for Plaintiff State of Indiana*

LIZ MURRILL
ATTORNEY GENERAL OF
LOUISIANA

/s/ J. Benjamin Aguiñaga
J. Benjamin Aguiñaga
Solicitor General
Louisiana Department Of Justice
1885 N. Third Street
Baton Rouge, LA 70804
(225) 326-6766
AguinagaB@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

DREW H. WRIGLEY
ATTORNEY GENERAL OF
NORTH DAKOTA

/s/ Philip Axt
Philip Axt
Solicitor General
Office Of North Dakota Attorney General
600 E. Boulevard Ave., Dept. 125
Bismarck, ND 58505
Phone: (701) 328-2210
Email: pjaxt@nd.gov

*Counsel for Plaintiff State of North Dakota*

GENTNER DRUMMOND
ATTORNEY GENERAL OF
OKLAHOMA

/s/ Garry M. Gaskins, II
Garry M. Gaskins, II
Solicitor General
Oklahoma Attorney General
15 West 6th Street
Suite 1700
Tulsa, OK 74119
918-749-7378
Fax: 918-749-7869
Email: garry.gaskins@oag.ok.gov

*Counsel for Plaintiff State of Oklahoma*

MARTY JACKLEY
ATTORNEY GENERAL OF SOUTH DAKOTA

/s/ Grant Flynn
Grant Flynn
Assistant Attorney General
Office of the Attorney General of South Dakota
1302 E Highway 14, Suite 1
Pierre, SD 57501-8501
605-773-3215
Fax: 605-773-4106
Email: grant.flynn@state.sd.us

*Counsel for Plaintiff State of South Dakota*

DEREK BROWN
ATTORNEY GENERAL OF UTAH

/s/ Andrew Dymek
Andrew Dymek
Solicitor General
Heber Wells Bldg.
160 East 300 South, 5th Floor
Salt Lake City, UT 84114-0857
801-366-0533
Email: adymek@agutah.gov

*Counsel for Plaintiff State of Utah*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1, on August 20, 2026, James Rodriguez, counsel for the State of Kansas, along with additional counsel for Plaintiffs, conferred with Jody D. Lowenstein, counsel for Defendants, concerning the signatory State Plaintiffs' understanding of the Court's August 5 Order, as described in this motion. Defendants disagreed with the interpretation of the signatory State Plaintiffs, and the Parties could not reach agreement.

*James Rodriguez*
James Rodriguez

*Counsel for Plaintiff State of Kansas*